CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

JUL 12 2018

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

JUL 06 2018

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

**COPY**

| | | |
|---|---|---|
| Steven E. Clem, | ) | |
| Plaintiff(s), | ) | Civil Action No 3:18CV00049 |
| | ) | State Court No. CL18000751-00 |
| v. | ) | **ORDER** |
| | ) | |
| Scott H. Jenkins, et al., | ) | By: Hon. Glen E. Conrad |
| | ) | Senior United States District Judge |
| Defendant(s). | ) | |

This case was recently removed from the Circuit Court for Culpeper, Virginia to the United States District Court for the Western District of Virginia at Charlottesville. Finding it necessary and proper to do so, it is hereby

## REQUESTED

that the original case file in your Court be forwarded to the Clerk of this court at 255 W. Main Street, Room 304, Charlottesville, VA 22902, as contemplated under 28 U.S.C. § 1441, et seq.

The Clerk is directed to send a copy of this Order to the Clerk of the Circuit Court for Culpeper County, 135 West Cameron Street, Culpeper, Virginia 22701.

ENTERED: 7/6/18

/s/ Glen E. Conrad
Senior United States District Judge

FILED IN THE CLERK'S OFFICE
OF THE CIRCUIT COURT OF THE
CULPEPER CIRCUIT COURT

DATE: 07/09/2018 @11:24:51

TESTE: _____
CLERK/DEPUTY CLERK

CULPEPER COUNTY CIRCUIT COURT

Case CL18000751-00

STEVEN E. CLEM      v.      SCOTT H. JENKINS ET ALS

## TABLE OF CONTENTS

| Name of Paper | Date Filed | Page |
|---|---|---|
| COMPLAINT | 06/04/2018 | 1 - 16 |
| COVER SHEET FOR FILING CIVIL ACTIONS | 06/04/2018 | 17 |
| LETTER REGARDING SERVICE | 06/04/2018 | 18 |
| SUMMONS -- SCOTT H. JENKINS, SHERIFF | 06/05/2018 | 19 |
| SUMMONS -- SCOTT H. JENKINS | 06/05/2018 | 20 |
| SUMMONS -- MASON G. MAYS | 06/05/2018 | 21 |
| SUMMONS -- BRENT W. COFFEY | 06/05/2018 | 22 |
| SUMMONS -- CHARLES BURGOON | 06/05/2018 | 23 |
| SUMMONS -- JAMES VERNON FOX | 06/05/2018 | 24 |
| SUMMONS -- CULPEPER COUNTY, VIRGINIA | 06/05/2018 | 25 |
| SUMMONS -- MARK R. HERRING ATTORNEY GENERAL | 06/05/2018 | 26 |
| RETURN OF SERVICE--MASON G. MAYS--NOT FOUND | 06/07/2018 | 27 |
| RETURN OF SERVICE--CULPEPER COUNTY, VIRGINIA | JUNE 7, 2018 | 28 |
| RETURN OF SERVICE--JAMES VERNON FOX--PERSONAL SERVICE | JUNE 7, 2018 | 29 |
| RETURN OF SERVICE--BRENT W. COFFEY--PERSONAL SERVICE | JUNE 7, 2018 | 30 |
| RETURN OF SERVICE--SCOTT H. JENKINS--PERSONAL SERVICE | JUNE 7, 2018 | 31 |
| RETURN OF SERVICE--SCOTT H. JENKINS, SHERIFF--PERSONAL SERVICE | JUNE 7, 2018 | 32 |
| DEMURRER W/ ATTACHMENT | JUNE 13, 2018 | 33 - 92 |
| RETURN OF SERVICE--CHARLES BURGOON--NOT FOUND | JUNE 14, 2018 | 93 |
| RETURN OF SERVICE--HON. MARK R. HERRING--PERSONAL | JUNE 18, 2018 | 94 - 95 |

I, the undersigned, certify that the papers listed above and filed herein are the original papers entered in the above-styled case and constitute the true and complete record in such case except for exhibits whose omission is noted in the table of contents.

_____ , Clerk

By:_____
Deputy Clerk

FORM CC-1385 (MASTER) 5/99 PC
Rule 5:13 and 5A:10

CULPEPER COUNTY CIRCUIT COURT

Case  CL18000751-00

STEVEN E. CLEM     v.     SCOTT H. JENKINS ET ALS

## TABLE OF CONTENTS

| Name of Paper | Date Filed | Page |
|---|---|---|
| DEMURRER (JAMES VERNON FOX) | 06/26/2018 | 96 - 98 |
| DEFENDANT JENKINS' DEMURRER | 06/27/2018 | 99 - 105 |
| NOTICE OF APPEARANCE | 06/27/2018 | 106 - 107 |
| DEMURRER AND SPECIAL PLEA OF SOVEREIGN IMMUNITY | JUNE 27, 2018 | 108 – 115 |
| **CONSENT ORDER** | **JULY 5, 2018** | **116 – 121** |
| NOTICE OF REMOVAL W/ EXHIBITS ATTACHED | JULY 9, 2018 | 122 - 150 |
| **COPY — ORDER OF REMOVAL TO UNITED STATES DISTRICT COURT WESTERN DISTRICT OF VIRGINIA** | **JULY 9, 2018** | **151** |

I, the undersigned, certify that the papers listed above and filed herein are the original papers entered in the above-styled case and constitute the true and complete record in such case except for exhibits whose omission is noted in the table of contents.

_____ , Clerk

By:_____

Deputy Clerk

FORM CC-1385 (MASTER) 5/99 PC
Rule 5:13 and 5A:10

**V I R G I N I A:**

## IN THE CULPEPER CIRCUIT COURT

STEVEN E. CLEM,                                :
    *Plaintiff*                        :
                                       :
v.                                             :    **CASE NO.** <u>CL18000751-00</u>
                                       :
**SCOTT H. JENKINS, in his official capacity** :
**as Sheriff of Culpeper County, Virginia**    :
                                       :
<u>Please Serve:</u>                           :
Scott H. Jenkins                               :
14023 Public Safety Court                      :
Culpeper, VA 22701 (Culpeper County)           :
                                       :
**and**                                        :
                                       :    **JURY TRIAL DEMANDED**
**SCOTT H. JENKINS, individually**             :
                                       :
<u>Please Serve:</u>                           :
Scott H. Jenkins                               :
14023 Public Safety Court                      :
Culpeper, VA 22701 (Culpeper County)           :
                                       :
**and**                                        :
                                       :
**MASON G. MAYS**                              :
                                       :
<u>Please Serve:</u>                           :
Mason G. Mays                                  :
15148 State Police Road                        :
Culpeper, VA 22701 (Culpeper County)           :
                                       :
**and**                                        :
                                       :
**BRENT W. COFFEY**                            :
                                       :
<u>Please Serve:</u>                           :
Brent W. Coffey                                :
15148 State Police Road                        :
Culpeper, VA 22701 (Culpeper County)           :
                                       :
**and**                                        :

**CHARLES BURGOON**

Please Serve:
Charles Burgoon
11501 Maplewood Drive
Locust Grove, VA (Orange County)
     22508
**and**

**JAMES VERNON FOX**

Please Serve:
James Vernon Fox
14023 Public Safety Court
Culpeper, VA 22701 (Culpeper County)

**and**

**JOHN DOES 1-4**

**and**

**CULPEPER COUNTY, VIRGINIA**

Please Serve:
Culpeper County Attorney
306 North Main Street
Culpeper, VA 22701 (Culpeper County)

**and**

**COMMONWEALTH OF VIRGINIA,**

Please Serve:
Hon. Mark R. Herring
Office of the Attorney General
202 North Ninth Street
Richmond, VA 23219 (City of Richmond)

   *Defendants.*

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

# COMPLAINT

COMES NOW the Plaintiff, Steven E. Clem, by counsel, for his complaint against the named defendants to-wit:

## PARTIES

1. Plaintiff STEVEN E. CLEM ("CLEM") is a resident of Virginia. He was, on June 23, 2016, and is currently employed as a Lieutenant by the Spotsylvania County Sheriff's Department.

2. Defendant SCOTT H, JENKINS ("JENKINS") was, on June 23, 2016, and remains the elected Sheriff of Culpeper County, Virginia.

3. Defendant CHARLES BURGOON ("BURGOON") was employed by the Culpeper County Sheriff's Department as a deputy sheriff on June 23, 2016. He is no longer employed by the Department.

4. Defendant JAMES VERNON FOX ("FOX") was employed by the Culpeper County Sheriff's Department as a deputy sheriff on June 23, 2016 and remains so employed.

5. Defendant MASON G. MAYS ("MAYS") was, on June 23, 2016, and remains a Virginia State Trooper.

6. Defendant BRENT W. COFFEY was, on June 23, 2016, and remains a Virginia State Trooper.

7. Defendants JOHN DOES 1-4 were, on June 23, 2016, deputies of the Culpeper County Sheriff.

8. Defendant CULPEPER COUNTY, VIRGINA is a political subdivision of the Commonwealth of Virginia that employed BURGOON, FOX and JOHN DOES 1-4 on June 23, 2016.

9. Defendant COMMONWEALTH OF VIRGINIA is a sovereign state of the United States of America and employed MAYS and COFFEY on June 23, 2016.

## JURISDICTION AND VENUE

10. This Court has jurisdiction of all claims because all of the named defendants are Virginia residents and because the injuries occurred entirely within Culpeper County, Virginia. Venue is proper in the Court for the same reason.

## FACTS

11. On June 23, 2016, at approximately 5:43 p.m., CLEM was driving westbound on Virginia Route 3 in Culpeper County.

12. CLEM was following a car driven by a friend named Timothy Chilton ("CHILTON"), who is a Town of Culpeper police captain and a political opponent of JENKINS.

13. CLEM and CHILTON had spent the afternoon with their girlfriends at two local vineyards. CLEM consumed two small glasses of wine over the course of the afternoon and was not intoxicated.

14. CHILTON needed to return to Culpeper to begin his shift at the Culpeper Police Department and the party departed together.

15. CHILTON pulled over on the shoulder of Route 3 and CLEM pulled in behind him. CHILTON asked CLEM to drive CHILTON's girlfriend home as CHILTON needed to

PAGE 4 OF 16

get to work. CLEM agreed and CHILTON's girlfriend got into the back of CLEM's car. CHILTON drove onto the roadway alone toward work.

16. Soon thereafter, CLEM drove his car onto the roadway in front of the sheriff's car driven by BURGOON.

17. BURGOON misperceived CLEM's driving to be erratic and initiated a traffic stop. BURGOON mistakenly believed that CLEM drove off the roadway when in fact CLEM reentered the traffic lane from a parked position. CLEM pulled over immediately in a nearby parking lot.

18. BURGOON detected an odor of alcohol in CLEM's vehicle however, BURGOON never asked CLEM to step out from the car. BURGOON did not detect an odor of alcohol on CLEM's person. BURGOON nonetheless claimed that he suspected that CLEM was driving while under the influence of alcohol.

19. BURGOON became aware that CHILTON's girlfriend was in CLEM's car.

20. BURGOON was aware of the political rivalry between JENKINS and CHILTON and so BURGOON called for assistance from Virginia State Police to investigate the suspected DUI.

21. While waiting for assistance from the State Police, FOX, JOHN DOES 1-4 and CHILTON arrived on the scene.

22. FOX and JOHN DOES 1-4 provided assistance to BURGOON at the scene.

23. Upon information and belief, JENKINS became aware of the circumstances and became enraged at BURGOON because BURGOON did not arrest CLEM, CHILTON or CHILTON's girlfriend.

24. MAYS arrived on the scene at approximately 5:55 p.m. and conferred with BURGOON.

25. MAYS did not observe CLEM slur speech or stumble and MAYS testified that CLEM communicated appropriately at all times during the encounter.

26. MAYS did not offer CLEM any field sobriety tests.

27. MAYS, who had not witnessed CLEM drive, claimed to detect a strong odor of alcohol from CLEM's person, even though BURGOON had not detected any such odor.

28. Instead, MAYS immediately demanded that CLEM blow into a portable breath test machine. MAYS did not read the implied consent law to CLEM. CLEM protested that the test would be invalid due to residual mouth alcohol from the small glass of wine he had just consumed. Furthermore, CLEM was using smokeless tobacco at the time. CLEM asked MAYS to wait ten minutes to allow the residual mouth alcohol to dissipate, but MAYS refused.

29. Nevertheless, MAYS demanded that CLEM immediately blow into device, which purportedly registered a breath alcohol content of 0.111 percent.

30. MAYS then allowed CLEM to spit out the smokeless tobacco and even offered CLEM a bottle with which to do so..

31. Both the smokeless tobacco and recent wine consumption rendered the portable breath test invalid.

32. CHILTON, on duty and in uniform, informed MAYS and BURGOON that CLEM was sober, but both MAYS and BURGOON ignored him and told CHILTON that "it was too fucking late for that now."

33. MAYS arrested CLEM for DUI and refusal to take the breath test.

34. MAYS did not read CLEM the declaration of refusal at any point.

35. MAYS searched CLEM after the arrest and discovered a can of Stoker's brand tobacco in CLEM's pocket.

36. Stoker's brand tobacco contains ethyl alcohol in sufficient quantity to invalidate the preliminary breath test. MAYS knew, or reasonably should have known, that CLEM's use of the smokeless tobacco invalidated the results of the portable breath test he just administered and that, therefore, the test did not provide probable cause to arrest CLEM.

37. After arresting CLEM, MAYS transported CLEM to the Culpeper Police Department for an evidentiary breath test.

38. MAYS was trained and licensed by the Virginia Department of Forensic Science to operate the evidentiary breath test machine installed at the Culpeper Police Department. His DFS license number was 29807. The machine was an INTOX EC/IR II unit and its serial number was 010561.

39. Unlike the preliminary breath test device MAYS used at the scene of the traffic stop, the INTOX EC/IR II at the Culpeper Police Department has the ability to detect and distinguish residual mouth alcohol from blood alcohol content. Thus the INTOX EC/IR II is a much more precise and reliable means of measuring blood alcohol content than the preliminary breath test device. CLEM repeatedly stated his desire to take the breath test in order to prove that he was sober.

40. MAYS began administering the breath test to CLEM at approximately 7:25 p.m. CLEM was cooperative and again stated that he was confident the test would prove that he was sober.

Case 3:18-cv-00049-GEC   Document 4   Filed 07/12/18   Page 10 of 95   Pageid#: 40

41. BURGOON had responded from the scene of the arrest to the Town of Culpeper Police Department and was present when CLEM arrived with MAYS, but BURGOON was summoned away for a meeting with one of his superior in the Culpeper Sheriff's Department. Upon information and belief, this superior was JENKINS.

42. Upon information and belief, JENKINS pressured BURGOON to arrest CLEM, CHILTON, CLEM's girlfriend and CHILTON's girlfriend at the scene of the initial traffic stop, and JENKINS then berated and disciplined BURGOON for calling for the assistance of the State Police instead of handling the matter himself the way JENKINS wanted it to be handled, namely by arresting his political opponent and his friends.

43. After beginning the breath test at the Culpeper Police Department, MAYS abruptly aborted the breath test before completing it. MAYS ordered CLEM to take a seat after two tests were begun and aborted. MAYS never informed CLEM that CLEM had done anything wrong during the test. MAYS advised dispatch that he was transporting CLEM to the hospital for a blood test.

44. CLEM inquired about the outcome of the test and MAYS responded falsely that CLEM had given insufficient samples. The INTOX EC/IR II device detects and reports if a subject provides an insufficient sample. It did not detect or report any insufficient sample from CLEM.

45. CLEM informed MAYS that he had cooperated in the breath test and then CLEM volunteered to submit to a blood test. CLEM reiterated his desire for a valid test because he know it would prove that he was sober.

46. MAYS placed CLEM in his police cruiser, called his dispatcher and notified the dispatcher that he was driving CLEM to a nearby hospital for a blood test.

47. On the way to the hospital, MAYS received a telephone call and then abruptly changed course and drove to the magistrate's office instead of the hospital.

48. BURGOON was waiting at the magistrate's office when MAYS arrived with CLEM.

49. MAYS and BURGOON sought and obtained a misdemeanor DUI warrant against CLEM. MAYS obtained the warrant by falsely swearing in his criminal complaint that CLEM had given a deficient sample on the breath test.

50. MAYS sought and obtained a civil refusal summons against CLEM on the basis of the false claim that CLEM had given an insufficient breath sample.

51. MAYS attempted to obtain a search warrant for CLEM's blood by misrepresenting to the magistrate that the voluntary blood test was unavailable when CLEM had volunteered to take both the breath and the blood tests. The magistrate refused to issue a search warrant.

52. CLEM was investigated by his employer, the Spotsylvania Sheriff's Department as a result of the pending charges. While under investigation, CLEM lost the opportunity for a promotion to Captain, costing him at least $20,000 per year income and even more in lost retirement benefits.

53. The DUI misdemeanor and the refusal summons were dismissed by this Court on October 4, 2016 after this Court granted CLEM's suppression motion.

## COUNT ONE – FALSE ARREST

54. All previous paragraphs of this complaint are incorporated herein by reference and are re-alleged as if restated.

PAGE 9 OF 16

55. MAYS, acting in concert with BURGOON, FOX, JOHN DOES 1-4 and JENKINS, arrested CLEM on June 23, 2016 without probable cause to believe that CLEM was intoxicated or that any crime had occurred.

## COUNT TWO – BATTERY

56. All previous paragraphs of this complaint are incorporated herein by reference and are re-alleged as if restated.

57. MAYS battered CLEM when MAYS apprehended CLEM, handcuffed him and otherwise touched CLEM on June 23, 2016 without consent or justification.

58. MAYS and BURGOON intentionally touched CLEM, with the intent to cause harm or offense to CLEM on June 23, 2016 by grabbing him, handcuffing him, and transporting him.

59. CLEM did not consent to being touched by MAYS or BURGOON on June 23, 2016.

60. MAYS and BURGOON were not justified in touching CLEM on June 23, 2016.

61. CLEM suffered injuries as a result of being battered by MAYS and BURGOON on June 23, 2016, including loss of liberty, embarrassment and humiliation.

62. CLEM is entitled to recover damages, including compensatory and punitive damages, from MAYS and BURGOON for the injuries he sustained as a result of battery.

## COUNT THREE - FALSE IMPRISONMENT

63. All previous paragraphs of this complaint are incorporated herein by reference and are re-alleged as if restated.

PAGE 10 OF 16

64. MAYS and BURGOON, acting in concert with JENKINS, falsely imprisoned CLEM when they detained him without probable cause and against his will on June 23, 2016.

65. JENKINS, MAYS and BURGOON had no legal justification or authorization to imprison CLEM.

66. JENKINS, MAYS and BURGOON acted with actual malice when they falsely imprisoned CLEM on June 23, 2016.

67. CLEM suffered injuries as a result of being falsely imprisoned by BRAGG on February 4, 2016, including (i) loss of liberty, (ii) isolation, (iii) loss of income, (iv) depression, (v) embarrassment, (vi) humiliation, (vii) severe mental anguish and (viii) damage to reputation.

68. CLEM is entitled to recover damages, including compensatory and punitive damages, from BURGOON, MAYS and JENKINS for the injuries CLEM sustained by being falsely imprisoned on June 23, 2016.

## COUNT FOUR - CIVIL CONSPIRACY

69. All previous paragraphs of this complaint are incorporated herein by reference and are re-alleged as if restated.

70. BURGOON, MAYS, COFFEY, FOX, JOHN DOES 1-4 and JENKINS conspired to pursue criminal charges against CLEM knowing that there was no probable cause to believe CLEM had committed any crime.

PAGE 11 OF 16

71. JENKINS pressured BURGOON with threats and disciplined BURGOON by suspending and reassigning him because BURGOON refused to directly arrest CLEM, CHILTON, CLEM'S girlfriend and CHILTON'S girlfriend at the scene.

72. JENKINS was motivated by actual malice against CLEM due to CLEM's association with JENKINS' political rival.

## COUNT FIVE - VIOLATION OF FOURTH AMENDMENT RIGHTS (42 U.S.C. §1983)

73. All previous paragraphs of this complaint are incorporated herein by reference and are re-alleged as if restated.

74. The Fourth and Fourteenth Amendments to the United States Constitution provide clearly established protected rights to all persons, including, but not limited to:

    1. Freedom from unreasonable seizure

    2. Freedom from the use of unreasonable and excessive force

    3. Freedom from the deprivation of liberty and property without due process of law

    4. Freedom from arbitrary governmental activity which shocks the conscience.

75. The "Ku Klux Klan Act "(42 U.S.C. § 1983) provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable...

PAGE 12 OF 16

76. CLEM was arrested on June 23, 2016 without probable cause to believe that he had committed any crime and in violation of his rights to (i) be free from unlawful seizure under the Fourth Amendment to the United States Constitution and (ii) substantive due process under the Fourteenth Amendment to the United States Constitution.

77. CLEM was maliciously prosecuted by JENKINS, MAYS and BURGOON who, acting in concert with COFFEY, JOHN DOES 1-4 and FOX, obtained both criminal and civil process on the basis of false information provided to the magistrate and without probable cause to believe CLEM committed any crime or unreasonably refused to submit to a blood or breath test.

78. The charges against CLEM terminated in his favor, as both charges were dismissed by this Court.

79. CLEM sustained injuries and damages as a result of being falsely arrested on June 23, 2016, including (i) loss of liberty, (ii) severe mental anguish, (iii) damage to reputation, (iv) depression, (v) embarrassment, (vi) humiliation and (vii) loss of income.

80. CLEM's unlawful arrest was the result of an unconstitutional policy or custom of the Culpeper County Sheriff's Department.

81. BURGOON and MAYS acted at the behest of JENKINS in arresting CLEM on June 23,

82. A defendant may be liable for false imprisonment even if he does not apprehend the plaintiff, but requests or directs another to do so. See, e.g., *Kalantar v. Lufthansa German Airlines*, 402 F. Supp. 2D 130, 142 (D.D.C. 2005) and *Montgomery Ward &Co. v. Wickline*, 188 Va. 485, 489 (1948)

PAGE 13 OF 16

## COUNT SIX – MALICIOUS PROSECUTION

83. All previous paragraphs of this complaint are incorporated herein by reference and are re-alleged as if restated.

84. JENKINS, MAYS and BURGOON sought and obtained a criminal charge and civil refusal summons against CLEM without probable cause to believe CLEM had committed any crime and without probable cause to believe that CLEM had unreasonably refused to give a sample of his blood or breath for analysis.

## COUNT EIGHT – GROSS NEGLIGENCE

85. All previous paragraphs of this complaint are incorporated herein by reference and are re-alleged as if restated.

86. BURGOON, FOX, JOHN DOES 1-4, JENKINS, MAYS, and COFFEY had a duty to CLEM to investigate the suspected crime of DUI carefully and lawfully.

87. BURGOON, FOX, JOHN DOES 1-4, JENKINS, MAYS, and COFFEY breached their duty to CLEM by (i) failing to administer field sobriety tests at all, thereby denying CLEM the opportunity to prove himself sober, (ii) failing to properly administer the preliminary breath test, (iii) failing to conduction a proper evidentiary breath analysis at the Culpeper Police Department, (iv) failing to transport CLEM to the hospital for a blood test when CLEM volunteered to take one, (v) failing to properly inform the magistrate that MAYS aborted the breath test and (vi) falsely informing the magistrate that CLEM had given a deficient sample on the breath test.

14

88. BURGOON, FOX, JOHN DOES 1-4, JENKINS, MAYS, and COFFEY breached their duty to CLEM while acting either with actual malice or with willful and wanton gross negligence by exhibiting a total lack of care in performing their duties.

89. CLEM suffered damages as a result of the gross negligence of BURGOON, FOX, JOHN DOES 1-4, JENKINS, MAYS, and COFFEY.

90. BURGOON, FOX, JOHN DOES 1-4, JENKINS, MAYS and COFFER were acting within the scope of their employment at all times relevant to this Complaint.

91. Defendants CULPEPER COUNTY, VIRGINIA and COMMONWEALTH OF VIRGINIA are vicariously liable for the negligence of their employees.

92. CLEM gave proper and timely notice of this claim pursuant to the Virginia Tort Claims Act.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff, Steven Clem, prays that this Court enter judgment in his favor and against the defendants on each of the above causes of action, and further prays for:

**A)** An award of his actual damages in the amount of ONE MILLION FIVE HUNDRED THOUSAND DOLLARS ($1,500,000.00) at trial, jointly and severally against all defendants.

**B)** Punitive damages as appropriate to the proof at trial, jointly and severally against all defendants in the amount of THREE MILLION DOLLARS ($3,000,000.00).

**C)** Recovery from each of the defendants of the reasonable attorney fees and costs incurred in bringing this action.

PAGE 15 OF 16

**D)**   Such additional and other relief as the Court deems appropriate, including, but not

limited to, injunctive, prospective, declaratory or other equitable relief.

**A JURY TRIAL IS DEMANDED**

Respectfully submitted,

**STEVEN E. CLEM**
**By Counsel**

**JAMES RIVER LEGAL ASSOCIATES**
**7601 Timberlake Road**
**Lynchburg, Virginia 24502**
**P (434) 845-4529**
**F (434) 845-8536**
**mvalois@vbclegal.com**

By:

*Margaret C Valois*

*for* **M. Paul Valois, Esquire**
**Counsel for Plaintiff**
**Virginia State Bar No. 72326**

```
VALIDATE CASE PAPERS
RCPT : 18000008002
DATE : 06/04/2018 TIME: 13:26
CASE : 047CL18000751-00
ACCT : CLEM, STEVEN E
AMT. : $445.00
```

*SMcAlpine D.C.*

PAGE 16 OF 16

# COVER SHEET FOR FILING CIVIL ACTIONS
COMMONWEALTH OF VIRGINIA

Case No. CL18000751-00

(CLERK'S OFFICE USE ONLY)

Culpeper ......................................................................... Circuit Court

Steven E. Clem ................................................... v./In re: .................... Scott H. Jenkins, et al
PLAINTIFF(S)          DEFENDANT(S)

I, the undersigned [ ] plaintiff [ ] defendant [X] attorney for [X] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

## GENERAL CIVIL
**Subsequent Actions**
[ ] Claim Impleading Third Party Defendant
    [ ] Monetary Damages
    [ ] No Monetary Damages
[ ] Counterclaim
    [ ] Monetary Damages
    [ ] No Monetary Damages
[ ] Cross Claim
[ ] Interpleader
[ ] Reinstatement (other than divorce or driving privileges)
[ ] Removal of Case to Federal Court
**Business & Contract**
[ ] Attachment
[ ] Confessed Judgment
[ ] Contract Action
[ ] Contract Specific Performance
[ ] Detinue
[ ] Garnishment
**Property**
[ ] Annexation
[ ] Condemnation
[ ] Ejectment
[ ] Encumber/Sell Real Estate
[ ] Enforce Vendor's Lien
[ ] Escheatment
[ ] Establish Boundaries
[ ] Landlord/Tenant
    [ ] Unlawful Detainer
[ ] Mechanics Lien
[ ] Partition
[ ] Quiet Title
[ ] Termination of Mineral Rights
**Tort**
[ ] Asbestos Litigation
[ ] Compromise Settlement
[X] Intentional Tort
[ ] Medical Malpractice
[ ] Motor Vehicle Tort
[ ] Product Liability
[ ] Wrongful Death
[ ] Other General Tort Liability

## ADMINISTRATIVE LAW
[ ] Appeal/Judicial Review of Decision of (select one)
[ ] ABC Board
[ ] Board of Zoning
[ ] Compensation Board
[ ] DMV License Suspension
[ ] Employee Grievance Decision
[ ] Employment Commission
[ ] Local Government
[ ] Marine Resources Commission
[ ] School Board
[ ] Voter Registration
[ ] Other Administrative Appeal

## DOMESTIC/FAMILY
[ ] Adoption
    [ ] Adoption – Foreign
[ ] Adult Protection
[ ] Annulment
    [ ] Annulment – Counterclaim/Responsive Pleading
[ ] Child Abuse and Neglect – Unfounded Complaint
[ ] Civil Contempt
[ ] Divorce (select one)
    [ ] Complaint – Contested*
    [ ] Complaint – Uncontested*
    [ ] Counterclaim/Responsive Pleading
    [ ] Reinstatement – Custody/Visitation/Support/Equitable Distribution
[ ] Separate Maintenance
    [ ] Separate Maintenance Counterclaim

## WRITS
[ ] Certiorari
[ ] Habeas Corpus
[ ] Mandamus
[ ] Prohibition
[ ] Quo Warranto

## PROBATE/WILLS AND TRUSTS
[ ] Accounting
[ ] Aid and Guidance
[ ] Appointment (select one)
    [ ] Guardian/Conservator
    [ ] Standby Guardian/Conservator
    [ ] Custodian/Successor Custodian (UTMA)
[ ] Trust (select one)
    [ ] Impress/Declare
    [ ] Reformation
[ ] Will (select one)
    [ ] Construe
    [ ] Contested

## MISCELLANEOUS
[ ] Appointment (select one)
    [ ] Church Trustee
    [ ] Conservator of Peace
    [ ] Marriage Celebrant
[ ] Bond Forfeiture Appeal
[ ] Declaratory Judgment
[ ] Declare Death
[ ] Driving Privileges (select one)
    [ ] Reinstatement pursuant to § 46.2-427
    [ ] Restoration – Habitual Offender or 3rd Offense
[ ] Expungement
[ ] Firearms Rights – Restoration
[ ] Forfeiture of U.S. Currency
[ ] Freedom of Information
[ ] Injunction
[ ] Interdiction
[ ] Interrogatory
[ ] Judgment Lien-Bill to Enforce
[ ] Law Enforcement/Public Official Petition
[ ] Name Change
[ ] Referendum Elections
[ ] Sever Order
[ ] Taxes (select one)
    [ ] Correct Erroneous State/Local
    [ ] Delinquent
[ ] Vehicle Confiscation
[ ] Voting Rights – Restoration
[ ] Other (please specify)

[X] Damages in the amount of $ 4,500,000.00    are claimed.

May 30, 2018
DATE

*Filed in Culpeper County Circuit Court Clerk's Office June 4, 2018 @ 1:26 p.m. Deputy S. Walpine Clerk*

*Margaret C Valois for M Paul Valois*
[ ] PLAINTIFF   [ ] DEFENDANT   [X] ATTORNEY FOR [X] PLAINTIFF [ ] DEFENDANT

M. Paul Valois, Esq.
PRINT NAME

7601 Timberlake Rd., Lynchburg, VA 24502
ADDRESS/TELEPHONE NUMBER OF SIGNATOR

(434) 845-4529

EMAIL ADDRESS OF SIGNATOR (OPTIONAL)

> *"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the above issues are in dispute.

FORM CC-1416 (MASTER) PAGE ONE 10/14

17

7601 Timberlake Road
Lynchburg, VA 24502

www.jamesriverlegal.com

P 434.845.4529
F 434.845.8536



May 30, 2018

Hon. Janice J. Corbin, Clerk
Culpeper Circuit Court
Courthouse Building
135 W. Cameron Street
Culpeper, VA 22701-3097

RE:  *Steven E. Clem v. Scott H. Jenkins, et al.*
     CIVIL CASE # CL18000751-00

Dear Ms. Corbin:

Enclosed is the Complaint in the above-styled case. I have also enclosed check number _3978_ in the amount of $445.00 for filing and sheriff service. Please return a time-stamped copy of the Complaint to my office in the envelope provided.

If you have any questions, please feel free to contact me. Thank you in advance for your assistance in this matter.

Sincerely,

*Margaret CValois*

*for* M. Paul Valois,
Attorney & Counselor At Law

MPV/kft
*Enclosures*

Filed In Culpeper County
Circuit Court Clerk's
Office June 4 20 18
Deputy 1:20 p.m.
_____, Clerk

# COMMONWEALTH OF VIRGINIA



## CULPEPER CIRCUIT COURT
Civil Division
135 W CAMERON ST
CULPEPER VA 22701

### Summons

To: SHERIFF, SCOTT H. JENKINS
14023 PUBLIC SAFETY COURT
CULPEPER VA 22701

Case No. 047CL18000751-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Tuesday, June 05, 2018

Clerk of Court: JANICE J. CORBIN

by _Seana B. McAlpine_
(CLERK/DEPUTY CLERK )

Instructions:

Hearing Official:

Attorney's name: VALOIS, M PAUL
7601 TIMBERLAKE ROAD
LYNCHBURG VA 24502

# COMMONWEALTH OF VIRGINIA



### CULPEPER CIRCUIT COURT
Civil Division
135 W CAMERON ST
CULPEPER VA 22701

Summons

To: SCOTT H JENKINS
14023 PUBLIC SAFETY COURT
CULPEPER VA 22701

Case No. 047CL18000751-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Tuesday, June 05, 2018

Clerk of Court: JANICE J. CORBIN

by *Jeana B. McAlpine*
(CLERK/DEPUTY CLERK )

Instructions:

Hearing Official:

Attorney's name:   VALOIS, M PAUL
7601 TIMBERLAKE ROAD
LYNCHBURG VA 24502

20

# COMMONWEALTH OF VIRGINIA



## CULPEPER CIRCUIT COURT
Civil Division
135 W CAMERON ST
CULPEPER VA 22701

### Summons

To: MASON G MAYS
    15148 STATE POLICE ROAD
    CULPEPER VA 22701

Case No. 047CL18000751-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Tuesday, June 05, 2018

Clerk of Court: JANICE J. CORBIN

by ⟨signature⟩ Jeana B. McAlpine
          (CLERK/DEPUTY CLERK )

Instructions:

Hearing Official:

Attorney's name:    VALOIS, M PAUL
               7601 TIMBERLAKE ROAD
               LYNCHBURG VA 24502

# COMMONWEALTH OF VIRGINIA



CULPEPER CIRCUIT COURT
Civil Division
135 W CAMERON ST
CULPEPER VA 22701

Summons

To: BRENT W COFFEY       Case No. 047CL18000751-00
15148 STATE POLICE ROAD
CULPEPER VA 22701

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on Tuesday, June 05, 2018

Clerk of Court: JANICE J. CORBIN

by _____
(CLERK/DEPUTY CLERK )

Instructions:

Hearing Official:

Attorney's name:      VALOIS, M PAUL
7601 TIMBERLAKE ROAD
LYNCHBURG VA 24502

22

# COMMONWEALTH OF VIRGINIA



## CULPEPER CIRCUIT COURT
Civil Division
135 W CAMERON ST
CULPEPER VA 22701

Summons

To: CHARLES BURGOON
11501 MAPLEWOOD DRIVE
LOCUST GROVE VA 22508

Case No. 047CL18000751-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Tuesday, June 05, 2018

Clerk of Court: JANICE J. CORBIN

by _Jeana B M'Calpine_
(CLERK/DEPUTY CLERK)

Instructions:

Hearing Official:

Attorney's name: VALOIS, M PAUL
7601 TIMBERLAKE ROAD
LYNCHBURG VA 24502

# COMMONWEALTH OF VIRGINIA



CULPEPER CIRCUIT COURT
Civil Division
135 W CAMERON ST
CULPEPER VA 22701

Summons

To: JAMES VERNON FOX
14023 PUBLIC SAFETY COURT
CULPEPER VA 22701

Case No. 047CL18000751-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Tuesday, June 05, 2018

Clerk of Court: JANICE J. CORBIN

by _____
(CLERK/DEPUTY CLERK)

Instructions:

Hearing Official:

Attorney's name: VALOIS, M PAUL
7601 TIMBERLAKE ROAD
LYNCHBURG VA 24502

24

# COMMONWEALTH OF VIRGINIA



CULPEPER CIRCUIT COURT
Civil Division
135 W CAMERON ST
CULPEPER VA 22701

Summons

To: CULPEPER COUNTY ATTORNEY
    306 NORTH MAIN STREET
    CULPEPER VA 22701

Case No. 047CL18000751-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Tuesday, June 05, 2018

Clerk of Court: JANICE J. CORBIN

by _____
            (CLERK/DEPUTY CLERK )

Instructions:

Hearing Official:

Attorney's name:     VALOIS, M PAUL
                    7601 TIMBERLAKE ROAD
                    LYNCHBURG VA 24502

# COMMONWEALTH OF VIRGINIA



CULPEPER CIRCUIT COURT
Civil Division
135 W CAMERON ST
CULPEPER VA 22701

Summons

To: HON. MARK R. HERRING,
OFFICE OF THE ATTORNEY
GENERAL
202 NORTH NINTH STREET
RICHMOND VA 23219

Case No. 047CL18000751-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Tuesday, June 05, 2018

Clerk of Court: JANICE J. CORBIN

by _____
(CLERK/DEPUTY CLERK )

Instructions:

Hearing Official:

Attorney's name:     VALOIS, M PAUL
7601 TIMBERLAKE ROAD
LYNCHBURG VA 24502

# COMMONWEALTH OF VIRGINIA



CULPEPER CIRCUIT COURT
Civil Division
135 W CAMERON ST
CULPEPER VA 22701

Filed In Culpeper County
Circuit Court Clerk's
Office June 7 2018
Deputy @ 10:03 A.M.
Clerk

Proof of Service

Virginia:
In the CULPEPER CIRCUIT COURT

Case number: 047CL18000751-00
Service number: 003
Service filed: June 04, 2018
Judge:

Served by: CULPEPER COUNTY
Style of case: STEVEN E CLEM  vs SCOTT H JENKINS
Service on: MASON G MAYS
          15148 STATE POLICE ROAD
          CULPEPER VA 22701

Attorney: VALOIS, M PAUL
          7601 TIMBERLAKE ROAD
          LYNCHBURG VA 24502

Instructions:

Returns shall be made hereon, showing service of Summons issued Tuesday, June 05, 2018 with a copy of the Complaint filed Monday, June 04, 2018 attached.

Hearing date  :
Service issued: Tuesday, June 05, 2018

## For Sheriff Use Only

Name: Trooper Mason G. Mays
Address: Transfered to Henry County

CHECK BOX IF ADDRESS IS SAME AS FRONT: ☐

( ) PERSONAL SERVICE   Tel. No. (___) ___
(✓) Not Found   Lt. C.W Hawkins
                SERVING DEPUTY

06-06-2018  FOR  SCOTT H. JENKINS
DATE            SHERIFF, COUNTY OF CULPEPER, VIRGINIA

Received By:
Culpeper County

JUN 06 2018

Sheriff's Office

# COMMONWEALTH OF VIRGINIA



CULPEPER CIRCUIT COURT
Civil Division
135 W CAMERON ST
CULPEPER VA 22701

Filed In Culpeper County
Circuit Court Clerk's
Office _JUNE 7th_ 20 _18_
Deputy _____ _10:08_ A.M.
_____ Clerk

Virginia:
  In the CULPEPER CIRCUIT COURT

Proof of Service

Case number: 047CL18000751-00
Service number: 007
Service filed: June 04, 2018
Judge:

  Served by: CULPEPER COUNTY
Style of case: STEVEN E CLEM vs SCOTT H JENKINS
Service on: CULPEPER COUNTY ATTORNEY
      306 NORTH MAIN STREET
      CULPEPER VA 22701

Attorney: VALOIS, M PAUL
      7601 TIMBERLAKE ROAD
      LYNCHBURG VA 24502

  Instructions:

Returns shall be made hereon, showing service of Summons issued Tuesday, June 05, 2018 with a copy of the
Complaint filed Monday, June 04, 2018 attached.

Hearing date  :
Service issued: Tuesday, June 05, 2018

## For Sheriff Use Only

Name: _Babini To Alexis, Culpeper Co. Attorney_
Address: _306 N. Main St._
_Culpeper, VA 22701_
CHECK BOX IF ADDRESS IS SAME AS FRONT: ☐
(✓) **PERSONAL SERVICE** Tel. No. (___)
( ) Not Found    _Lt. C.W. Hawkins_
                 SERVING DEPUTY
_06-06-2018_ FOR    SCOTT H. JENKINS
DATE        SHERIFF, COUNTY OF CULPEPER, VIRGINIA

Received By:
**Culpeper County**

JUN 0 6 2018

Sheriff's Office

# COMMONWEALTH OF VIRGINIA



CULPEPER CIRCUIT COURT
Civil Division
135 W CAMERON ST
CULPEPER  VA  22701

Filed In Culpeper County
Circuit Court Clerk's
Office JUNe 7th 20 18
Deputy _____ 10:02 A.M.
_____ Clerk

Proof of Service

Virginia:
In the CULPEPER CIRCUIT COURT

Case number: 047CL18000751-00
Service number: 006
Service filed: June 04, 2018
Judge:

Served by: CULPEPER COUNTY
Style of case: STEVEN E CLEM  vs SCOTT H JENKINS
Service on: JAMES VERNON FOX
          14023 PUBLIC SAFETY COURT
          CULPEPER VA 22701

Attorney: VALOIS, M PAUL
          7601 TIMBERLAKE ROAD
          LYNCHBURG VA 24502

Instructions:

Returns shall be made hereon, showing service of Summons issued Tuesday, June 05, 2018 with a copy of the
Complaint filed Monday, June 04, 2018 attached.

Hearing date  :
Service issued: Tuesday, June 05, 2018

For Sheriff Use Only

SERVING OFFICER : Lt. D.A. HOLMES #10
DATE : JUNE 6, 2018
FOR : SHERIFF H. JENKINS
PERSONAL SERVICE : YES
TO : FIRST SERGEANT JIM FOX #14

Received By:
**Culpeper County**

JUN 0 6 2018

Sheriff's Office

378807

# COMMONWEALTH OF VIRGINIA



CULPEPER CIRCUIT COURT
Civil Division
135 W CAMERON ST
CULPEPER VA 22701

Filed In Culpeper County
Circuit Court Clerk's
Office _____ 20 18
Deputy _____ 10:03 A.M.
_____ Clerk

Proof of Service

Virginia:
In the CULPEPER CIRCUIT COURT

Case number: 047CL18000751-00
Service number: 004
Service filed: June 04, 2018
Judge:

Served by: CULPEPER COUNTY
Style of case: STEVEN E CLEM  vs SCOTT H JENKINS
Service on: BRENT W COFFEY
15148 STATE POLICE ROAD
CULPEPER VA 22701

Attorney: VALOIS, M PAUL
7601 TIMBERLAKE ROAD
LYNCHBURG VA 24502

Instructions:

Returns shall be made hereon, showing service of Summons issued Tuesday, June 05, 2018 with a copy of the
Complaint filed Monday, June 04, 2018 attached.

Hearing date  :
Service issued: Tuesday, June 05, 2018

For Sheriff Use Only

Name: Trooper Brent W. Coffey
Address: 15148 State Police Rd.
Culpeper, VA. 22701

CHECK BOX IF ADDRESS IS SAME AS FRONT: ☐

(✓) PERSONAL SERVICE   Tel. No. (____) _____

( ) Not Found   Lt. C.W. Hawkins
                SERVING DEPUTY

06-06-2018  FOR  SCOTT H. JENKINS
DATE        SHERIFF, COUNTY OF CULPEPER, VIRGINIA

Received By:
Culpeper County

JUN 06 2018

Sheriff's Office

378868

# COMMONWEALTH OF VIRGINIA



CULPEPER CIRCUIT COURT
Civil Division
135 W CAMERON ST
CULPEPER VA 22701

Filed In Culpeper County
Circuit Court Clerk's
Office June 4th 2018 @10.03 A.M.
Deputy _____ Clerk

Proof of Service

Virginia:
In the CULPEPER CIRCUIT COURT

Case number: 047CL18000751-00
Service number: 002
Service filed: June 04, 2018
Judge:

Served by: CULPEPER COUNTY
Style of case: STEVEN E CLEM vs SCOTT H JENKINS
Service on: SCOTT H JENKINS
        14023 PUBLIC SAFETY COURT
        CULPEPER VA 22701

Attorney: VALOIS, M PAUL
        7601 TIMBERLAKE ROAD
        LYNCHBURG VA 24502

Instructions:

Returns shall be made hereon, showing service of Summons issued Tuesday, June 05, 2018 with a copy of the Complaint filed Monday, June 04, 2018 attached.

Hearing date  :
Service issued: Tuesday, June 05, 2018

## For Sheriff Use Only

Name: Scott H. Jenkins
Address: 14023 Public Safety Crt
Culpeper, VA 22701
CHECK BOX IF ADDRESS IS SAME AS FRONT: ☐

(✓) PERSONAL SERVICE    Tel. No. (___)___-___

( ) Not Found    Lt. C.W. Hawkins
              SERVING DEPUTY

06-06-2018 FOR SCOTT H. JENKINS
DATE      SHERIFF, COUNTY OF CULPEPER, VIRGINIA

Received By:
**Culpeper County**

JUN 0 6 2018

Sheriff's Office

# COMMONWEALTH OF VIRGINIA



CULPEPER CIRCUIT COURT
Civil Division
135 W CAMERON ST
CULPEPER VA 22701

Filed In Culpeper County
Circuit Court Clerk's
Office June 4, 20 18
Deputy 10:03 AM.
Clerk

Proof of Service

Virginia:
In the CULPEPER CIRCUIT COURT

Case number: 047CL18000751-00
Service number: 001
Service filed: June 04, 2018
Judge:

Served by: CULPEPER COUNTY
Style of case: STEVEN E CLEM  vs SCOTT H JENKINS
Service on: SHERIFF, SCOTT H. JENKINS
                14023 PUBLIC SAFETY COURT
                CULPEPER VA 22701

Attorney: VALOIS, M PAUL
                7601 TIMBERLAKE ROAD
                LYNCHBURG VA 24502

Instructions:

Returns shall be made hereon, showing service of Summons issued Tuesday, June 05, 2018 with a copy of the
Complaint filed Monday, June 04, 2018 attached.

Hearing date  :
Service issued: Tuesday, June 05, 2018

## For Sheriff Use Only

Name: Sheriff Scott H. Jenkins
Address: 14023 Public Safety Court
Culpeper, VA 22701
CHECK BOX IF ADDRESS IS SAME AS FRONT: ☐
(✔) PERSONAL SERVICE  Tel. No. (____)
(  ) Not Found   Lt. C.W. Hawkins
                              SERVING DEPUTY

06-06-2018  FOR   SCOTT H. JENKINS
DATE              SHERIFF, COUNTY OF CULPEPER, VIRGINIA

Received By:
**Culpeper County**

JUN 0 6 2018

Sheriff's Office

# VIRGINIA : IN THE CULPEPER COUNTY CIRCUIT COURT
## SIXTEENTH JUDICIAL CIRCUIT

| | | |
|---|---|---|
| STEVEN E. CLEM,<br>Plaintiff | ) ) ) | |
| v. | ) ) | CASE NO. CL18000751-00 |
| SCOTT H. JENKINS, in his official capacity<br>as Sheriff of Culpeper County, Virginia, | ) ) ) | |
| SCOTT H. JENKINS, individually, | ) ) | |
| MASON G. MAYS, | ) ) | |
| BRENT W. COFFEY, | ) ) | |
| CHARLES BURGOON, | ) ) | |
| JAMES VERNON FOX, | ) ) | |
| JOHN DOES 1-4, | ) ) | |
| CULPEPER COUNTY, VIRGINIA, and | ) ) | |
| COMMONWEALTH OF VIRGINIA, | ) | |

Filed in Culpeper County
Circuit Court Clerk's
Office 6-18, 20 18 @ 10:12 am
DEPUTY
Stephanie Ricchiuto CLERK

## DEMURRER

COMES NOW before this Honorable Court, Culpeper County, by its County Attorney, Bobbi Jo Alexis, who (i) files this <u>Demurrer</u>, (ii) provides the specific grounds upon which the County concludes and argues that the Complaint is insufficient at law, and (iii) respectfully moves that the Court dismiss this matter, as to defendant Culpeper County, as follows:

### I. Sheriff and his Deputies; not County employees/actors,

### as a matter of law, namely the Constitution of Virginia

The Plaintiff in his <u>Complaint</u> affirmatively makes the following factual statements:

A. Defendant SCOTT H, JENKINS was, on June 23, 2016, and remains (*with emphasis*) **the elected** Sheriff of Culpeper County, Virginia. See Comp., para 2;

B. Defendant CHARLES BURGOON was employed by the Culpeper County Sheriff's Department as (*with emphasis*) **a deputy sheriff** on June 23, 2016. See Comp., para 3;

C. Defendant JAMES VERNON FOX was employed by the Culpeper County Sheriff's Department as (*with emphasis*) **a deputy sheriff** on June 23, 2016 and remains so employed. See Comp., para 4; and

D. Defendants JOHN DOES 1-4 were, on June 23, 2016, (*with emphasis*) **deputies of the Culpeper County Sheriff**. See Comp., para 7.

E. Culpeper County respectfully directs the Court's attention that within the whole of the Complaint there are no specific facts/acts/omissions alleged with regard to the County, any County employees, and/or County actors or representatives or other individuals over which the County has or exercises any control.

**Insufficiency as a matter of law (argument/grounds):**

- A county is not responsible for the actions of the local elected Sheriff (or his representatives), who holds his office by virtue of the Constitution of Virginia, Art. 7, Sec. 4, which provides that a Sheriff is a constitutional officer and that his duties are regulated and defined by state statute, independent of the county government or the state government. Hilton v. Amburgey, 198 Va. 727, (1957); Carraway v. Hill, 265 Va. 20 (2003); Sherman v. Richmond, 543 F. Supp. 447 (EDVA 2012); Chien v. Virginia, 2018 U.S. Dist. LEXIS 36242 (EDVA March 5, 2018); and also see Steele v. Bd. of Supervisors, 66 Va. Cir. 400 (Campbell Cnty. 1996) and Verry v. Barry, 71 Va. Cir. 318 (Fairfax Cnty. 2006).

- In the instant case and in light of the above, the Complaint, as a matter of law, fails to state a claim with regard to Culpeper County.

**II. Virginia State Troopers; not County employees/actors, as averred**

The Plaintiff in his Complaint affirmatively makes the following factual statements:

A. Defendant MASON G. MAYS ("MAYS") was, on June 23, 2016, and remains a (*with emphasis*) Virginia State Trooper. See Comp., para. 5;

B. Defendant BRENT W. COFFEY was, on June 23, 2016, and remains (*with emphasis*) **a Virginia State Trooper**. See Comp., para. 6;

C. Defendant COMMONWEALTH OF VIRGINIA is a sovereign state of the United States of America and employed MAYS and COFFEY on June 23, 2016. See Comp., para. 9.; and

D. Culpeper County respectfully directs the Court's attention that within the whole of the Complaint there are no specific facts/acts/omissions alleged with regard to the County, any County employees, and/or County actors or representatives or other individuals over which the County has or exercises any control.

**Insufficiency as a matter of law (argument/grounds):**

- A county is not responsible for the actions of employees of the Virginia State Police or the employees of the sovereign, Commonwealth of Virginia. See e.g., Messina v. Burden, 228 Va. 301 (1984).

- In the instant case and in light of the above, the Complaint, as a matter of law, fails to state a claim with regard to Culpeper County.

**III. Commonwealth of Virginia; a sovereign entity**

**that is not an employee/actor of Culpeper County, as a matter of law**

A. Defendant COMMONWEALTH OF VIRGINIA is a sovereign state of the United States of America and employed MAYS and COFFEY on June 23, 2016. See Comp., para. 9.; and

B. Culpeper County respectfully directs the Court's attention that within the whole of the Complaint there are no specific facts/acts/omissions alleged with regard to the County, any County employees, and/or County actors or representatives or other individuals over which the County has or exercises any control.

Insufficiency as a matter of law (argument/grounds):

- A county is not responsible for the acts or omissions of the Commonwealth of Virginia, and/or its representatives and employees. See e.g., <u>Messina v. Burden</u>, 228 Va. 301(1984).

- In the instant case and in light of the above, the Complaint, as a matter of law, fails to state a claim with regard to Culpeper County.

A <u>Table of Cases</u> and copies of the authorities, binding and persuasive, herein cited are attached to this <u>Demurrer</u> for ease of reference for the Court and parties.

**WHEREFORE**, Culpeper County humbly prays this Honorable Court dismiss this lawsuit, as to defendant Culpeper County.

Respectfully submitted,
Culpeper County

By: Bobbi Jo Alexis
Culpeper County Attorney
VSB No. 67902
306 N. Main Street, 2nd Floor
Culpeper, VA 22710
Tele: 540-727-3407
Fax: 540-727-3462
bjalexis@culpepercounty.gov

# **TABLE OF CASES**

(in order of which the cite appears in the Demurrer)

| Case Name | Case Citation | Demurrer Page No(s). |
|---|---|---|
| Hilton v. Amburgey | 198 Va. 727, (1957) | 2 |
| Carraway v. Hill | 265 Va. 20 (2003) | 2 |
| Sherman v. Richmond | 543 F. Supp. 447 (EDVA 2012) | 2 |
| Chien v. Virginia | 2018 U.S. Dist. LEXIS 36242 (EDVA March 5, 2018) | 2 |
| Steele v. Bd. of Supervisors | 66 Va. Cir. 400 (Campbell Cnty. 1996) | 2 |
| Verry v. Barry | 71 Va. Cir. 318 (Fairfax Cnty. 2006) | 2 |
| Messina v. Burden | 228 Va. 301 (1984) | 3,4 |

# Hilton v. Amburgey

# 198 Va. 727

# Virginia Supreme Court (1957)

38

# Hilton v. Amburgey

Supreme Court of Virginia

January 21, 1957

Record No. 4616

**Reporter**
198 Va. 727 *; 96 S.E.2d 151 **; 1957 Va. LEXIS 131 ***

L. N. HILTON v. B. HOBERT AMBURGEY, ET AL

**Prior History:** [***1] Error to a judgment of the Circuit Court of Dickenson county. Hon. F. W. Smith, judge presiding.

**Disposition:** *Affirmed and remanded.*

## Core Terms

salary, garnishment, constitutional officer, Surety, board of supervisors, auditor

## Case Summary

### Procedural Posture
Appellant creditor sought review of an order from the Circuit Court of Dickenson County (Virginia), which sustained appellee sheriff's motion to dismiss a garnishment proceeding.

### Overview
The judgment creditor caused a writ of fieri facias to be issued against the sheriff on a judgment against him. The judgment creditor then challenged an order of the trial court sustaining the sheriff's motion to dismiss the garnishment proceeding on the ground that the sums in controversy were not subject to garnishment because they were part of the salary due to the sheriff. On appeal, the court affirmed the order dismissing the garnishment proceeding. The court held that the salary of a sheriff as a constitutional officer was not subject to garnishment. The court also found that the sheriff held his office by virtue of Va. Const. § 110.

### Outcome
An order of the lower court dismissing a garnishment action brought by the judgment creditor against the sheriff was affirmed.

## LexisNexis® Headnotes

Civil Procedure > Judgments > Enforcement & Execution > Garnishment

Governments > Local Governments > Employees & Officials

Labor & Employment Law > Wage & Hour Laws > Scope & Definitions > Governmental Employees

Governments > Local Governments > Duties & Powers

*HN1*[⚓] **Enforcement & Execution, Garnishment**

Va. Code Ann. § 8-449.2 states: Unless otherwise exempt, the wages and salaries of all officials, clerks and employees of any city, town or county shall be subject to garnishment or execution upon any judgment rendered against them. In one sense the sheriff may be regarded as a county officer. However, Va. Code Ann. § 8-449.1 limits the application of the above quoted section to the salaries of officers whose offices are created by the general assembly or by a county or municipality, in the following language: All officers, clerks and employees who hold their office by virtue of authority from the general assembly or by virtue of city, town or county authority, whether by election or appointment, and who receive compensation for their services from the moneys of

such city, town or county shall, for the purposes of garnishment, be deemed to be, and are, officers, clerks or employees of such city, town or county.

Governments > Courts > Clerks of Court

Governments > Local Governments > Elections

Governments > Local
Governments > Employees & Officials

*HN2*[⚓] **Courts, Clerks of Court**

Sheriffs, clerks of court, treasurers, commonwealth's attorneys and commissioners of revenue do not hold their offices by virtue of authority of the general assembly or by virtue of authority of a municipality or county. The sheriff and the other officers named hold their offices by virtue of Va. Const. § 110, which provides that all the officers named shall be elected by the qualified voters of the county and that their duties and compensation shall be prescribed by general law. Under this provision of the constitution a sheriff is a constitutional officer and his duties are regulated and defined by the statute.

Civil Procedure > Judgments > Enforcement & Execution > Garnishment

Governments > Local
Governments > Employees & Officials

*HN3*[⚓] **Enforcement & Execution, Garnishment**

In the absence of any relevant statute, the general rule is that the compensation of a public officer is not subject to the demands of creditors through a process of garnishment.

Civil Procedure > Judgments > Enforcement & Execution > Garnishment

Governments > State & Territorial
Governments > Employees & Officials

*HN4*[⚓] **Enforcement & Execution, Garnishment**

Va. Code Ann. § 8-449.1 states: Unless otherwise exempted the wages and salaries of all employees of the state, other than state officers, shall be subject to garnishment or execution upon any judgment rendered against them.

## Headnotes/Syllabus

### Headnotes

(1) and (2) Garnishment -- Sheriff's Salary Exempt.

1. Hilton's proceedings to garnish sums owed Amburgey by the Commonwealth and by Dickenson county were dismissed on the ground Amburgey was sheriff of the county and the sums were not subject to garnishment because they represented part of his salary as sheriff. On appeal Hilton urged that the sheriff was a county officer and his salary therefore subject to garnishment under Code 1950, section 8-449.2. But section 8-449.3 limits the application of the prior section to the case of officers whose offices are created by the legislature or by the locality. Since a sheriff holds his office by virtue of section 110 of the Constitution, section 8-449.2 was held inapplicable and the general common law rule applied, that the compensation of a public officer is not subject to garnishment.

2. This rule, based on the public policy of securing efficiency in the public service, has not been changed by the provision of Code 1950, section 8-449.1, that the salaries of all State employees, other than [***2] State officers, shall be subject to garnishment.

### Syllabus

The opinion states the case.

**Counsel:** Case submitted on briefs.

*S. H. Sutherland* and *S. H. & George C. Sutherland* for the plaintiff in error.

*Hansel Fleming, M. M. Long* and *Long & Long* for the defendants in error.

**Judges:** Present, Hudgins, C.J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

**Opinion by:** HUDGINS

## Opinion

[*727] [**151]   HUDGINS, C.J., delivered the opinion of the court.

[*728] On December 7, 1942, in a chancery suit then pending in the Circuit Court of Dickenson County entitled L. N. Hilton etc. v. B. H. Amburgey, Admr. of the estate of J. H. Amburgey, and his surety, the Virginia Surety Company et al, a decree was entered declaring, among other things, that B. H. (Hobert) Amburgey and the Virginia Surety Company were indebted to [**152] L. N. Hilton in the sum of $1579.23, and judgment was entered against both. From this decree the Virginia Surety Company obtained an appeal, and on October 11, 1943, this Court reversed the finding and judgment of the lower court and decided that the Virginia Surety Company, as surety on the bond of the administrator, was liable to L. N. [***3] Hilton in the sum of $268.08 only, and entered judgment accordingly. *Virginia Surety Company* v. *Hilton*, 181 Va. 952, 27 S.E.2d 62. This judgment has been paid and discharged. B. Hobert Amburgey, the principal on the administrator's bond, did not join in the appeal.

[1] On February 27, 1956, L. N. Hilton caused a writ of *fieri facias* to be issued against B. Hobert Amburgey on the above mentioned judgment for $1579.23, subject to a credit of $174.21, and served upon the Commonwealth of Virginia and the County of Dickenson. S. C. Day, Comptroller for the Commonwealth, in answer to the summons, stated that the Commonwealth was indebted to Amburgey in the sum of $311.51. Glyn R. Phillips,

Commonwealth's Attorney of Dickenson County, in an answer for the County, stated that the County was indebted to Amburgey in the sum of $187.56.

At the hearing the trial court sustained Amburgey's motion to dismiss the garnishment proceedings on the ground that the sums in controversy were not subject to garnishment because they were part of the salary of $5200.00 due him for the current year as Sheriff of Dickenson County, one-third of which was an obligation of Dickenson County, [***4] and the other two-thirds was an obligation of the Commonwealth. It was agreed that Amburgey was the duly elected Sheriff of Dickenson County, and on January 1, 1956, had qualified as such officer for a term of four years. L. N. Hilton prosecutes this appeal from the judgment dismissing the garnishment proceedings.

The only assignment of error stated in the petition for this writ of error and the only question decided by the lower court is whether the salary of a sheriff is subject to garnishment or attachment.

Appellant contends that a sheriff is a county officer and that his salary is subject to garnishment under the provisions of **HN1**[↑] Code § 8-449.2, which reads as follows:

[*729] "Unless otherwise exempt, the wages and salaries of all officials, clerks and employees of any city, town or county shall be subject to garnishment or execution upon any judgment rendered against them."

In one sense the sheriff may be regarded as a county officer. However, Code § 8-449.3 limits the application of the above quoted section to the salaries of officers whose offices are created by the General Assembly or by a county or municipality, in the following language:

"All officers, [***5] clerks and employees who hold their office by virtue of authority from the General Assembly or by virtue of city, town or county authority, whether by election or appointment, and who receive compensation for their services from the moneys of such city, town or county shall, for the purposes of garnishment, be deemed to be, and are, officers, clerks or employees of such city,

town or county."

*HN2*[↑] Sheriffs, clerks of court, treasurers, commonwealth's attorneys and commissioners of revenue do not hold their offices by virtue of authority of the General Assembly or by virtue of authority of a municipality or county. The sheriff and the other officers named hold their offices by virtue of § 110 of the constitution, which provides that all the officers named shall be elected by the qualified voters of the county and that their duties and compensation shall be prescribed by general law. In *Narrows Grocery Co.* v. *Bailey,* 161 Va. 278, 170 S.E. 730, we held that under this provision of the constitution a sheriff is a constitutional officer and his duties are regulated and defined by the statute. In *McGinnis* v. *Nelson County,* 146 Va. 170, [**153] 135 S.E. 696, we held that [***6] a commissioner of the revenue was a constitutional officer, and in *Burnett* v. *Brown,* 194 Va. 103, 72 S.E.2d 394, we held that the commonwealth's attorney was a constitutional officer. Simply because the county pays one-third of the salary of a sheriff does not make him an officer or employee of the county within the definition of such officers stated in Code § 8-449.3 as contended by appellant.

*HN3*[↑] In the absence of any relevant statute, the general rule is that the compensation of a public officer is not subject to the demands of creditors through a process of garnishment. See 4 Am. Jur., Attachment and Garnishment, 141, p. 640, 38 C.J.S. 244, Ann. 56 A.L.R. 602 and cases therein cited.

The facts in *Blair, Attorney-General* v. *Marye, Auditor,* 80 Va. 485, were that Morton Marye, the Auditor of Public Accounts, acting pursuant to a statute (Acts of 1884, Extra Session, 90) entitled [*730] "An ACT to provide for securing to the state money due to it by any of its officers", withheld the payment of a part of the salary due F. S. Blair as Attorney-General on the ground that Blair was indebted to the Commonwealth. In the mandamus proceedings instituted by the Attorney-General [***7] to compel the auditor to pay that part of the salary withheld by him, it was decided that it was not within the power of the legislature to

withhold from such officer the salary which was prescribed by law, nor to delegate such power to the auditor. On pages 495 and 497 it is said:

"The public service is protected by protecting those engaged in performing public duties; and this, not only on the ground of private interest, but upon the necessity of securing efficiency in the public service, by seeing to it that the compensation provided for its performance, shall be received by those who are to perform the work; but the *withholding* the salaries and emoluments of constitutional public officers, would prove hurtful and even disastrous to the public service."

* * *

". . . The services and salary of a public officer are founded in constitutional grant, and not in *contract;* and they have none of the affinities or liabilities under the law of contract. The salary of the attorney-general is of constitutional grant and of public official right; and the doctrine of *offset* cannot be applied to it, as the auditor asserts a right to do in this case. It is not liable to [***8] *attachment,* nor to be *garnisheed;* nor to assignment in bankruptcy, and, upon principles of *public policy,* it has absolute immunity from detention for debt or counter-claim."

[2] The appellant in effect contends that the public policy as declared in the above case has been changed by statute adopted since 1885, when the above decision was announced.

This contention is based upon the provisions of *HN4*[↑] Code § 8-449.1, the pertinent part of which is: "Unless otherwise exempted the wages and salaries of all employees of the State, *other than State officers,* shall be subject to garnishment or execution upon any judgment rendered against them. …"

This statute was first adopted in 1900 (Acts of 1899-1900, 546) without the four words italicized. The 1919 Code Revisors amended the statute by adding the words "other than State officers", 1919 [*731] Code, § 6559. Notwithstanding the fact that this statute has been in effect since its adoption, this Court has consistently held that the

salary of a constitutional officer is exempt from garnishment or attachment and has applied the principle stated in *Blair* v. *Marye, supra.*

The facts in *Board of Supervisors* [***9] v. *Coons,* 121 Va. 783, 94 S.E. 201, were that the board of supervisors of Culpeper county, by resolution, required the clerk to perform duties other than those imposed upon him by general [**154] law as a condition precedent to the payment of any part of his salary. In granting a petition for a mandamus to compel the board to pay him the salary without the condition attached we said:

"The principle applied in the case just cited *(Blair* v. *Marye)* is the same as that which is involved in the undertaking by board of supervisors to withhold any action fixing the amount of, or (what is the same thing in effect) the undertaking by such board to place a condition or conditions upon the payment of the salary or compensation allowed by law to an officer whose office or position is not created by the board of supervisors but by law. Such an office or position is not the creature of the board of supervisors but of the law. By the law, therefore, and not by the board of supervisors, except as they may act in accordance with the law, must the salary or compensation of such office or position be fixed. . . ." See *Fleming* v. *Anderson,* 187 Va. 788, 48 S.E.2d 269. [***10]

The question whether the salary of a commonwealth's attorney is subject to garnishment was raised in *Kentucky Wholesale Co.* v. *R. E. Chase* (judgment debtor), Dickenson County and the Commonwealth, garnishees. It was conceded that Kentucky Wholesale Company held a valid judgment against R. E. Chase, the duly appointed and acting commonwealth's attorney for Dickenson County, and that the money sought to be attached was an obligation due him as such officer both by the county and the Commonwealth. The same trial judge who presided in the case now under consideration held in that case that the commonwealth's attorney of Dickenson County was a constitutional officer and that his salary was not subject to garnishment. This Court on October 15, 1947, approved the judgment of the trial court and refused to grant the petition for a writ of error.

Writs of Error Refused, Record No. 2792. The same constitutional section (110) that makes the attorney for the Commonwealth a constitutional officer makes the sheriff such an officer.

Applying the doctrine of *stare decisis,* we affirm the judgment of [*732] the trial court holding that the salary of a sheriff as a constitutional [***11] officer is not subject to garnishment, and remand the case for it to decide the undetermined issues raised by the pleadings.

Affirmed and remanded.

---

**End of Document**

# Carraway v. Hill

# 265 Va. 20

# Virginia Supreme Court

# (2003)

44

# Carraway v. Hill

Supreme Court of Virginia

January 10, 2003, Decided

Record No. 020487

**Reporter**

265 Va. 20 *; 574 S.E.2d 274 **; 2003 Va. LEXIS 7 ***; 19 I.E.R. Cas. (BNA) 1385

BARBARA O. CARRAWAY v. ELIZABETH S. HILL

**Prior History:** [***1] FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE. Norman Olitsky, Judge Designate.

**Disposition:** Reversed and final judgment.

## Core Terms

constitutional officer, member of the board, personal information, newspaper, Dissemination, practices

## Case Summary

### Procedural Posture

Plaintiff, a former city employee, petitioned for declaratory and injunctive relief, asserting that defendant city treasurer violated the Government Data Collection and Dissemination Practices Act, Va. Code Ann. §§ 2.2-3800 to -3809. The Circuit Court of the City of Chesapeake (Virginia), among other things, found that the treasurer violated the Act and enjoined her from further violations regarding the employee. The treasurer appealed.

### Overview

The employee alleged that, during a campaign for city treasurer, the city treasurer, who was the incumbent, violated Va. Code Ann. § 2.2-3803(A)(1) of the Act by giving a newspaper reporter information from the employee's employment file. Section 2.2-3803(A)(1) provided, inter alia, that any agency maintaining an information system that included personal information was to use and disseminate only that personal information that was permitted or required by law to be so used or disseminated, or

necessary to accomplish a proper purpose of the agency. The treasurer argued to the trial court and on appeal that a constitutional officer, such as herself, did not come within the Act's definition of an "agency," and that she, therefore, was not subject to the Act. The supreme court agreed. An "agency" as defined in Va. Code Ann. § 2.2-3801(6) of the Act referred to an entity that received its authority through legislative or executive action. The city treasurer, by contrast, was a constitutional officer whose authority was derived from the Constitution of Virginia. Accordingly, the Act did not apply to the city treasurer, and the employee was not entitled to the relief she was granted.

### Outcome

The supreme court reversed the judgment.

## LexisNexis® Headnotes

Administrative Law > Governmental Information > Personal Information > General Overview

*HN1*[⬇] **Governmental Information, Personal Information**

The Government Data Collection and Dissemination Practices Act, Va. Code Ann. §§ 2.2-3800 to -3809, does not make personal information confidential but establishes certain practices which must be followed in the collection, retention, and dissemination of that information.

Administrative Law > Governmental Information > Personal Information > General Overview

**HN2[ ] Governmental Information, Personal Information**

Va. Code Ann. § 2.2-3803(A)(1) of the Government Data Collection and Dissemination Practices Act, Va. Code Ann. §§ 2.2-3800 to -3809, provides that any agency maintaining an information system that includes personal information shall collect, maintain, use, and disseminate only that personal information permitted or required by law to be so collected, maintained, used, or disseminated, or necessary to accomplish a proper purpose of the agency.

Administrative Law > Governmental Information > Personal Information > General Overview

**HN3[ ] Governmental Information, Personal Information**

A constitutional officer does not come within the definition of "agency" in the Government Data Collection and Dissemination Practices Act, Va. Code Ann. §§ 2.2-3800 to -3809.

Administrative Law > Governmental Information > Personal Information > General Overview

**HN4[ ] Governmental Information, Personal Information**

The purpose of the Government Data Collection and Dissemination Practices Act, Va. Code Ann. §§ 2.2-3800 to -3809, is to provide standards which a government agency must follow in the operation of personal information systems. To accomplish this purpose, the provisions of the Act impose specific procedures on those agencies. Va. Code Ann. Code §§ 2.2-3803, -3805, -3806, -3808.

Administrative Law > Governmental Information > Personal Information > General Overview

**HN5[ ] Governmental Information, Personal Information**

See Va. Code Ann. § 2.2-3801(6).

Administrative Law > Separation of Powers > Constitutional Controls > General Overview

Governments > Local Governments > Duties & Powers

Administrative Law > Governmental Information > Personal Information > General Overview

Governments > Local Governments > Employees & Officials

**HN6[ ] Separation of Powers, Constitutional Controls**

"Agency" as used in the Government Data Collection and Dissemination Practices Act, Va. Code Ann. §§ 2.2-3800 to -3809, refers to an entity that receives its authority through legislative or executive action. In contrast, a constitutional officer is an independent public official whose authority is derived from the Constitution of Virginia even though the duties of the office may be prescribed by statute. While constitutional officers may perform certain functions in conjunction with units of county or municipal government, neither the officers nor their offices are agencies of such governmental units.

Administrative Law > Governmental Information > Personal Information > General Overview

Governments > Local Governments > Employees & Officials

*HN7[⤓]* **Governmental Information, Personal Information**

Va. Code Ann. § 42.1-77 defines "public official" to include any person holding an office created by the Constitution of Virginia.

> Administrative Law > Governmental Information > Personal Information > General Overview

> Governments > Local Governments > Employees & Officials

> Governments > Local Governments > Finance

*HN8[⤓]* **Governmental Information, Personal Information**

The Government Data Collection and Dissemination Practices Act, Va. Code Ann. §§ 2.2-3800 to -3809, does not apply to a city treasurer, a constitutional officer.

> Administrative Law > Governmental Information > Personal Information > General Overview

*HN9[⤓]* **Governmental Information, Personal Information**

Va. Code Ann. § 2.2-3809 allows an action against any person or agency that has engaged, is engaged, or is about to engage in any acts or practices in violation of the Government Data Collection and Dissemination Practices Act, Va. Code Ann. §§ 2.2-3800 to -3809.

> Administrative Law > Governmental Information > Personal Information > General Overview

*HN10[⤓]* **Governmental Information, Personal Information**

The phrase "any person" in Va. Code Ann. § 2.2-3809 of the Government Data Collection and Dissemination Practices Act, Va. Code Ann. §§ 2.2-3800 to -3809, refers to those persons through whom covered agencies conduct their business.

> Administrative Law > Governmental Information > Personal Information > General Overview

*HN11[⤓]* **Governmental Information, Personal Information**

The Government Data Collection and Dissemination Practices Act, Va. Code Ann. §§ 2.2-3800 to -3809, does not apply to constitutional officers.

**Counsel:** A.W. VanderMeer, Jr. (Pender & Coward, on briefs), for appellant.

Kevin E. Martingayle (Stallings & Richardson, on brief), for appellee.

**Judges:** Present: All the Justices. OPINION BY JUSTICE ELIZABETH B. LACY.

**Opinion by:** ELIZABETH B. LACY

## Opinion

[**275] [*21]    OPINION    BY    JUSTICE ELIZABETH B. LACY

In this appeal, we consider whether the Government Data Collection and Dissemination Practices Act, Code §§ 2.2-3800 through -3809 (the Act), applies to constitutional officers.

[*22] From January 5 to April 2, 2001, Elizabeth S. Hill was employed by a temporary personnel service and assigned to the office of the City Treasurer of the City of Chesapeake. On April 2, 2001, Hill became a direct employee of the office. Hill's employment with the office ended on April 19, 2001. In May 2001, Hill became a candidate for the position of City Treasurer. Barbara O. Carraway, the incumbent, was running for re-election.

Page 2 of 5

47

During the campaign, Carraway was interviewed by a newspaper reporter in response to a newspaper article in which Hill accused Carraway of failing to register a charity group Carraway operated at her office. In publishing the interview, the reporter quoted Carraway as stating that Hill was "released" from the [***2] City Treasurer's office after "less than three weeks" of employment. Hill's lawyer subsequently wrote to Carraway seeking a retraction of her statements and an apology, asserting that Hill had voluntarily resigned her employment with the Treasurer's office. Hill, who had obtained her employment file from the City of Chesapeake Department of Human Resources, also accused Carraway of "padding" Hill's personnel file with negative comments concerning her employment by filing certain memoranda after her resignation. The newspaper obtained a copy of this letter and published an article detailing its contents.

Carraway's attorney responded to Hill's attorney by letter dated October 16, 2001, asserting that Carraway's statements were accurate and that, in accord with standard office procedure, memoranda concerning Hill's employment were transferred from the City Treasurer's employment files to the City of Chesapeake Human Resource Department's files after the termination of Hill's employment. Carraway provided the newspaper reporter with a copy of this letter.

On October 23, 2001, Hill filed a petition for declaratory judgment and injunctive relief asserting that Carraway violated the Act [***3] by giving the newspaper reporter information from Hill's employment file. Following a bench trial, the trial court issued a letter opinion stating that, "based upon all of the evidence presented to the Court, in particular the defendant's transmission and release of her attorney's letter of October 16, 2001 to the news media," Carraway violated the Act. The trial court entered an order enjoining Carraway from committing any further violations of the Act "with respect to [*23] Elizabeth [**276] Hill" and awarded Hill attorneys' fees and costs pursuant to Code § 2.2-3809. * We granted Carraway an appeal.

The Government Data Collection and Dissemination Practices Act was enacted in response to concerns over potentially [***4] abusive information-gathering practices by the government, including enhanced availability of such personal information through technology. *Hinderliter v. Humphries*, 224 Va. 439, 443-44, 297 S.E.2d 684, 686 (1982). **HN1**[⬆] The Act does not make such personal information confidential but establishes certain practices which must be followed in the collection, retention, and dissemination of that information. *Id.* at 447, 297 S.E.2d at 688.

The specific provision of the Act which Carraway allegedly violated was subsection (A)(1) of Code § 2.2-3803. **HN2**[⬆] That subsection provides any agency maintaining an information system that includes personal information shall:

1. Collect, maintain, use, and disseminate only that personal information permitted or required by law to be so collected, maintained, used, or disseminated, or necessary to accomplish a proper purpose of the agency.

Carraway contends here, as she did below, that **HN3**[⬆] a constitutional officer does not come within the Act's definition of "agency" and, therefore, as Treasurer of the City of Chesapeake she was not subject to the provisions of the Act. We agree.

As recited above, **HN4**[⬆] the [***5] purpose of the Act is to provide standards which a government agency must follow in the operation of personal information systems. To accomplish this purpose, the provisions of the Act impose specific procedures on those *agencies. See* Code §§ 2.2-3803, -3805, -3806, -3808. The Act defines "agency," in relevant part, as **HN5**[⬆] "any agency, authority, board, department, division, commission, institution, bureau, or like governmental entity of the Commonwealth or of any unit of local

---

* The trial court's order referred to the predecessor statute

which was enacted as the Privacy Protection Act of 1976, Code §§ 2.1-377 through -386, but which was repealed and reenacted under its current name without substantive change, effective October 1, 2001.

government including counties, cities, towns and regional governments and departments . . . ." Code § 2.2-3801(6). *HN6*[⬆] "Agency" as used in the Act refers to an entity that receives its authority through legislative or executive action. *See Connell v. Kersey*, 262 Va. 154, 161, 547 S.E.2d 228, 231 [*24] (2001). In contrast, a constitutional officer is an independent public official whose authority is derived from the Constitution of Virginia even though the duties of the office may be prescribed by statute. *See id.* at 162, 547 S.E.2d at 232. While constitutional officers may perform certain functions in conjunction with units of [***6] county or municipal government, neither the officers nor their offices are agencies of such governmental units.

Had the General Assembly intended the Act to include constitutional officers, it could have expanded the definition of "agency" to reach such constitutional officers. *See e.g.*, Code § 42.1-77 *HN7*[⬆] (defining "public official" to include any person holding office created by Constitution of Virginia). Accordingly, we conclude that *HN8*[⬆] the Act does not apply to a city treasurer, a constitutional officer.

Hill argued on brief and at oral argument, however, that, even if the Act did not apply to the Office of the City Treasurer, it did apply to the City of Chesapeake Human Resources Department. Analogizing Carraway's actions to that of a member of the board of supervisors in *Hinderliter v. Humphries*, Hill maintains that Carraway violated the Act when she provided information held by the Chesapeake Human Resources Department to her attorney and subsequently to the newspaper reporter.

In *Hinderliter*, a member of the board of supervisors received a copy of a police report containing personal information on a police officer which the board member, in [***7] turn, allowed her daughter to use. Because the board member was entitled to the report in her official capacity, there was no violation when the board member was given the information. The board member, however, did violate the Act when she allowed her daughter access to and use of the report. 224 Va.

at 449-50, 297 S.E.2d at 689-90.

[**277] Hill's application of *Hinderliter* ignores the distinction between the status of a member of the board of supervisors and a constitutional officer. A county board of supervisors comes within the Act's definition of "agency" and, therefore, a member of such a board is subject to the provisions of the Act. In the instant case, as we have said, Carraway as a constitutional officer was not subject to the provisions of the Act.

Finally, Hill argues that Carraway is subject to the sanctions provided by the Act *HN9*[⬆] because Code § 2.2-3809 allows an action against "*any person* or agency that has engaged, is engaged, or is about to engage in any acts or practices" in violation of the Act. (emphasis added) We reject Hill's construction of this provision [*25] because such a construction would subject persons unconnected with a government [***8] agency to the Act's sanctions. Rather *HN10*[⬆] the phrase "any person" properly construed refers to those persons through whom covered agencies conduct their business.

Because we conclude that *HN11*[⬆] the Act does not apply to constitutional officers, we will reverse the judgment of the trial court. Accordingly, we need not address Carraway's remaining assignments of error.

*Reversed and final judgment.*

---

**End of Document**

Sherman v. Richmond

543 F. Supp. 447

EDVA

Richmond Division

(2012)

# Sherman v. Richmond

United States District Court for the Eastern District of Virginia, Richmond Division

July 28, 1982

Civ. A. No. 82-0250-R

## Reporter

543 F. Supp. 447 *; 1982 U.S. Dist. LEXIS 13762 **

Angie SHERMAN v. CITY OF RICHMOND, et al.

## Core Terms

termination, property interest, liberty interest, selective, summary judgment motion, motion to dismiss, requirements, notice

## Case Summary

### Procedural Posture

Plaintiff, a former deputy sheriff, brought an action under 42 U.S.C.S. § 1983 against defendants, the Commonwealth of Virginia, a city, and a sheriff's department, for alleged violation of the deputy sheriff's due process rights by refusing to grant her a hearing and terminating her without reasonable cause. The Commonwealth and the city filed motions to dismiss and the sheriff's department filed a motion for summary judgment.

### Overview

Finding that the deputy sheriff failed to state a cognizable claim against either the city or the Commonwealth, the court granted their motion to dismiss. Neither the city nor the Commonwealth was responsible for the actions of the sheriff, who held his office by virtue of Va. Const. art. 7, § 4, which provided that a sheriff was a constitutional officer and that his duties were regulated and defined by state statute, independent of the municipal or county government or the state government. The court also granted the sheriff's department's summary judgment motion. Because the deputy sheriff was appointed pursuant to Va. Code Ann. § 15.1-48, which provided that deputies were appointed at the will of the sheriff and were subject to discharge at any time, she did not have a reasonable expectation of continued employment

sufficient to constitute a property interest under the Due Process Clause. There was no suggestion in the record that the sheriff's department disseminated any information about the deputy sheriff's termination that impaired her good name, reputation, honor, or integrity, and thus there was no deprivation of her liberty interests under the Fourteenth Amendment.

### Outcome

The court granted the city's and the Commonwealth's motion to dismiss and granted the sheriff's department's motion for summary judgment.

## LexisNexis® Headnotes

Governments > Local Governments > Police Power

*HN1*[⤓] **Local Governments, Police Power**

A sheriff holds his office by virtue of Va. Const. art. 7, § 4. A sheriff is a constitutional officer and his duties are regulated and defined by state statute. As a constitutional officer, a sheriff serves independent of the municipal or county government and independent of the state government.

Civil Procedure > ... > Summary Judgment > Motions for Summary Judgment > General Overview

Civil Procedure > Judgments > Summary

Judgment > General Overview

Civil Procedure > ... > Summary Judgment > Burdens of Proof > General Overview

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > General Overview

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Genuine Disputes

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Materiality of Facts

**HN2[⬙]** **Summary Judgment, Motions for Summary Judgment**

The question presented on a motion for a summary judgment is whether there is a genuine issue as to any material fact in the case. Fed. R. Civ. P. 56(c). Once one party files a properly supported motion for summary judgment, the other party may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.

Constitutional Law > Substantive Due Process > Scope

**HN3[⬙]** **Constitutional Law, Substantive Due Process**

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Governments > Local Governments > Employees & Officials

**HN4[⬙]** **Local Governments, Employees & Officials**

Va. Code Ann. § 15.1-48 states that the sheriff of any county or city may appoint one or more deputies who may discharge any of the official duties of their principal. Any such deputy may be removed from office by his principal.

Constitutional Law > Substantive Due Process > Scope

Labor & Employment Law > Employment Relationships > At Will Employment > General Overview

**HN5[⬙]** **Constitutional Law, Substantive Due Process**

To have a property interest in a benefit, such as employment, one must have a legitimate claim of entitlement to it. In the context of property interests in employment, an employee must have a sufficient expectancy of continued employment to constitute a protected property interest. An individual who is employed "at the will and pleasure of" their employer does not have a property interest protected by the Fourteenth Amendment, therefore the procedural requirements of due process do not apply.

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

Labor & Employment Law > Employee Privacy > Disclosure of Employee Information > Public Employees

**HN6[⬙]** **Procedural Due Process, Scope of Protection**

The procedural requirements of due process also apply to the deprivation of an employee's liberty interests. Only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his

termination is such a hearing required. A private communication of the reasons for an employee's discharge cannot properly form the basis for a claim that a plaintiff's interest in his good name, reputation, honor, or integrity was thereby impaired.

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

**HN7[⬇]** **Procedural Due Process, Scope of Protection**

The Due Process Clause is not a guarantee against incorrect or ill-advised personnel decisions.

**Counsel:** [**1] Angie Sherman, pro se.

William H. Hefty, James R. Saul, Asst. City Atty.; Gerald L. Baliles, Atty. Gen., of Va., William G. Broaddus, Chief Deputy Atty. Gen., Dennis G. Merrill, Malcolm R. West, Asst. Attys. Gen., James W. Hopper, Baugh, Horwitz & Hopper, Richmond, Va., for defendants.

**Opinion by:** WARRINER

# Opinion

[*448] OPINION

This action was filed under 42 U.S.C. § 1983 for alleged violation of plaintiff's right to due process under the Fourteenth Amendment to the United States Constitution. Presently, the Court has before it the defendants' Commonwealth of Virginia and City of Richmond motions to dismiss the action and the defendant Richmond Sheriff's Department's motion for summary judgment.

The plaintiff in this action, Angie Sherman, was employed as a Deputy Sheriff of the City of Richmond by the Richmond Sheriff's Department pursuant to Va.Code § 15.1-48. On 7 December 1980 plaintiff injured her back when she fell down some steps at the City Jail. Following this injury plaintiff was disabled for approximately one month

before returning to work at the City Jail and being assigned light duties. On 23 February 1981 plaintiff reinjured her back at the City Jail while [**2] attempting to subdue an inmate. Following the reinjury plaintiff was again disabled for approximately one month. It is not clear from the record before the Court whether plaintiff returned to work and resumed light duties after the 23 February 1981 injury to her back. Nevertheless, it is clear from the record that plaintiff was offered selective work in the control tower following the 23 February 1981 injury. On 6 May 1981 plaintiff communicated her refusal to accept the selective work in the control tower stating that she continued to be disabled from the 23 February 1981 injury to her back. Plaintiff received full salary in lieu of compensation from 7 December 1980, the date of the original injury, through 6 May 1981, the date plaintiff refused the assignment to selective work in the control tower. Plaintiff was removed from the payroll on 6 May 1981.

Following her removal from the payroll, plaintiff sought and was granted review before the Virginia Industrial Commission. On 14 July 1981 the Hearing Commissioner rejected plaintiff's claim and found that plaintiff had no compensable incapacity after March 1981 and that there was no evidence of incapacity to perform the selective [**3] assignment offered to plaintiff and declined by plaintiff as of 6 May 1981. This finding was reviewed before the full Industrial Commission on 28 August 1981. In an opinion dated 13 November 1981, the Industrial Commission affirmed the decision of the Hearing Commissioner and found "that as of May 6, 1981, the (plaintiff) was offered selective employment within her work capacity which was unjustifiably refused and that no further compensation is due during such unjustified refusal...." Angie Sherman, No. 100-37-88, at 4 (Nov. 13, 1981). [1] By letter dated 2 February 1982

---

[1] Plaintiff was represented by counsel before the Virginia Industrial Commission. In her complaint plaintiff states that she did not receive notice of the Industrial Commission's decision until 15 December 1981 which, plaintiff asserts, was "too late for an appeal." Rule 5:19(b) of the Rules of the Supreme Court of Virginia requires that notice of an appeal from the Industrial Commission be filed with the clerk of the Virginia Supreme Court "within fifteen days after entry of the

plaintiff received notice from Robert Cumbea, Chief Jailor, that she had been discharged from her position as Deputy Sheriff as of 13 November 1981, the date of the Industrial Commission's decision. The letter cited the [*449] Industrial Commission's decision and concluded that plaintiff's failure to accept the defendant Sheriff Department's offer of selective work was grounds for termination. In a letter dated 23 February 1982 from Andrew Winston, Richmond Sheriff, plaintiff was again notified of the reason for her termination and was informed that there would be no administrative hearing regarding her termination. [**4]

[**5] The plaintiff filed this action on 7 April 1982. The defendants Commonwealth of Virginia and City of Richmond filed motions to dismiss the action on 30 April 1982 and 18 May 1982, respectively. On 10 May 1982 the defendant Richmond Sheriff's Department filed a motion for summary judgment. These motions are now ripe for decision.

The defendant City of Richmond's motion to dismiss and the defendant Commonwealth of Virginia's motion to dismiss must both be granted because the plaintiff has failed to state a cognizable claim against either defendant. Neither the City of Richmond nor the Commonwealth of Virginia is responsible for the actions of the Sheriff of the City of Richmond. **HN1**[⚓] The Sheriff holds his office by virtue of Article 7, Section 4, of the Virginia Constitution. "(A) sheriff is a constitutional officer and his duties are regulated and defined by (State) statute." Hilton v. Amburgey, 198 Va. 727,

729, 96 S.E.2d 151, 152 (1957). Cf. Newport News Fire Fighters Ass'n. v. City of Newport News, 307 F. Supp. 1113, 1116 (1969) ("A Commonwealth's Attorney is a constitutional officer of the Commonwealth of Virginia ... (h)e is not an officer or employee of a county").

As a constitutional [**6] officer, the Sheriff serves independent of the municipal or county government and independent of the State government. See DeMier v. Arlington County, No. 80-1086-A, at 5 (E.D.Va. May 12, 1981). Cf. Lawhorne v. Fletcher, No. 80-420-A, at 2-3 (E.D.Va. Aug. 12, 1980), aff'd, 673 F.2d 1312 (4th Cir. 1982) (the actions of elected State officials, such as the Commonwealth's Attorney and the County Commissioner of Revenue "... can in no way be attributed to (the) County"). "Sheriffs ... do not hold their offices by virtue of the authority of the General Assembly or by virtue of authority of a municipality or county." Hilton v. Amburgey, 198 Va. 727, 729, 96 S.E.2d 151, 152 (1957) (emphasis added). Clearly, then, neither the City of Richmond nor the Commonwealth of Virginia is responsible for the actions of the Richmond Sheriff's Department, nor does the City or the State have any control over the actions of the Sheriff of the City of Richmond. Therefore the defendant City of Richmond's motion to dismiss and the defendant Commonwealth of Virginia's motion to dismiss are GRANTED because plaintiff has failed to state a claim against either defendant for which relief can be granted. Fed.R.Civ.P. [**7] 12(b)(6).

The next issue before the Court is the Richmond Sheriff's Department's motion for summary judgment. **HN2**[⚓] The question presented on a motion for a summary judgment is whether there is a genuine issue as to any material fact in the case. Fed.R.Civ.P. 56(c). Once one party files a properly supported motion for summary judgment, the other party "... may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Id. In this action no material facts are in dispute. The Court concludes that there is no genuine issue as to any material fact and that the defendant Richmond Sheriff's Department is

order..., or within fifteen days after receipt of notice by registered mail of the order...." (emphasis added). An appeal from an award of the Industrial Commission must be filed within thirty days of the award or notice of the award. Va.Code § 65.1-98. Thus, while the record is silent on this point, it is possible that on 15 December 1981 plaintiff still could have filed an appeal of the Industrial Commission's decision with the Virginia Supreme Court. In any event, this Court is not the proper forum to review the Industrial Commission's decision. Nor may this Court relitigate the issues litigated before the Virginia Industrial Commission as long as the record shows that plaintiff was afforded a full and fair adjudication. See Pettus v. American Airlines, Inc., 587 F.2d 627, 629 (4th Cir. 1978).

entitled to judgment as a matter of law.

Plaintiff alleges that the Sheriff of the City of Richmond violated plaintiff's rights guaranteed by the Due Process Clause of the Fourteenth Amendment by "… refusing to grant the plaintiff a hearing and terminating her from her job without reasonable cause." The essence of plaintiff's allegation is that she was deprived of her property and liberty interests without due process of law. However, before any process is due under the Fourteenth Amendment, [**8] plaintiff must establish that she had a property or liberty interest which was [*450] violated. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Board of Regents v. Roth, 408 U.S. 564, 569, 92 S. Ct. 2701, 2705, 33 L. Ed. 2d 548 (1972).

The origin of property interests is quite clear. **HN3**[ 🔼 ] "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as State law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Arnett v. Kennedy, 416 U.S. 134, 151, 94 S. Ct. 1633, 1642, 40 L. Ed. 2d 15 (1974), quoting, Board of Regents v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972). Clearly then the source of plaintiff's alleged property interests, if any, is State law.

The plaintiff was appointed as a Deputy Sheriff of the City of Richmond pursuant to **HN4**[🔼] Section 15.1-48 of the Code of Virginia which states that "… the Sheriff of any county or city … [**9] may … appoint one or more deputies who may discharge any of the official duties of their principal …. Any such deputy may be removed from office by his principal." Thus, the plaintiff served as a Deputy Sheriff at the will of the defendant Sheriff and was subject to discharge at any time. Hopkins v. Dolinger, 453 F. Supp. 59, 63 (1978). **HN5**[🔼] To have a property interest in a benefit, such as employment, one must have "… a legitimate claim

of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972). In the context of property interests in employment, an employee must have "… a sufficient expectancy of continued employment to constitute a protected property interest." Bishop v. Wood, 426 U.S. 341, 344, 96 S. Ct. 2074, 2077, 48 L. Ed. 2d 684 (1977); Robertson v. Rogers, 679 F.2d 1090, 1091 (4th Cir. 1982). In Bishop v. Wood the Supreme Court held that an individual who is employed "… at the will and pleasure of …" their employer does not have a property interest protected by the Fourteenth Amendment, therefore the procedural requirements of due process do not apply. Id. at 346-47, 96 S. Ct. at 2078-2079. This Court concludes, [**10] then, that Angie Sherman held her position as a Deputy Sheriff at the will of the Sheriff of the City of Richmond and did not have reasonable expectations of continued employment sufficient to constitute a property interest under the Due Process Clause of the Fourteenth Amendment.

As noted above, **HN6**[🔼] the procedural requirements of due process also apply to the deprivation of an employee's liberty interests. "Only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination is such a hearing required." Codd v. Velger, 429 U.S. 624, 628, 97 S. Ct. 882, 884, 51 L. Ed. 2d 92 (1977). A "… private communication of the reasons for an employee's discharge "cannot properly form the basis for a claim that (a plaintiff's) interest in his "good name, reputation, honor, or integrity' was thereby impaired.' " Robertson v. Rogers, 679 F.2d 1090, 1091 (4th Cir. 1982), quoting, Bishop v. Wood, 426 U.S. 341, 348, 96 S. Ct. 2074, 2079, 48 L. Ed. 2d 684 (1976). There is no claim or suggestion that defendant Richmond Sheriff's Department disseminated any information about the plaintiff's termination to anyone but the plaintiff and her [**11] lawyer. [2.] Nor is there [*451] any

---

[2.] Clearly the defendant Richmond Sheriff's Department also released information about the plaintiff's termination to the Virginia Industrial Commission. However, release to the Industrial Commission is required by State law. Va. Code § 65.1-23. No liberty interest was implicated by this release of

assertion that any false or defamatory information about the plaintiff or her termination was released. Clearly then, from the record before the Court, plaintiff's termination by the Richmond Sheriff's Department in no way deprived plaintiff of her liberty interests under the Fourteenth Amendment.

[**12] Since it is clear that plaintiff had neither a property interest nor a liberty interest in her employment as a Deputy Sheriff of the City of Richmond, the Court concludes that the plaintiff is not protected by the procedural requirements of the Fourteenth Amendment's Due Process Clause. HN7[↑] "The Due Process Clause is not a guarantee against incorrect or ill-advised personnel decisions." Bishop v. Wood, 426 U.S. 341, 350, 96 S. Ct. 2074, 2080, 48 L. Ed. 2d 684 (1976). For the reasons stated above, the defendant Richmond Sheriff's Department's motion for summary judgment will be GRANTED.

An appropriate order shall issue.

---

**End of Document**

---

information to the Industrial Commission. Cf. Robertson v. Rogers, 679 F.2d 1090, 1091 (4th Cir. 1982) (Even "(if) it is assumed ... that the (employer) told prospective employers that (the employee) was terminated for "incompetence and outside activities,' this does not amount to the type of communication which gives rise to a protected liberty interest .... Allegations of incompetence do not imply the existence of serious character defects such as dishonesty or immorality ... and are not the sort of accusations that require a hearing").

# Chien v. Virginia,

# 2018 US Dist Lexis 36242

# EDVA

# Alexandria Division

# (2018)

57

# Chien v. Virginia

United States District Court for the Eastern District of Virginia, Alexandria Division

March 5, 2018, Decided; March 5, 2018, Filed

Civil Action No. 1:17-cv-677

**Reporter**

2018 U.S. Dist. LEXIS 36242 *; 2018 WL 1157548

ANDREW CHIEN, Plaintiff, v. COMMONWEALTH OF VIRGINIA, et al., Defendants.

**Prior History:** Chien v. Va., 2017 U.S. Dist. LEXIS 140222 (E.D. Va., Aug. 28, 2017)

## Core Terms

immunity, fail to state a claim, allegations, amended complaint, motion to dismiss, false imprisonment, reasons, rights, lack of subject matter jurisdiction, constitutional officer, clerk of court, official capacity, deprivation, racketeering, violating, appears, courts

**Counsel:** [*1] Andrew Chien, Plaintiff, Pro se, New Haven, CT.

For Commonwealth of VA, Mark R. Herring, Attorney General, Frederick G. Rockwell, III, Judge of Chesterfield Circuit Court, Glen A. Huff, Chief Judge of VA Court of Appeals, W. Allan Sharrett, Hon., Chief Judge, Prince George Circuit Court, Defendants: John Godfrey Butler, III, LEAD ATTORNEY, Office of the Attorney General (Richmond), Richmond, VA.

For Chesterfield County, Defendant: Emily Claire Russell, LEAD ATTORNEY, Jeffrey Lee Mincks, Chesterfield County Attorney's Office, Chesterfield, VA.

Karl S. Leonard, Sheriff of Chesterfield County, Defendant: Leslie A. Winneberger, William Fisher Etherington, Beale Davidson Etherington & Morris PC, Richmond, VA.

For Judy L. Worthington, former Clerk of Chesterfield Circuit Court, Mary E. Craze, Deputy Clerk of Chesterfield Circuit Court, Wendy S. Hughes, Clerk of Chesterfield Circuit Court, Donald W. Lemons, Chief Justice of VA Supreme Court,

Defendants: Mark Richard Colombell, LEAD ATTORNEY, Thompson McMullan PC, Richmond, VA.

**Judges:** Hon. Liam O'Grady, United States District Judge. Hon. Theresa Buchanan.

**Opinion by:** Liam O'Grady

# Opinion

## MEMORANDUM OPINION

This matter comes before the Court on Defendants' various Motions to [*2] Dismiss (Dkt. Nos. 75, 77, 79, 83, 86, and 92), For the reasons below and for good cause shown, the Motions to Dismiss are **GRANTED**.

## I. BACKGROUND

Plaintiff, *pro se*, filed the initial complaint in this matter on June 12, 2017. Dkt. No. 1. The background facts of this case as set forth in Plaintiff's 125-page complaint are materially indistinguishable from those alleged in a related case *Chien v. Grogan*, 2017 U.S. Dist. LEXIS 123758, 2017 WL 3381978 (E.D. Va. Aug. 3, 2017), *aff'd*, 2018 U.S. App. LEXIS 2937, 2018 WL 746523 (4th Cir. Feb. 7, 2018) (unpublished *per curiam* opinion). The Court's Memorandum Opinion dismissing that case provides a recitation of the underlying facts of this matter. *See id.*

On August 28, 2017, the Court granted all pending motions to dismiss the case, having overlooked that it earlier granted an extension of time for Plaintiff to respond to the pending motions. Dkt.

Nos. 47 and 48. The Court rescinded the order on September 12, 2017 and also granted Plaintiff leave to amend his complaint in light of the reasons for dismissal identified in the Court's mistaken order. Due to confusion over what constitutes amendment of complaint, the amended complaint in this case was not filed until October 19, 2017. Dkt. 73. The instant motions seek dismissal of that October 19, 2017 amended complaint.

Despite having had the benefit [*3] of this Court's dismissal in the *Grogan* matter and the mistaken, but explanative, dismissal of the original complaint in this matter, the amended complaint warrants dismissal for many of the same reasons identified in the Court's August 28, 2017 order. Defendants have moved to dismiss the complaint on virtually the same grounds. The instant motions are fully briefed and the Court has dispensed with oral arguments.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) permits the defendant to move for dismissal of a claim when the court lacks subject matter jurisdiction. FED. R. Civ. P. 12(b)(1). The court must dismiss the action if it determines at any time that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). Defendants may, as in this case, attack "the existence of subject matter jurisdiction in fact, quite apart from any pleading" because even with sufficient pleading, the district court could not have jurisdiction over the claim. *White v. CMA Const. Co. Inc.*, 947 F. Supp. 231, 233 (E.D. Va. 1996). The plaintiff bears the burden to establish that subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The Court grants a Rule 12(b)(1) motion if the material jurisdictional facts are known and the moving party is entitled to prevail as a matter of law. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

To survive a motion to [*4] dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual information to "state a

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A motion to dismiss pursuant to Rule 12(b)(6) must be considered in combination with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." FED. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555. While "detailed factual allegations" are not required, Rule 8 does demand that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. *Id.* Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't v. Montgomery County*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E. I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). Accordingly, a complaint may survive a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.'" *Id* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

## III. DISCUSSION

### A. <u>Wendy Hughes — Failure to State a Claim</u>

During the relevant time period, Ms. Hughes was the Clerk of Court for Chesterfield County Circuit Court. Plaintiff alleges five [*5] claims against her: 1) violating Va. Code § 18.2-472; 2) perjury; 3) aiding false imprisonment; 4) violation of the Due Process clause, and 5) violation of 18 U.S.C. § 1959(a)(4). Plaintiff has failed to state a claim against Ms. Hughes on these counts.

Violation of Va. Code § 18.2-472 has no civil remedy. In order for a private right of action to arise out of the Virginia Code, the civil remedy must appear on the face of the statute. *See Sch. Bd. of City of Norfolk v. Giannoutsos*, 238 Va. 144,

147, 380 S.E.2d 647, 649, 5 Va. Law Rep. 2855 (1989) ("[When] a statute creates a right and provides a remedy for the vindication of that right, then that remedy is exclusive unless the statute says otherwise"). Va. Code § 18.2-472 criminalizes false entries or destruction of records but does not provide a civil right of action. Accordingly, the claims here, predicated on state criminal statutes that afford no civil remedy, must be dismissed for failing to state a claim.

As to aiding false imprisonment, the elements of the tort of false imprisonment are plainly not supported by the facts alleged in the amended complaint. False imprisonment is the "direct restraint by one person of the physical liberty of another without adequate legal justification" and consists of restraining a person's freedom of movement by force of fear. *Jordan v. Shands*, 255 Va. 492, 497, 500 S.E.2d 215 (1998) (quoting *W.T. Grant Co. v. Owens*, 149 Va. 906, 921, 141 S.E. 860 (1928)). There are simply no facts sufficiently pleaded in the amended [*6] complaint to plausibly believe that Plaintiff was incarcerated without adequate legal justification.

As to the claimed Due Process violation, the cause of action must originate under 42 U.S.C. § 1983 and is time-barred. In Virginia, the relevant statute of limitations is two years. *Amr v. Moore*, No. 3:09CV667, 2010 U.S. Dist. LEXIS 79953, 2010 WL 3154576, at *5 (E.D. Va. June 21, 2010), *report and recommendation adopted*, No. 3:09CV667, 2010 U.S. Dist. LEXIS 79843, 2010 WL 3154567 (E.D. Va. Aug. 9, 2010), *aff'd*, 411 F. App'x 584 (4th Cir. 2011). The allegation in the amended complaint concerns conduct which occurred more than two years prior to the filing of the initial complaint on June 12, 2017. Plaintiff's assertion that this claim "has no time bar because this is part of the conspiracy to detain Chien, and it also is relative to Chien's property damage" is meritless.

The Civil RICO claim is similarly infirm. To state a claim for civil RICO, "[a] plaintiff must plead all elements of the alleged violation of section 1962 in order to state a civil claim under section 1964(c)." *D'Addario v. Geller*, 264 F. Supp. 2d 367, 388

(E.D. Va. 2003).[1] "Thus, plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.' Plaintiff must additionally show that (5) he was injured in his business or property (6) by reason of the RICO violation." *Id.* (quoting *Sedima, S.P.R.L. v. Imrex, Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)).

The amended complaint asserts that the debt collection against him and his [*7] arrest for failing to comply with court orders were illegal and constitute racketeering offenses because they involve, *inter alia*, kidnapping, extortion, retaliation against a witness, and interference with commerce. At the heart of the complaint, Plaintiff alleges that Ms. Hughes and others conspired to fraudulently detain Plaintiff and collect against him.

Plaintiff's allegations fail to set forth a claim under RICO. While all factual allegations in the amended complaint must be presumed true at this stage in the proceedings, the fraud allegations must nevertheless meet the heightened pleading requirements set forth in FED. R. CIV. P. Rule 9(b). *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989); *see also Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 226 F. Supp. 3d 589, 593 (E.D. Va. 2017). The amended complaint does not identify a pattern of particular fraudulent acts perpetrated by Ms. Hughes (or any of the other Defendants) and does not satisfy the pleading requirements under Rule 9(b). Accordingly, Plaintiff's RICO claim must be dismissed.

Even if Plaintiff had stated a claim against Ms. Hughes upon which relief could be granted, Ms. Hughes is entitled to absolute quasi-judicial immunity for actions taken in her official capacity and is entitled to Eleventh Amendment immunity in her official capacity.

"Under the Eleventh Amendment, states, state

---

[1] Title 18 U.S.C. § 1962(c) provides that "it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

agencies, and state officials sued [*8] in their official capacities are immune from suit." *Manion v. N. Carolina Med. Bd.*, 693 Fed. Appx. 178, 2017 WL 2480609, at *2 (4th Cir. 2017). While "[a] state officer is generally not immune under common law for failure to perform a required ministerial act[,]" *McCray v. State of Md*, 456 F.2d 1, 4 (4th Cir. 1972), this Court has repeatedly held that a Clerk of Court is entitled to derivative absolute judicial immunity for acts undertaken under the Court's direction. *See, e.g., Battle v. Whitehurst*, 831 F. Supp. 522, 528 (E.D. Va. 1993), *aff'd*, 36 F.3d 1091 (4th Cir. 1994).

The allegations in the amended complaint against Ms. Hughes concern actions she undertook at the direction of the Chancery Court pursuant to the orders entered in the Virginia courts.

## B. Mary Craze — Failure to State a Claim

Ms. Craze was the acting Clerk of Court for Chesterfield County Circuit Court in 2014. She identifies herself in her Motion as a Deputy Clerk of Court. Dkt. No. 78 at 1. Plaintiff's claims against Ms. Craze include 1) violation of Va. Code § 18.2-472; 2) perjury; 3) conspiring to tortiously impersonate a judge; 4) aiding false imprisonment; and 5) violation of 18 U.S.C. § 1959(a)(4). Ms. Craze moves to dismiss for substantially the same reasons raised by Ms Hughes. To the extent that the claims against Ms. Craze are the same as those made against Ms. Hughes, the claims against Ms. Craze are dismissed for the reasons discussed above and Ms. Craze is entitled to [*9] the same immunities as Ms. Hughes. Conspiring to tortiously impersonate a judge is not a cognizable tort. Plaintiff appears to be alleging a violation Va. Code § 18.2-174, which prohibits impersonation of, *inter alia*, a judge. To that extent, Plaintiff's claim is barred for the same reasons his claims under Va. Code § 18.2-174 are barred — the criminal statute does not create a civil cause of action.

## C. Judy Worthington — Failure to State a Claim

Ms. Worthington is the former Clerk of Court for Chesterfield County Circuit Court. Plaintiff alleges

eight counts against her: 1) violation of Due Process Clause "by arranging hearing dated 6/8/12, at conspiracy and ex parte communication with Mr. Clark or other for Freer, without notice to Chien, and without to adapt a day when Chien was available"; 2) violation of Va. Code § 18.2-472 for tampering with Plaintiff's inmate records before April 2014; 3) perjury; 4) violation of Va. Code § 18.2-472 for perjuring court documents; 5) violation of Due Process Clause for an order of the Commissioner of the Court of Chancery dated February 18, 2014; 6) violation of Va. Code § 18.2-472 and Va. Sup. Ct. R. 1:1 for tampering with court records; 7) violation of 18 U.S.C. § 1959(a)(4); and 8) violation of 18 U.S.C. § 1962(d) for fraudulently concealing communications.

Ms. Worthington moves to dismiss for failure to state a [*10] claim upon which relief can be granted. Specifically, Ms. Worthington submits that claims 1 and 5, which assert denial of Due Process, are time barred; claims 2, 3, 4, and 6, predicated on state criminal statutes, do not provide a civil cause of action; claims 7 and 8 fail to state a claim for civil RICO; to the extent she has been sued in her official capacity such claims are barred by the Eleventh Amendment; and she is entitled to quasi-judicial immunity.

As these claims mirror claims already substantively discussed and dismissed as to Ms. Hughes and Ms. Craze, the allegations against Ms. Worthington fail to state a claim and Ms. Worthington is entitled to the same immunities as Ms. Hughes and Ms. Craze.

## D. Commonwealth of Virginia, Mark Herring, Hon. Glen Huff, Hon. Donald Lemons, Hon. Frederick Rockwell, and Hon. Allan Sharrett — Lack of Subject Matter Jurisdiction and Failure to State a Claim

The Commonwealth of Virginia; the Attorney General of Virginia; and various Virginia state court judges have joined in filing a single motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. Defendants provide three grounds upon which the Court should dismiss the amended complaint [*11] for lack of subject matter

jurisdiction. First, Plaintiff's action against the Commonwealth of Virginia is barred by the Eleventh Amendment. Second, Defendants contend that this case is governed by the *Rooker—Feldman* doctrine which prohibits federal court review of state-court decisions. Third, Defendants contend that Plaintiff's suit is barred by the doctrine of *res judicata*.

The *Rooker—Feldman* and *res judicata* arguments mirror those raised by the defendants in *Chien v. Grogan*, 2017 U.S. Dist. LEXIS 123758, 2017 WL 3381978 (E.D. Va. Aug. 3, 2017), and upon which the Court dismissed that matter. In short, Plaintiff has repeatedly sought to re-litigate the decisions of Virginia courts through lawsuits in the federal courts of Virginia and Connecticut. These collateral challenges are precluded by the *Rooker—Feldman* doctrine. *See, e.g., Willner v. Frey*, 243 F. App'x 744, 745-46 (4th Cir. 2007) (unpublished). In the amended complaint Plaintiff seeks to hold these Defendants liable for the decisions rendered by orders of Virginia state courts or to overturn those earlier decisions. *See, e.g.,* Dkt. No. 73 at 32, ¶ 155(c) (alleging that Chief Judge Huff "intended to mishandle that appeal by avoiding making trial" and requesting that the court order "the [Virginia] trial court to make trial of Chien's evidence"). This Court does not have jurisdiction [*12] to provide the relief sought against these Defendants. The appropriate venue for such claims is the state courts of Virginia, of which Plaintiff has already thoroughly and unsuccessfully availed himself. Accordingly, the amended complaint is dismissed as to these Defendants for lack of subject matter jurisdiction.

While Plaintiff contends in his responsive pleading to this motion that the *Rooker-Feldman* doctrine is inapplicable, he rests that bare assertion on the contention that these Defendants engaged in fraud and the doctrine is inapplicable under such circumstances. Setting aside that the response fails to address the *res judicata* grounds for dismissal, Plaintiff, as noted above, has failed to meet the heightened pleading standard for alleging fraud. Even liberally construing the claimed violations of 42 U.S.C. § 1983 by these Defendants as being beyond the limitations of the *Rooker-Feldman* doctrine, the claims are, as noted above, time-barred.

These Defendants also move to dismiss for failure to state a claim, arguing that Judge Rockwell, Chief Justice Lemons, Chief Judge Huff, and Judge Sharrett are entitled to absolute judicial immunity under federal and state law or are entitled to qualified [*13] immunity. Because the Court lacks subject matter jurisdiction over the claims it need not consider whether Plaintiff has failed to state a claim upon which relief can be granted against these Defendants.

## E. Sheriffs Dennis Proffitt and Karl Leonard — Failure to State a Claim

Dennis Proffitt and Karl Leonard have both held the office of Sheriff for Chesterfield County during times relevant to Plaintiff's claims. Plaintiff alleges the following claims against Sheriff Proffitt: 1) false arrest in violation of the Fourth Amendment and 18 U.S.C. §§ 241-42; 2) false imprisonment in violation of 42 U.S.C. § 1983; 3) conspiracy to violate 42 U.S.C. § 1983 by violating Va. Code § 18.2-472; 4) violation of Plaintiff's Sixth Amendment right to counsel; 5) violation of the Fifth and Fourteenth Amendments for serving a capias warrant and not serving another document; 6) violation of Plaintiff's Eighth Amendment rights for placing Plaintiff in solitary confinement for 72 hours; 7) violation of Plaintiff's Eighth and Fourteenth Amendment rights for delivering Plaintiff to a civil proceeding in prisoner restraints; 8) violation of 18 U.S.C. § 1959(a)(4) for joining in the racketeering acts with the other Defendants; and 9) violation of 18 U.S.C. § 1962(d) for fraudulent concealment of *ex parte* communications to facilitate Plaintiff's arrest and imprisonment. Plaintiff alleges the following claims against [*14] Sheriff Leonard: 1) false imprisonment in violation of 42 U.S.C. § 1983 and 18 U.S.C. §§ 241-242; 2) violation of Plaintiff's Sixth Amendment right to counsel; 3) conspiracy to violate and intentionally and tortiously violating Va. Code § 18.2-472; 4) violation of Plaintiff's Due Process rights in violation of 42 U.S.C. § 1983; 5) violation of Plaintiff's Eighth Amendment rights for

delivering Plaintiff to two offices for meetings in prisoner restraints; and 6) violation of 18 U.S.C. § 1959(a)(4) for joining in the racketeering acts with the other Defendants.

Sheriffs Proffitt and Leonard have moved to dismiss the case against them for failing to state a claim. They argue that Plaintiff's false imprisonment claim is unsupported by facts and time-barred; that Plaintiff's § 1983 claims are unsupported by facts pertaining to them specifically and are time-barred; that they are entitled to Eleventh Amendment immunity for acts in their official capacity; Plaintiff fails to state an Eighth Amendment claim; Plaintiff fails to state a Due Process violation claim; claims brought under criminal statutes fail to state a cognizable civil action; both Sheriffs are entitled to qualified immunity; and Plaintiff has failed to state a claim under 18 U.S.C. § 1959(a)(4).

With the exception of the claims alleging violations of the Eighth Amendment, all of the claims against the Sheriffs are deficient [*15] in the same respects as those alleged against the preceding Defendants and are dismissed for that reason. The Court also finds that the Sheriffs are entitled to the same immunities as the other Defendants. As to the Eighth Amendment claim, Plaintiff has failed to state a claim for relief. Plaintiff alleges that he suffered cruel and unusual punishment in violation of the Eighth Amendment. "[T]o make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016) (internal quotations and citations omitted). In the context of transporting a prisoner to a court appearance, this Court has held that placing a prisoner in a three-point restraint and denying him bathroom privileges for a two-hour period, during which the prisoner twice urinated on himself before appearing in Court, did not constitute an Eighth Amendment violation. *Davis v. Watson*, No. 2:15CV146, 2015 U.S. Dist. LEXIS 189684, 2015 WL 13049846, at *2 (E.D. Va. Nov. 17, 2015), *affd*, 650 F. App'x 842 (4th Cir. 2016), *cert. denied*, 137 S. Ct. 578, 196 L.

Ed. 2d 454 (2016). The Court observed that the allegations of discomfort and humiliation in *Davis* did not rise to the level of a serious or significant emotional injury. *Id.*

If being forced to travel in restraints [*16] and appear in Court in a soiled jumpsuit is insufficiently humiliating to give rise to an Eighth Amendment claim, it reasonably follows that being forced to travel in restraints without the other factors present in *Davis* is similarly insufficient to state a claim for relief under the Eighth Amendment. *See id.; see also Brown v. Pepe*, 42 F. Supp. 3d 310, 317 (D. Mass. 2014) (forcing defendant to participate in a "perp walk" before the media in full restraints did not constitute a violation of the Eighth Amendment). Furthermore, Plaintiff's alleged injuries of public disgrace, shame, and embarrassment are insufficient on their own to rise to the level of a serious or significant emotional injury cognizable under the Eighth Amendment. *See Davis*, 2015 U.S. Dist. LEXIS 189684, 2015 WL 13049846, at *2. Accordingly, Plaintiff has failed to state an Eighth Amendment claim.

Plaintiff's combined response to the motions to dismiss filed by Ms. Hughes, Ms. Craze, Ms. Worthington, Sheriff Proffitt, and Sheriff Leonard fails to adequately address these Defendants' grounds for dismissal, claiming generally that they are without merit and containing an extensive recitation of facts not in the amended complaint. Dkt. 95. Plaintiff claims that these Defendants are not entitled to immunity because they are low-level employees "being sued individually" for their work in an official capacity. [*17] Plaintiff also argues that these Defendants are not entitled to quasi-judicial immunity from a claim of false imprisonment because false imprisonment is an intentional tort. As to the Sheriff Defendants, Plaintiff contends that he need not show that either Sheriff personally violated his civil rights, only that his civil rights were violated while in the custody of the Sheriff's agents. Finally, he argues that a five-year statute of limitations applies to § 1983 cases in Virginia, claiming that he is alleging property damage not injury to self. For the reasons discussed above, Plaintiff's arguments on these issues are simply not supported by controlling law

and must fail.

## F. Chesterfield County — Failure to State a Claim

Plaintiff presents one claim against Chesterfield County, a political subdivision of the Commonwealth of Virginia: that Chesterfield County was "gross-negligence of the corruption of the sheriff and clerks of Chesterfield Circuit Court, conspired with private lawyers Grogan and Mr. Clark to deprive Chien liberty for extortion, abduction, and kidnapping, '42USC §1983'. Although Chesterfield County didn't directly manage the operation of the court, but this case kept over three years, [*18] and its major officers such as Police-chief Dupuis, Board, of Supervisors, and Treasure Cordle [A370-387, Appendix (III), Doc. #34], Mayor and others, received Chien's complaint letters, but no action. Also, Attorney of the County didn't respond to order of Judge Rockwell regarding Chien's Writ of Habeas Corpus. This will be administrative mistake without immunity." Defendant Chesterfield County contends that Plaintiff has failed to state a claim for relief under § 1983.

Under 42 U.S.C. § 1983, "a municipality or other local government may be liable . . . if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). But this liability only extends to the acts of the local government and not the actions of employees under a theory of *respondeat superior*. *Id.* Thus "Plaintiff must show that the City deprived him of a constitutional right 'through an official policy or custom.'" *Moody v. City of Newport News, Va.*, 93 F. Supp. 3d 516, 529 (E.D. Va. 2015) (quoting *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir.2003)).

The § 1983 claims are dismissed for three reasons. First, the Complaint does not point to a specific policy or custom of the municipality which deprived Plaintiff of his constitutional rights or acts undertaken by officers pursuant to a specific [*19] policy or custom. Second, the purported employees of the County identified by Plaintiff — clerks of court, sheriffs, and judicial officers — are not employees of the County but rather "constitutional officers" not subject to the authority of the local government. *See Carraway v. Hill*, 265 Va. 20, 24, 574 S.E.2d 274, 276 (2003) ("constitutional officer is an independent public official whose authority is derived from the Constitution of Virginia even though the duties of the office may be prescribed by statute"); *see also Hilton v. Amburgey*, 198 Va. 727, 729, 96 S.E.2d 151, 153 (1957) (holding that sheriffs, clerks of court, treasurers, commonwealth's attorneys, and commissioners of revenue are constitutional officers); *Strickler v. Waters*, 989 F.2d 1375, 1390 (4th Cir. 1993) (finding that a municipality is not generally liable for the actions of its sheriff who is a constitutional officer); *Lloyd v. Morgan*, No. 4:14CV107, 2015 U.S. Dist. LEXIS 35345, 2015 WL 1288346, at *12 (E.D. Va. Mar. 20, 2015) ("Like the sheriff, the clerk of court is a constitutional officer"). The county judges are also constitutional officers. *Foster v. Jones*, 79 Va. 642, 645 (1884) ("Now, it will be observed that the office of county judge is fixed by the constitution, and the term of office is clearly defined in the same instrument. It is, therefore, a constitutional office, and the county judge is a constitutional officer"). Third, the claims against Chesterfield County were not brought within [*20] the appropriate two-year statute of limitations.

Insofar as the single claim states a cause of action for gross negligence,[2] a gross negligence claim against a political subdivision of the Commonwealth, must be dismissed because sovereign immunity precludes such claims. *Seaboll v. Cty. of Albemarle*, 283 Va. 717, 719, 724 S.E.2d 715, 716 (2012) ("Counties, as political subdivisions of the Commonwealth, enjoy the same tort immunity as does the sovereign").

---

[2] Mr. Chien's responsive pleading to Chesterfield County's instant motion appears to clarify that his claim is brought under § 1983. Dkt. 96. However, out of an abundance of caution, the Court will address the claim as drafted in the operative complaint, liberally construed to include gross negligence.

Chesterfield County is unquestionably a political subdivision of the Commonwealth and has not explicitly waived its immunity to suit for the causes of action alleged in the Complaint. "Thus, even accepting as true the allegations of [Defendant's] gross negligence, the Court finds that [these] claims under Virginia law are barred by sovereign immunity." *B.M.H. by C.B. v. Sch. Bd. of City of Chesapeake, Va.*, 833 F. Supp. 560, 573 (RD. Va. 1993).

## IV. Conclusion

For these reasons and for good cause shown, the pending Motions to Dismiss are **GRANTED**. An corresponding order shall issue.

March 5, 2018

Alexandria, Virginia

/s/ Liam O'Grady

Liam O'Grady

United States District Judge

---

End of Document

# Steele v. Bd. of Supervisors

# 66 Va. Cir. 400

# Campbell Cnty. Cir. Ct. (1996)

66

# Steele v. Bd. of Supervisors

Circuit Court of Campbell County, Virginia

February 28, 1996, Decided

CL 95000337-00

**Reporter**
66 Va. Cir. 400 *; 1996 Va. Cir. LEXIS 687 **

Jerry A. Steele, Jr. v. The Board of Supervisors of Campbell County, et al.

**Subsequent History:** Later proceeding at Steele v. Bd. of Supervisors, 1996 Va. Cir. LEXIS 688, 66 Va. Cir. 400 (Va. Cir. Ct., Apr. 4, 1996)

**Disposition:** Judgment entered.

## Core Terms

demurrer, summons, sovereign immunity, show cause, allegations, cause of action

## Case Summary

### Procedural Posture
Plaintiff individual filed suit seeking damages from defendants, the board of county supervisors, sheriff, and deputy sheriff, claiming entitlement to recovery because of the improper service of a show cause summons that resulted in the arrest of the individual for the failure to appear and his incarceration in jail for a week as a result. Demurrers were then filed.

### Overview
The individual argued that because of the use of improper procedure in service he never received the show cause summons. He moved for judgment, arguing that the deputy sheriff negligently failed to set for the manner in which the summons was served, that the sheriff negligently failed to insure that service was recorded properly and returned, and that the county was vicariously negligent for the actions of the sheriff and deputy sheriff. The court found that the sheriff was a constitutional officer independent of the county board; thus, the board could not be vicariously

liable. Further, sovereign immunity protected the sheriff for actions taken in his official and supervisory capacity. The deputy was likewise protected for acts taken in his discretionary exercise of his duties. Thus, the demurrers were properly sustained.

### Outcome
The court sustained the demurrers and dismissed the action.

## LexisNexis® Headnotes

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

***HN1***[⬇] **Defenses, Demurrers & Objections, Motions to Dismiss**

For purposes of ruling on demurrers to a motion for judgment the court accepts the factual allegations in the motion as being true.

Governments > Courts > Judges

***HN2***[⬇] **Courts, Judges**

By virtue of Article VII, § 4, of the Constitution of Virginia, a sheriff is a constitutional officer. The Supreme Court of Virginia holds that a sheriff is not an officer or employee of a county. As a constitutional officer the sheriff serves independent of the municipal or county government, and even independent of the state government.

Governments > Local Governments > Claims By & Against

Torts > Public Entity Liability > Immunities > General Overview

***HN3[⇩]*** **Local Governments, Claims By & Against**

In order to evaluate whether or not the doctrine of sovereign immunity applies to a public employee one must look to the James test. The test set forth in these cases is a test based upon four factors: (1) the nature of the function performed by the employee; (2) the extent of a state's interest and involvement in the function; (3) the degree or control and direction exercised by the state over the employee; and (4) whether the act complained of involved the use of judgment or discretion.

## Headnotes/Syllabus

### Headnotes

As a constitutional officer, a sheriff serves independently of the local and state governments.

A county board of supervisors cannot be held to be vicariously liable for the actions of a sheriff or of his representatives.

A sheriff acting in his official capacity or in a supervisory capacity is covered by sovereign immunity.

A party shall not be allowed to suffer a nonsuit unless the party does so before the action has been submitted to the court for a decision.

**Counsel:** [**1] David W. Shreve, Esq., Shreve & Berger, Altavista, VA.

Jim H. Guynn, Jr., Esq., Guynn & Britt, P.C., Roanoke, VA.

Mark D. Kidd, Esq., Osterhoudt, Ferguson, Natt, Aheron & Agee, P.C., Roanoke, VA.

**Judges:** J. Michael Gamble, Judge.

**Opinion by:** J. Michael Gamble

## Opinion

[*400] I am writing to rule on the demurrer of each defendant in the above case. This case is an action for damages brought by the plaintiff arising out of the service of a show cause summons by Deputy Sheriff Ken Hudson, one of the defendants. On October 7, 1994 the plaintiff was arrested for failure to appear in the Circuit Court of Campbell County pursuant to an earlier show cause summons. Under the allegations of the Motion for Judgment the plaintiff states that although the return of service on the show cause summons indicated that he had been served personally, he never received the show cause summons. He further alleges that by virtue of the failure to serve the summons and correctly record the manner of service, he was arrested and held in jail for a period of seven days. The plaintiff's Motion for Judgment asserts that Deputy Hudson negligently failed to set forth the manner in which the show cause summons was served. It [**2] further alleges that the defendant, Sheriff Robert Maxey, negligently failed to insure that the service of the summons was properly recorded, and returned to the court. It is also alleged in the [*401] Motion for Judgment that Campbell County failed to insure that the Sheriff and Deputy Sheriff correctly made an accurate return of the show cause summons, and that Campbell County is "vicariously negligent" for the actions of Sheriff Maxey and Deputy Hudson.

The Board of Supervisors of Campbell County filed a demurrer asserting that the plaintiff had failed to plead a cause of action upon which relief can be granted because the Board of Supervisors of Campbell County is independent of the Sheriff of Campbell County, and therefore cannot be vicariously liable for the actions of the Sheriff or his deputy.

The defendants, Deputy Ken Hudson and Sheriff Robert Maxey, have filed a demurrer setting forth that each is immune from liability by virtue of the government function which each performs.

Additionally, Sheriff Maxey and Deputy Hudson allege that the plaintiff is not entitled to recover beyond that specified in § 15.1-80 of the Code of Virginia.

**HN1**[⚓] For purposes of ruling on the demurrers the [**3] Court accepts the factual allegations in the Motion for Judgment as being true.

I will turn first to the demurrer of the Board of Supervisors of Campbell County. This Court finds that the demurrer of the Board of Supervisors of Campbell County is sustained, and the cause of action against the Board of Supervisors of Campbell County is dismissed.

**HN2**[⚓] By virtue of Article VII, § 4, of the Constitution of Virginia, a Sheriff is a constitutional officer. In *Hilton v. Amburgey*, 198 Va. 727, 729, 96 S.E.2d 151 (1957), the Supreme Court of Virginia held that a sheriff is not an officer or employee of a county. As a constitutional officer the sheriff serves independent of the municipal or county government, and even independent of the state government. *Sherman v. City of Richmond, et al.*, 543 F. Supp. 447 (1982).

As a result of the independence of the Sheriff from the Board of Supervisors of Campbell County, the Board of Supervisors of Campbell County cannot be held to be vicariously liable for the actions of the Sheriff or his representatives. Therefore, the demurrer must be sustained, and the Board of Supervisors is dismissed as a party to this litigation.

I will now [**4] turn to the demurrer of Sheriff Maxey and Deputy Hudson. As noted above, the first argument in this demurrer is grounded in the doctrine of sovereign immunity. In determining whether the doctrine of sovereign immunity acts as a bar to the cause of action against Sheriff Maxey, the Court must look to a series of cases starting with *Lawhorne v. Harlan*, 214 Va. 405, 200 S.E.2d 569 (1973), which address the immunity of supervisory employees. In *Lawhorne* the Supreme Court of Virginia held that two hospital administrators at the University of Virginia Hospital were protected by the bar [*402] of sovereign immunity. In *Banks v. Sellers*, 224 Va. 168, 294

S.E.2d 862 (1982), the Supreme Court of Virginia held that a division school superintendent and high school principal were immune under the doctrine of sovereign immunity in a suit alleging that they failed to provide a safe environment in a school. In *Bowers v. Commonwealth*, 225 Va. 245, 302 S.E.2d 511 (1983), the Supreme Court of Virginia held that a highway resident engineer was immune by virtue of sovereign immunity where the plaintiff alleged that he sustained injury on a culvert that was constructed by the Highway Department. In *Messina v. Burden*, 228 Va. 301, 310-311, 321 S.E.2d 657 (1984), [**5] the Supreme Court of Virginia held that the superintendent of buildings at a community college was entitled to protection of sovereign immunity in an action brought by a person who tripped and fell on a stairway located in the community college theater.

In each of the above cases, just as Sheriff Maxey in the instant case, the defendants were public employees who had supervisory capacity, and who were acting within the scope of their employment. Under the allegations of the instant case the plaintiff alleges that Sheriff Maxey was acting in his official capacity as Sheriff at all times relevant to the cause of action, and that Sheriff Maxey had a "duty to instruct and insure that Deputy Hudson" correctly recorded the manner in which the summons was served and to insure that any mistakes in service were corrected. Thus, under the allegations of the Motion for Judgment, which are accepted for purposes of the demurrer, it is clearly stated that the Sheriff was acting both in his official capacity and in a supervisory capacity. Thus, the demurrer must be sustained as to Sheriff Maxey, and the action against Sheriff Maxey is dismissed.

I will now turn to the demurrer filed on behalf of [**6] Deputy Hudson. **HN3**[⚓] In order to evaluate whether or not the doctrine of sovereign immunity applies to a public employee one must look to the test enunciated by the Supreme Court of Virginia in *James v. Jane*, 221 Va. 43, 53, 282 S.E.2d 864 (1980), and reiterated by the Supreme Court of Virginia in *Messina v. Burden*, 228 Va. 301, 313, 321 S.E.2d 657 (1984). The test set forth in these cases is a test based upon four factors: (1)

the nature of the function performed by the employee; (2) the extent of a state's interest and involvement in the function; (3) the degree or control and direction exercised by the state over the employee; and (4) whether the act complained of involved the use of judgment or discretion.

In the instant case there is really no dispute that the first three factors are satisfied. The function of Deputy Hudson was clearly a governmental function. The Sheriff certainly had an interest and involvement in the function because the deputy was executing service of process as required by law. As is [*403] admitted under paragraph 9 of the Motion for Judgment, the Sheriff exercises control and direction over Deputy Hudson in the performance of his function to serve legal process. [**7] Thus, the key issue is whether the act complained of, *i.e.* service of the show cause summons, involved the use of judgment and discretion. This Court finds that it does.

Deputy Sheriff Hudson, in his capacity as a server of court process, exercises the use of judgment and discretion. In serving process a deputy may decide that the process should be served personally, by posting, or by delivery to a resident of the household. Likewise, the deputy must decide whether to try to continue to serve process when the recipient of the process cannot initially be found, or to make a return to the court showing that the process was not served due to the inability to find the subject of the process. These actions involve discretion. Accordingly, this Court finds that at all the elements of *Messina v. Burden* and *James v. Jane* apply, and the demurrer is sustained, and the action is dismissed as to Deputy Hudson.

Under the second allegation of the demurrer on behalf of Sheriff Maxey and Deputy Hudson, it is alleged that the plaintiff is not entitled to a recovery beyond that specified in § 15.1-80. Although it is not necessary to rule on this issue, in order to complete ruling in this [**8] matter, this Court finds that this does not bar a cause of action by a plaintiff. This is merely a sanction that the court may impose on a sheriff who fails to comply with the statutory requirements for service of process. It

does not address any civil liability, it merely addresses the responsibility of the sheriff to the court to properly execute and return his process.

J. Michael Gamble, Judge

**End of Document**

# Verry v. Barry

# 71 Va. Cir. 318

# Fairfax Cnty. Cir. Ct.

# (2006)

# Verry v. Barry

Circuit Court of Fairfax County, Virginia

July 27, 2006, Decided

Law No. 2005-7454

## Reporter

71 Va. Cir. 318 *; 2006 Va. Cir. LEXIS 143 **

Michael Verry v. Sheriff Stan G. Barry, et al.

## Core Terms

Demurrer, sovereign immunity, gross negligence, plea in bar, immunity, jail, allegations, Assault, discretionary, testing

## Case Summary

### Procedural Posture

Defendant sheriff filed a demurrer and a plea in bar to plaintiff arrestee's action for assault and battery and negligence; the sheriff claimed that he was protected by the doctrine of sovereign immunity and that the arrestee's amended complaint failed to state a claim of gross negligence.

### Overview

After being arrested for drunk driving, the arrestee claimed that he was assaulted and battered by various police officers at the police station. The court found that the sheriff's decisions as to how to operate and maintain his jail were purely discretionary under Va. Code § 53.1-116.2. However, his discretionary activities and the activities of his deputies might be considered wanton or exceeding the scope of their employment. The determination of gross negligence was an issue of fact properly decided by a jury. Nevertheless, because the arrestee's negligence allegations were general and conclusory, the sheriff's demurrer on the negligence count could be sustained.

### Outcome

The demurrer was overruled as to the assault and battery count; it was sustained as to the gross negligence count.

## LexisNexis® Headnotes

Torts > Public Entity
Liability > Liability > Vicarious Liability

### HN1[⬇] Liability, Vicarious Liability

A sheriff shall answer civilly for all the acts of his deputy.

Torts > Public Entity
Liability > Liability > Vicarious Liability

### HN2[⬇] Liability, Vicarious Liability

The law looks upon a sheriff and his officers as one person: he is to look to his officers that they do their duty; for if they transgress, he is answerable to the party injured by such transgression; and his officers are answerable over to him. Thus, a sheriff may be held responsible for the acts of his deputies.

Torts > Public Entity
Liability > Immunities > Sovereign Immunity

### HN3[⬇] Immunities, Sovereign Immunity

As an individual, a sheriff is a "constitutional officer" by virtue of Va. Const. art. VII, § 4. As a constitutional officer, the sheriff is not an officer or employee of a county. His duties are regulated and defined by statute. Thus, a sheriff's sovereign

72

immunity is distinct from that afforded a county officer or employee.

Torts > Public Entity
Liability > Immunities > Sovereign Immunity

**HN4[⬇]** **Immunities, Sovereign Immunity**

In a sovereign immunity context, the four factors to be considered are (1) the nature of the function performed; (2) the extent of the state's interest and involvement in the function; (3) the degree of control exercised by the state over the employee; and (4) whether the act complained of involved the use of judgment and discretion.

Torts > Public Entity
Liability > Immunities > Sovereign Immunity

**HN5[⬇]** **Immunities, Sovereign Immunity**

By necessity, certain state officials and state employees must enjoy immunity in the performance of their duties. This applies to those employees who are required by the Constitution and by general law to exercise broad discretionary powers, often involving both the determination and implementation of state policy.

Governments > Local
Governments > Employees & Officials

**HN6[⬇]** **Local Governments, Employees & Officials**

A sheriff's duties are outlined in Va. Code Ann. § 53.1-116-127.1. These duties include keeping records of prisoners received in the jail; reporting to the Department of Corrections; purchasing food, clothing and medicine for jail prisoners; and acting as the "keeper" of the jail. Va. Code Ann. § 53.1-116, 116.1, 116.2 and 126.

Torts > Public Entity

Liability > Immunities > Sovereign Immunity

**HN7[⬇]** **Immunities, Sovereign Immunity**

In a sovereign immunity context, although a state has a strong interest in making sure that a jail is properly operated, the day to day decisions, including the hiring of employees and how to maintain a safe and secure jail, rest in the discretion of the sheriff.

Torts > Public Entity
Liability > Immunities > Sovereign Immunity

**HN8[⬇]** **Immunities, Sovereign Immunity**

In a sovereign immunity context, certainly hiring or employing deputies for jail operations is a discretionary function.

Torts > Public Entity
Liability > Liability > General Overview

Torts > Public Entity
Liability > Immunities > Sovereign Immunity

**HN9[⬇]** **Public Entity Liability, Liability**

In a sovereign immunity context, a state employee who acts wantonly, or in a culpable or grossly negligent manner, is not protected. And neither is the employee who acts beyond the scope of his employment, who exceeds his authority and discretion, and who acts individually.

Torts > Intentional Torts > Assault & Battery > General Overview

Torts > Negligence > General Overview

**HN10[⬇]** **Intentional Torts, Assault & Battery**

Assault and battery could be construed as an intentional tort, or the type of wanton conduct that would describe gross negligence.

Torts > Negligence > General Overview

*HN11*[⬇] **Torts, Negligence**

"Gross negligence" is that degree of negligence which shows such indifference to others as constitutes an utter disregard of caution amounting to a complete neglect of the safety of another person or another person's property. It is such negligence as would shock fair-minded people, although it is something less than willful recklessness.

Torts > Negligence > General Overview

*HN12*[⬇] **Torts, Negligence**

Gross negligence has been described as the utter disregard of prudence amounting to complete neglect for the safety of another. It is a heedless and palpable violation of legal duty respecting the rights of others that amounts to the absence of slight diligence, or the want of even scant care.

Torts > Negligence > General Overview

Torts > ... > Proof > Evidence > Province of Court & Jury

*HN13*[⬇] **Torts, Negligence**

The determination of gross negligence is an issue of fact properly decided by a jury.

Torts > Intentional Torts > General Overview

Torts > Public Entity
Liability > Immunities > Sovereign Immunity

*HN14*[⬇] **Torts, Intentional Torts**

The protections of sovereign immunity is extended to a city or municipality when the employee at issue was performing a governmental function, even when an intentional tort is alleged.

Torts > Public Entity
Liability > Immunities > Sovereign Immunity

*HN15*[⬇] **Immunities, Sovereign Immunity**

In determining the immunity of a local municipality, sovereign immunity turns on whether the alleged actions are "proprietary" or "governmental." In determining the immunity of a sheriff and his deputies, sovereign immunity is determined by applying the four-part James test.

Torts > Negligence > General Overview

Torts > Public Entity
Liability > Immunities > Sovereign Immunity

*HN16*[⬇] **Torts, Negligence**

It is well settled that the doctrine of sovereign immunity will not extend protection to acts beyond simple negligence. Thus, individuals may be liable for actions found to be grossly negligent.

Torts > Public Entity
Liability > Immunities > Sovereign Immunity

*HN17*[⬇] **Immunities, Sovereign Immunity**

A sheriff exercises a strong degree of control over the deputies and the manner in which they handle prisoners. The sheriff's failure to properly hire, train, and discipline the deputies is a matter of judgment and discretion such that the sheriff is entitled to immunity.

## Headnotes/Syllabus

### Headnotes

A sheriff may be held responsible for the acts of his deputies.

As a constitutional officer, a sheriff is not an officer or employee of a county.

The doctrine of sovereign immunity will not extend

protection from liability to acts beyond simple negligence.

**Counsel:** [**1] Richard F. MacDowell, Jr., Esquire, MacDowell & Associates, P.C., Fairfax, Virginia.

Jack L. Gould, Esquire, Fairfax, Virginia.

**Judges:** Kathleen H. MacKay.

**Opinion by:** Kathleen H. MacKay

## Opinion

[*318] **OPINION LETTER**

This matter came before the Court on Defendant Barry's Demurrer and Plea in Bar. These motions were heard on Friday, April 28, 2006. At that time, I took the Defendant's Demurrer and Plea in Bar under advisement and requested that the parties provide supplemental briefs as to the issues. Since the hearing date I have had the opportunity to review all of these briefs in light of oral arguments made, and I am now prepared to rule.

**Background:**

On November 30, 2006 Plaintiff Michael Verry was arrested for a DUI and transported to the Mount Vernon Police Substation where he claims he was assaulted and battered by various police officers. Verry has sued Kenyatta Momon and Jonathan Bobel, his arresting police officers; the Fairfax County Police Department; Sheriff Barry, the Sheriff of Fairfax County; two John Does, the officers who allegedly beat him at the police substation; and Fairfax County. [1] [*319] He alleges he suffered broken ribs and other damages arising from [**2] this assault.

_____

[1] Judge Wooldridge overruled Defendants Moman and Bobel's Demurrer to the Amended Complaint on June 2, 2006. With regard to the original Motion for Judgment, Judge Ney denied the Police Department's plea in bar and granted its demurrer based upon similar arguments. Judge Bellows also sustained the County's plea in bar as to sovereign immunity.

In particular, in Counts IV and V of the Amended Complaint Verry alleges that Sheriff Barry is liable for the actions of his deputies, constituting assault & battery (Count IV) and gross negligence (Count V).

In his Demurrer and Plea in Bar Sheriff Barry argues that he is protected by the doctrine of sovereign immunity and that the Plaintiff's Amended Complaint fails to state a claim of gross negligence. Plaintiff counters, stating that Sheriff Barry is not protected by absolute sovereign immunity, but rather a limited qualified immunity which has been waived by Sheriff Barry's actions.

**Analysis:**

*Sovereign Immunity*

The issue [**3] of a Sheriff's liability has been addressed by the Virginia Courts in a variety of cases dating back to 1800 when it was held that HN1[↑] the sheriff shall answer civilly for all the acts of his deputy. *James v. M'Cubbin,* 6 Va. 273 (1800). This rule was echoed in the 1808 case *Moore's Administrator v. Dawney and Another, Administrators of Bell.* In *Moore* it was held that HN2[↑] "The law looks upon the Sheriff and his officers as one person: he is to look to his officers that they do their duty; for if they transgress, he is answerable to the party injured by such transgression; and his officers are answerable over to him." *Moore's Administrator v. Dawney and Another, Administrators of Bell,* 13 Va. 127, 132 (1808). Thus, a Sheriff may be held responsible for the acts of his deputies.

HN3[↑] As an individual, a Sheriff is a "constitutional officer" by virtue of Article VII, § 4 of the Constitution of Virginia. As a constitutional officer, a sheriff is not an officer or employee of a county. *Hilton v. Amburgey,* 198 Va. 727, 729, 96 S.E.2d 151 (1957). His duties are regulated and defined by statute. *Id.* Thus, a Sheriff's sovereign immunity is distinct from that [**4] afforded a county officer or employee.

I would agree with counsel that the application of the doctrine of sovereign immunity in the case law of the Commonwealth has been confusing.

Examples of the application of the doctrine to a Sheriff are scarce. The court in *Heider v. Clemons* concerned acts of negligence committed by a Sheriff's deputy in serving process. *Heider v. Clemons,* 241 Va. 143, 145, 400 S.E.2d 190, 7 Va. Law Rep. 1392 (1991). To analyze the facts, the Supreme Court applied a four part test which was originally enumerated in *James v. Jane,* 221 Va. 43, 53, 282 S.E.2d 864 (1980).

[*320] *HN4*[⌖] These four factors are (1) the nature of the function performed; (2) the extent of the state's interest and involvement in the function; (3) the degree of control exercised by the state over the employee; and (4) whether the act complained of involved the use of judgment and discretion. *Id; Messina v. Burden,* 228 Va. 301, 313, 321 S.E.2d 657 (1984). [2]

[**5] However, the *James* court also noted that *HN5*[⌖] by necessity, certain state officials and state employees must enjoy immunity in the performance of their duties. *James* at 53. This applies to those employees who are required by the Constitution and by general law to "exercise broad discretionary powers, often involving both the determination and implementation of state policy." *Id.*

*HN6*[⌖] A Sheriff's duties are outlined in Va. Code § 53.1-116-127.1. These duties include keeping records of prisoners received in the jail; reporting to the Department of Corrections; purchasing food, clothing and medicine for jail prisoners; and acting as the "keeper" of the jail. *See* Va. Code § 53.1-116, 116.1, 116.2 and 126. It appears to me that Sheriff Barry's decisions as to how to operate and maintain his jail are purely discretionary. Va. Code § 53.1-116.2 grants Sheriffs authority to be the "keepers of jails." Thus, *HN7*[⌖] although the state has a strong interest in making sure the jail is

properly operated, the day to day decisions, including the hiring of employees and how to maintain a safe and secure jail, rest [**6] in the discretion of the Sheriff. *See Small* v. Jackson, 4 Va. Cir. 262, 265 (Cir. Ct. of Richmond, 1985) stating *HN8*[⌖] "Certainly hiring or employing deputies for jail operations is a discretionary function."

The Court in *James* was also instructive in definitely stating that *HN9*[⌖] "A state employee who acts wantonly, or in a culpable or grossly negligent manner, is not protected. And neither is the employee who acts beyond the scope of his employment, who exceeds his authority and discretion, and who acts individually." *James* at 53; *Hedrick v. Roberts,* 183 F.Supp. 2d 814, 824 (E.D. Va. 2001). I conclude that the James decision sets out the two ways of analyzing the Sheriff's actions -- his discretionary activities and the activities of his deputies that may be wanton or exceed the scope of their employment. These two separate actions are reflected in Plaintiff's Count IV and V.

[*321] *Count IV -- Sheriff's Assault & Battery:*

In Count IV Plaintiff alleges Sheriff Barry, by and through his deputies, "assaulted and battered the Plaintiff when they laid hands upon his person, kicked him, and punched him repeatedly." Amended Complaint P 43.

*HN10*[⌖] Assault [**7] and battery could be construed as an intentional tort, or the type of wanton conduct that would describe gross negligence. *HN11*[⌖] "Gross negligence" is that degree of negligence which shows such indifference to others as constitutes an utter disregard of caution amounting to a complete neglect of the safety of another person or another person's property. It is such negligence as would shock fair-minded people, although it is something less than willful recklessness. *Ferguson v. Ferguson,* 212 Va. 86, 92, 181 S.E.2d 648 (1971); *see also Chapman v. City of Virginia Beach,* 252 Va. 186, 190, 475 S.E.2d 798 (1996) stating *HN12*[⌖] "gross negligence has been described as the 'utter disregard of prudence amounting to complete neglect for the safety of another.' 'It is a heedless and palpable violation of legal duty respecting the

---

[2] Examples of how the *James* factors are applied can be found these other cases: *Colby v. Boyden,* 241 Va. 125, 128-9, 400 S.E.2d 184, 7 Va. Law Rep. 1368 (1991) (regarding immunity of police officer); *Meagher v. Johnson,* 239 Va. 380, 389 S.E.2d 310, 6 Va. Law Rep. 1593 (1990) (regarding immunity of police officer); and *Banks v. Sellers* 224 Va. 168, 173, 294 S.E.2d 862 (1982) (regarding immunity of Division Superintendent and high school principal).

Page 5 of 7

76

rights of others' which amounts to the 'absence of slight diligence, or the want of even scant care,'" quoting *Frazier v. City of Norfolk,* 234 Va. 388, 393, 362 S.E.2d 688, 4 Va. Law Rep. 1220 (1987) and *Town of Big Stone Gap v. Johnson,* 184 Va. 375, 378, 35 S.E.2d 71 (1945).

*HN13*[⬆] The determination of gross negligence is an issue of fact properly decided by a jury. *See Koppel v. Morgan, et al.,* 41 Va. Cir. 130, 132 (Cir. Ct. Fairfax 1996), [**8] *citing Chapman* at 190-91. Therefore, Sheriff Barry's demurrer as to Count IV is overruled.

Sheriff Barry points to the more recent case of *Niese v. City of Alexandria* that extends *HN14*[⬆] the protections of sovereign immunity to a City or municipality when the employee at issue was performing a "governmental function," even when an intentional tort is alleged. *Niese v. City of Alexandria,* 264 Va. 230, 239, 564 S.E.2d 127 (2002).

*Niese* is the last in a line of decisions that reflects a different analytical approach for a different form of sovereign immunity. In *Niese,* the court analyzed the immunity of a local municipality. In the case at hand, I have been asked to analyze the sovereign immunity protections afforded to a Sheriff and his deputies. *HN15*[⬆] In the former situation, sovereign immunity turns on whether the alleged actions were "proprietary" or "governmental." *Id.* at 238-239. In the latter, sovereign immunity is determined by applying the four-part *James* test. Therefore, because we must apply different analytical tests in these differing contexts, the extension of sovereign immunity protection to a local municipality by *Niese* has no real effect [**9] on our analysis of a Constitutional officer, such as Sheriff Barry.

[*322] *Count V -- Gross Negligence:*

*HN16*[⬆] It is well settled that the doctrine of sovereign immunity will not extend protection to acts beyond simple negligence. *See Koppel v. Morgan,* 41 Va. Cir. 130, 132 (Fairfax Cty. Cir. Ct. 1996). Thus, individuals may be liable for actions found to be grossly negligent. Sheriff Barry demurs to Count V of the Amended Complaint, arguing that

Plaintiff has failed to allege facts to support this claim of gross negligence.

At the outset, it is important to note that as pleaded, there is no connection alleged between the Plaintiff's assertions as to training, testing, and supervision that actually connect training, testing, and supervision with these particular deputies or to the particular facts at hand. For instance, there is no allegation that these officers were psychopaths that should have been identified if proper tests were administered. Rather the allegations are general and conclusory. Indeed, the Amended Complaint refers to the Sheriff's duty to the "public at large" as well as to Plaintiff. *See* Amended Complaint P 51.

Justice Annunziata dealt with [**10] a similar set of facts when sitting as a judge in this court in 1991. *See Sickles v. Peed,* 25 Va. Cir. 487 (Cir. Ct. Fairfax, 1991). In evaluating the Plaintiff's allegations that the Sheriff failed to properly discipline his deputies, failed to properly investigate alleged incidents, allowed the deputies to place criminal charges against inmates, and failed to perform ongoing psychological testing, she concluded that *HN17*[⬆] the Sheriff exercises a strong degree of control over the deputies and the manner in which they handle prisoners. *Id.* at 489. The Sheriff's failure to properly hire, train, and discipline deputies was found to be a matter of judgment and discretion such that the Sheriff was entitled to immunity. *Id.* In granting the Sheriff immunity she impliedly concluded that the alleged actions were also insufficient to support a finding of gross negligence. I believe Justice Annunziata's reasoning to be correct and though not binding as precedent in this case I will follow its analysis.

Therefore, Defendant Barry's demurrer is sustained as to Count V because Plaintiff has failed to allege facts to support his claim for gross negligence.

[**11] **Conclusion:**

Defendant has filed a plea in bar asserting sovereign immunity in response to Count IV and Count V and a demurrer as to all factual allegations contained in Counts IV and V. *See*

Defendant's Plea in Bar and Demurrer to [*323] Amended Complaint, filed March 3, 2006. The Court is sustaining the demurrer and plea in bar as to Count V because the Count merely describes the discretionary responsibilities of the Sheriff. The Court is sustaining the demurrer and plea in bar as to Count V without leave to amend since it appears the Plaintiff was already given an opportunity to amend the complaint by Judge Williams. The factual allegations as stated in Count IV, I believe, survive demurrer.

Kathleen H. MacKay

**VIRGINIA:**

**IN THE CIRCUIT COURT OF FAIRFAX COUNTY**

**MICHAEL VERRY Plaintiff v. SHERIFF STAN BARRY, et al., Defendants**

**At Law No. 2005-7454**

**ORDER**

**THIS MATTER** came before the court on Defendant Stan Barry's Demurrer and Plea in Bar to the Amended Complaint. For the reasons stated in the letter opinion incorporated in this order, it is

**ORDERED** that Defendant Barry's Demurrer as to Count IV is overruled; and it is [**12] further

**ORDERED** that the Defendant Barry's Demurrer to Count V is sustained without leave to amend.

**ENTERED** this 27 day of July, 2006.

Judge Kathleen H. MacKay

End of Document

# Messina v. Burden

# 228 Va. 301

# Virginia Supreme Court

# (1984)

79

# Messina v. Burden

Supreme Court of Virginia

October 12, 1984

Record Nos. 811485, 820299

**Reporter**
228 Va. 301 *; 321 S.E.2d 657 **; 1984 Va. LEXIS 203 ***

Frank Messina v. William W. Burden; Leonard Armstrong v. Dennis R. Johnson

**Prior History:** [***1] Appeal from a judgment of the Circuit Court of the City of Portsmouth. Hon. Lester Schlitz, judge presiding. (Record No. 811485). Appeal from a judgment of the Circuit Court of Arlington County. Hon. Charles H. Duff, judge presiding. (Record No. 820299).

Armstrong v. Johnson, 1982 Va. Cir. LEXIS 125, 22 Va. Cir. 490 (1982)

**Disposition:** *Affirmed.*

## Core Terms

immunity, sovereign immunity, motion for judgment, doctrine of sovereign immunity, trial court, employees, duties, government employee, decisions, appeals, buildings, sovereign, purposes, community college, government entity, discretionary, contends, governmental function, sustaining a demurrer, level of government, government agency, majority opinion, school board, supervisory, Operations, abolish, cases, purse

## Case Summary

### Procedural Posture

In a consolidated matter, plaintiffs, theater victim and manhole victim, appealed from the judgments of the Circuit Court of the City of Portsmouth and the Circuit Court of Arlington County (Virginia), which sustained the pleas of sovereign immunity by defendants, superintendent of buildings and the chief of operations division of the department of public works, in plaintiffs' tort actions.

### Overview

Plaintiffs, theater victim and manhole victim, sustained injuries on public property, when plaintiff theater victim fell from a college stage and plaintiff manhole victim was injured when he stepped on a defective manhole. Plaintiff theater victim filed an action against defendant superintendent of buildings, and plaintiff manhole victim filed an action against defendant chief of operations division of the department of public works. Defendants filed pleas of sovereign immunity. The trial court sustained the pleas. On appeal, the actions were consolidated. The court affirmed, holding that defendant superintendent was entitled to sovereign immunity because he was operating within the scope of his employment and there was no claim of gross negligence or intentional misconduct. Defendant public works chief was entitled to sovereign immunity even though he was a county employee, and not a state employee. The court held that if an individual worked for an immune governmental entity then that individual was eligible for the protection afforded by the doctrine of sovereign immunity.

### Outcome

The court affirmed the lower court's decision to sustain defendants', superintendent of buildings and the chief of operations division of the department of public works, pleas of sovereign immunity, in a tort action by plaintiffs, theater victim and manhole victim. The court held that defendant superintendent was entitled to immunity because he was operating within the scope of his employment. Defendant chief was immune as a county employee.

## LexisNexis® Headnotes

Governments > State & Territorial Governments > Claims By & Against

**HN1[⬇]** **State & Territorial Governments, Claims By & Against**

The doctrine of sovereign immunity is "alive and well" in Virginia.

Governments > Local Governments > Claims By & Against

Governments > State & Territorial Governments > Claims By & Against

**HN2[⬇]** **Local Governments, Claims By & Against**

See Va. Code Ann. § 8.01-195.3.

Administrative Law > Sovereign Immunity

Governments > State & Territorial Governments > Claims By & Against

Public Contracts Law > Governmental Immunities > Sovereign Immunity

Public Contracts Law > Governmental Immunities > Consent to be Sued

Torts > Public Entity Liability > Immunities > Sovereign Immunity

**HN3[⬇]** **Administrative Law, Sovereign Immunity**

Sovereign immunity is a privilege of sovereignty. Without the doctrine there would exist inconvenience and danger to the public in the form of officials being fearful and unwilling to carry out their public duties. Without sovereign immunity public service might be threatened because citizens might be reluctant to take public jobs. If the sovereign could be sued at the instance of every citizen the state could be controlled in the use and disposition of the means required for the proper administration of the government.

Governments > State & Territorial Governments > Claims By & Against

**HN4[⬇]** **State & Territorial Governments, Claims By & Against**

The doctrine of sovereign immunity serves a multitude of purposes including but not limited to protecting the public purse, providing for smooth operation of government, eliminating public inconvenience and danger that might spring from officials being fearful to act, assuring that citizens will be willing to take public jobs, and preventing citizens from improperly influencing the conduct of governmental affairs through the threat or use of vexatious litigation.

Governments > State & Territorial Governments > Claims By & Against

**HN5[⬇]** **State & Territorial Governments, Claims By & Against**

In order to fulfill the purposes of sovereign immunity, the protection afforded by the doctrine cannot be limited solely to the sovereign. Unless the protection of the doctrine extends to some of the people who help run the government, the majority of the purposes for the doctrine will remain unaddressed. For example, limiting protection to the state itself does nothing to insure that officials will act without fear. If every government employee is subject to suit, the state could become as hamstrung in its operations as if it were subject to direct suit. The reason for this is plain: the state can act only through individuals.

Governments > State & Territorial Governments > Claims By & Against

**HN6[⬇]** **State & Territorial Governments, Claims By & Against**

Government can function only through its servants, and certain of those servants must enjoy the same immunity in the performance of their discretionary duties as the government enjoys.

Governments > State & Territorial Governments > Claims By & Against

Torts > Public Entity Liability > Immunities > Absolute Immunity

Governments > Courts > Judges > Judicial Immunity

Torts > Public Entity Liability > Immunities > General Overview

**HN7[⤓]** **State & Territorial Governments, Claims By & Against**

Governors, judges, members of state and local legislative bodies, and other high level governmental officials have generally been accorded absolute immunity.

## Headnotes/Syllabus

**Headnotes**

(1) Immunity -- Sovereign -- In Force in Virginia.

(2) Immunity -- Sovereign -- Negligence -- Simple -- Statutory Construction -- Commonwealth Liable for Damages in Certain Cases [Code § 8.01-195.3 (as amended by c. 397 (1982)] -- Doctrine of Sovereign Immunity Preserved by Tort Claims Act as Amended in 1982 and Cannot be Eliminated by Judicial Fiat.

(3) Immunity -- Sovereign -- Purposes of Doctrine Stated.

(4) Immunity -- Sovereign -- Negligence -- Simple -- Doctrine Extends Immunity to Employees Other than Officials at Highest Levels of Government.

(5) Immunity -- Sovereign -- Negligence -- Simple -- Immunity Extended to Supervisory Employee of Community College (*Messina*, Record No. 811485).

(6) Immunity -- Sovereign -- Negligence -- Simple -- Scope of Employment -- Critical Factor is Whether Employee Acted Within Scope of Authority.

[***2] (7) Immunity -- Sovereign -- Negligence -- Simple -- Scope of Employment -- Employee in *Messina* (Record No. 811485) Alleged to be Acting Within Scope of Authority and Immune for Act of Simple Negligence.

(8) Immunity -- Sovereign -- Negligence -- Simple -- Employee -- If Individual Works for Immune Governmental Entity May be Entitled to Sovereign Immunity in Proper Case.

(9) Immunity -- Sovereign -- Negligence -- Simple -- Employee -- Factors to be Considered in Determining Immunity -- Commonwealth Employees -- Stated.

(10) Immunity -- Sovereign -- Negligence -- Simple -- Employee -- Evidence -- Factors to be Considered in Determining Immunity -- Non-Commonwealth Employees of Immune Governmental Entities -- Factors Determining Immunity of Commonwealth Employees Relevant to Immunity of Non-Commonwealth Employees of Other Governmental Entities.

(11) Immunity -- Sovereign -- Negligence -- Simple -- Employee -- Evidence -- Factors to be Considered in Determining Immunity -- Non-Commonwealth Employees of Immune Governmental Entities -- Supervisory Employee of Arlington County Acting Within Scope of Employment Immune From Liability for Simple [***3] Negligence (*Armstrong*, Record No. 820299).

Two cases are considered in the opinion. In *Messina* v. *Burden* (Record No. 811485), the Superintendent of Buildings of Tidewater Community College, part of the Virginia Community College system, was sued for alleged negligent injury to an actor by a fall on a stairway

behind the stage of the College theatre. The plaintiff, Messina, first sued the College but then, by amended motion for judgment, sued the Superintendent in his official capacity. Plaintiff filed a second amended motion after a demurrer based on sovereign immunity was sustained. Plaintiff by the second amended motion sued the defendant, not setting forth his job title and not alleging the defendant acted within the scope of his employment. A second demurrer based on sovereign immunity was sustained.

In *Armstrong* v. *Johnson* (Record No. 820299), the Chief of the Operations Division of the Department of Public Works of Arlington County Virginia, was sued when plaintiff sustained injuries by stepping on a defective manhole cover. The defendant was a supervisory officer subject to administrative review by the Director of the Department of Transportation [***4] of Arlington County. The County has sovereign immunity. A demurrer based on sovereign immunity was sustained.

In both cases it is argued that the doctrine of sovereign immunity should be rejected by the Supreme Court. Questions also are presented concerning the application of the doctrine of sovereign immunity to government employees.

1. The doctrine of sovereign immunity is in force in Virginia.

2. The General Assembly, by its amendment in c. 397 (1982) of Code § 8.01-195.3 of the Virginia Tort Claims Act, indicated that the Act should not be construed to remove or in any way diminish the sovereign immunity of any county, city or town in the Commonwealth. The doctrine of sovereign immunity thus cannot be eliminated by judicial fiat.

3. The doctrine of sovereign immunity serves a multitude of purposes including, but not limited to, protecting the public purse. The additional purposes include providing for the smooth operation of government; eliminating the public inconvenience and danger possibly stemming from the reticence of officials to act; and preventing citizens from improperly influencing the conduct of governmental affairs through the threat or use [***5] of vexatious litigation.

4. To accomplish the purposes of the doctrine of sovereign immunity, the doctrine must be extended not only to officials at the highest levels of the three branches of government, but also to some of those who help run the government, the state acting only through individuals and these individuals not being able to function effectively if in fear of personal liability as a result of litigation.

5. The defendant, Burden, in *Messina*, was alleged to be the Superintendent of Buildings of Tidewater Community College, a part of the Community College system, a supervisory employee acting within the scope of his employment. The defendant was thus a supervisory employee of the Commonwealth and is entitled to immunity from simple negligence for acts done within the scope of his employment.

6. One of the critical factors in deciding whether a government employee is entitled to sovereign immunity for simple negligence, is whether he was acting within or without his authority at the time of doing or failing to do the act complained of.

7. In *Messina* the defendant, Burden, in the second amended motion for judgment, was alleged to be acting within [***6] the scope of his employment with regard to the act complained of. This allegation, coupled with the supervisory nature of the defendant's work and the absence of a claim of gross or intentional negligence entitles the defendant to immunity. *Short* v. *Griffitts*, 220 Va. 53, 255 S.E.2d 479 (1979), *distinguished*.

8. If an individual works for an immune governmental entity then, in a proper case, the individual is entitled to sovereign immunity for simple negligence. Thus a county employee such as the defendant, Johnson, in *Armstrong* may be entitled to sovereign immunity. *James* v. *Jane*, 221 Va. 43, 51, 267 S.E.2d 109, 112 (1980); *Short* v. *Griffitts*, 220 Va. 53, 55, 255 S.E.2d 479, 481 (1979), *explained*.

9. Among the factors to be considered in determining whether a person potentially entitled to

sovereign immunity for liability for simple negligence is entitled to that immunity in a particular case are: (a) the nature of the function performed by the employee; (b) the extent of the State's interest and involvement in the function; (c) the degree of control and direction exercised by the State over the employee; and (d) whether the act complained [***7] of involved the use of judgment and discretion. *James* v. *Jane*, 221 Va. 43, 53, 267 S.E.2d 109, 112 (1980), *followed*.

10. The factors to be considered in determining the entitlement of a person to sovereign immunity stated in *James* v. *Jane*, 221 Va. 43, 53, 267 S.E.2d 109, 113 (1980) (Headnote 9) apply also to employees of other immune governmental entities.

11. In *Armstrong* (Record No. 820299) the defendant, Johnson, is entitled to immunity. Arlington County shares the sovereign immunity of the Commonwealth. The activities of the defendant, Johnson, an employee of the County, involved judgment and discretion. The County had a clear interest in his work and exercised administrative control over him.

## Syllabus

*Supervisory employees of Tidewater Community College and of Arlington County have sovereign immunity from liability for simple negligence; general discussion of doctrine of sovereign immunity in Virginia.*

**Counsel:** *H. Joel Weintraub (Decker, Cardon, Weintraub, Thomas & Hitchings, on brief), for appellant.* (Record No. 811485)

*J. J. O'Keefe, III (Outland, Gray, O'Keefe & Hubbard, on brief), for appellee.* (Record No. 811485)

[***8] *Blair D. Howard (Howard & Howard, P.C., on brief), for appellant.* (Record No. 820299)

*Charles G. Flinn, County Attorney, for appellee.* (Record No. 820299)

**Judges:** Carrico, C.J., Cochran, Poff, Compton, Stephenson, Thomas, JJ., and Harrison, Retired Justice. Thomas, J., delivered the opinion of the Court. Poff, J., concurring. Cochran, J., dissenting. Stephenson, J., joins in this dissent.

**Opinion by:** THOMAS

## Opinion

[*304] [**658] These two appeals present the same issue from slightly different perspectives. Both appeals concern whether the doctrine of sovereign immunity extends to government employees such as those involved in these cases. They differ in that William W. Burden, the appellee in the first appeal, was an employee of Tidewater Community College, part of the Virginia Community College System, and thus, in essence, an employee of the State, while Dennis R. Johnson, the appellee in the second appeal, was an employee of Arlington County. These appeals give us the opportunity to reexamine the complex law of sovereign immunity as it has evolved in the Commonwealth.

[*305] [**659] I. *Background*

A. *Messina*

In the first appeal, Frank [***9] Messina was injured when he tripped and fell on a stairway located behind the stage of the College Theater on the Frederick Campus of Tidewater Community College. At the time of his injury Messina was an actor in a play being performed at the theater.

Messina first sued the community college. However, that action was nonsuited and an amended motion for judgment was filed against William W. Burden, the college's superintendent of buildings.

In the amended motion for judgment, Messina made several allegations against Burden including

the following:

> On or about March 11, 1979, the Defendant, William W. Burden, was the Superintendent of Buildings for the Defendant Tidewater Community College, was its employee, and was acting within the scope of his employment; and as the Superintendent of Buildings it was his duty to maintain and supervise the maintenance of the buildings of the Tidewater Community College. . . .

Burden filed a demurrer in which he contended that the action against him was barred by the doctrine of sovereign immunity. The court sustained the demurrer with leave to Messina to amend.

Messina filed a second amended motion for judgment. This time [***10] Messina was careful not to set forth Burden's job title. Moreover, in his new pleading, Messina did not allege that Burden was acting within the scope of his employment or that he had supervisory responsibilities. In response, Burden filed a plea of sovereign immunity. The court sustained the plea.

On appeal, Messina contends that the trial court erred in two particulars: first by sustaining the demurrer to the first amended motion for judgment, second by sustaining the plea to the second amended motion for judgment.

B. *Armstrong*

Leonard Armstrong was injured when he stepped on a defective manhole cover located in a street in Arlington County. Armstrong sued Dennis R. Johnson and, in his motion for judgment, alleged [*306] that Johnson was "Chief of the Operations Division of the Department of Public Works in Arlington County, Virginia." Johnson filed a special *plea of immunity and a demurrer.* Thereafter, the parties entered into a stipulation of facts in which they agreed that at the time of Armstrong's injury, Johnson was Chief of the Operations Division as alleged. They further agreed that there were eleven sections within Johnson's division and that he administered [***11] all of them. They also agreed that Johnson's work required the application of engineering knowledge and skills to solve highway construction and maintenance

problems. They agreed further that Johnson had "wide latitude in exercising independent judgment, subject only to administrative review by the Director of the Department of Transportation."

The trial court sustained the demurrer and the plea of immunity. In a memorandum opinion, the trial court first stated that Arlington County shared the sovereign immunity of the Commonwealth, then reasoned that the county "is not a 'local government agency' as that term has been used in several of the decisions denying immunity to employees of such agencies." The trial court also stated that Johnson's duties were "analogous to the 'executive officers' in *Lawhorne* v. *Harlan* [214 Va. 405, 200 S.E.2d 569 (1973)] who were charged with the operation of a vast hospital complex." The court noted further that the charge against Johnson was one of simple negligence, not gross negligence or intentional misconduct.

On appeal, Armstrong contends that the trial court made two errors. He says the court erred in holding that Johnson "while [***12] acting as Chief . . . of Operations . . . was not acting as an employee of a local government agency." He also says the trial court erred in sustaining Johnson's demurrer and plea.

[**660] II. *Discussion*

A. *Issues Common to Both Appeals*

At least two common themes run through both appeals. One theme is that the doctrine of sovereign immunity has been so eroded that it has lost its vitality and should be done away with completely by this Court. The other theme concerns the difficulty in determining which government employees are entitled to immunity.

[*307] 1. *Vitality of the Doctrine*

[1-2] Contrary to the suggestions of the appellants, *HN1*[⬆] the doctrine of sovereign immunity is "alive and well" in Virginia. Though this Court has, over the years, discussed the doctrine in a variety of contexts and refined it for application to constantly shifting facts and circumstances, we have never seen fit to abolish it. Nor does the General Assembly want the doctrine abolished. In 1981,

the General Assembly enacted the Virginia Tort Claims Act. Had it so chosen, the legislature could have used that act as a vehicle to abolish sovereign immunity. It did just the [***13] contrary. In a 1982 amendment to the Act the General Assembly provided as follows:

> **HN2[⚓]** [N]or shall any provision of this article . . . be so construed as to remove or *in any way diminish* the sovereign immunity of any county, city, or town in the Commonwealth.

Code § 8.01-195.3 (emphasis added). Thus, the complexity that exists in the law of sovereign immunity cannot be eliminated by the simple expedient of doing away with the doctrine by judicial fiat.

### 2. *Determining Employee Immunity*

The more important question raised by the two appeals is under what circumstances an employee of a governmental body is entitled to the protection of sovereign immunity. In order to resolve this question, we must focus upon what the doctrine of sovereign immunity was meant to achieve.

[3-4] One of the most often repeated explanations for the rule of state immunity from suits in tort is the necessity to protect the public purse. *See Hinchey* v. *Ogden*, 226 Va. 234, 307 S.E.2d 891 (1983). However, protection of the public purse is but one of several purposes for the rule. In *Board of Public Works* v. *Gannt*, 76 Va. 455 (1882), we said that **HN3[⚓]** sovereign immunity [***14] is a privilege of sovereignty and we then explained that without the doctrine there would exist inconvenience and danger to the public in the form of officials being fearful and unwilling to carry out their public duties. We also stated that without sovereign immunity public service might be threatened because citizens might be reluctant to take public jobs. We said further that if the sovereign could be sued at the instance of every citizen the State could be "controlled [*308] in the use and disposition of the means required for the proper administration of the government." 76 Va. at 462 (quoting *The Siren*, 74 U.S. (7 Wall.) 152, 154 (1868)).

More recently, in *Hinchey*, we rejected the idea that protection of the public purse is or ever was

the sole basis of the doctrine. There, we said that while maintenance of public funds is important, another equally important purpose of the rule is the orderly administration of government. In *Hinchey*, we relied upon 72 Am. Jur. 2d *States, Territories, and Dependencies* § 99, which described sovereign immunity "as a rule of social policy, which protects the state from burdensome interference with the performance of its [***15] governmental functions and preserves its control over state funds, property, and instrumentalities." 226 Va. at 240, 307 S.E.2d at 894.

From these several sources it is apparent that **HN4[⚓]** the doctrine of sovereign immunity serves a multitude of purposes including but not limited to protecting the public purse, providing for smooth operation of government, eliminating public inconvenience and danger that might spring from officials being fearful to act, assuring that citizens will be willing to take public jobs, and preventing citizens from improperly influencing the conduct of governmental affairs through the threat or use of vexatious litigation. Given the several purposes of the doctrine, it follows that **HN5[⚓]** in [**661] order to fulfill those purposes the protection afforded by the doctrine cannot be limited solely to the sovereign. Unless the protection of the doctrine extends to some of the people who help run the government, the majority of the purposes for the doctrine will remain unaddressed. For example, limiting protection to the State itself does nothing to insure that officials will act without fear. If every government employee is subject to suit, the State could become [***16] as hamstrung in its operations as if it were subject to direct suit. The reason for this is plain: the State can act only through individuals. *See Sayers* v. *Bullar*, 180 Va. 222, 22 S.E.2d 9 (1942).

At least twice in the past, we have acknowledged the importance of affording immunity to certain government employees. In one case we approached the question on the basis of policy:

> It would be an unwise policy to permit agents and employees of the State to be sued in their personal capacity for acts done by them at the express direction of the State, unless they

depart from that direction.

[*309] *Sayers* v. *Bullar*, 180 Va. at 229, 22 S.E.2d at 12. To the same effect is *First Va. Bank-Colonial* v. *Baker*, 225 Va. 72, 79, 301 S.E.2d 8, 12 (1983), where we said that *HN6*[⬆] "government can function only through its servants, and certain of those servants must enjoy the same immunity in the performance of their discretionary duties as the government enjoys." *See* Note, *Virginia's Law of Sovereign Immunity: An Overview*, 12 U. Rich. L. Rev. 429 (1978).

There is very little debate regarding the extension of the doctrine to those who operate at the [***17] highest levels of the three branches of government. *HN7*[⬆] Governors, judges, members of state and local legislative bodies, and other high level governmental officials have generally been accorded absolute immunity. W. Prosser, *Handbook of the Law of Torts* § 132 at 987-988 (4th ed. 1971). General agreement breaks down, however, the farther one moves away from the highest levels of government. Nevertheless, on a case-by-case basis, this Court has extended immunity to other governmental officials of lesser rank.

In *Sayre* v. *The Northwestern Turnpike Road*, 37 Va. (10 Leigh) 454 (1839), we held the president and directors of the Northwestern Turnpike Road to be immune against a claim that a bridge built by their company was negligently constructed. In *Sayers* v. *Bullar*, 180 Va. 222, 22 S.E.2d 9 (1942), we held that workers who performed blasting operations for the State were immune from liability because there was no evidence that in blasting they did anything other than exactly what they were required to do by the sovereign. We stated that the "defendants were simply carrying out instructions given them by" a state agency. *Id.* at 230, 22 S.E.2d at 12. We said [***18] in *Sayers* that the workers "were acting solely in their representative capacity as lawful and proper agents of the State and not in their own individual right." *Id.* at 229, 22 S.E.2d at 12. In *Kellam* v. *School Board*, 202 Va. 252, 117 S.E.2d 96 (1960),

we held that a city school board was immune when charged with negligence in failing to keep the aisles clear in a high school auditorium that had been rented to a third party for a program. *Accord Short* v. *Griffitts*, 220 Va. 53, 255 S.E.2d 479 (1979); *Crabbe* v. *School Board and Albrite*, 209 Va. 356, 164 S.E.2d 639 (1968).

In *Lawhorne* v. *Harlan*, 214 Va. 405, 200 S.E.2d 569 (1973), we held that two hospital administrators and a surgical intern at the University of Virginia hospital were immune in a suit brought by the representative of a patient who died while in the hospital. [*310] In *Banks* v. *Sellers*, 224 Va. 168, 294 S.E.2d 862 (1982), we held that a division school superintendent and a high school principal were immune in a suit alleging that their failure to provide a safe environment resulted in plaintiff's being stabbed. In *Bowers* v. *Commonwealth*, 225 Va. 245, 302 [***19] S.E.2d 511 (1983), we held that a highway department resident engineer was immune from a suit where plaintiff sustained an injury on a culvert that was constructed by the highway department. [**662] Most recently we held that the Superintendent of the Norfolk-Virginia Beach Expressway was immune when sued for failing to provide adequate barriers and traffic control which led to a collision. *Hinchey* v. *Ogden*, 226 Va. 234, 307 S.E.2d 891 (1983).

Deciding which government employees are entitled to immunity requires line-drawing. Yet, given the continued vitality of the doctrine, the Court must engage in this difficult task. Yet, by keeping the policies that underlie the rule firmly fixed in our analysis, by distilling general principles from our prior decisions, and by examining the facts and circumstances of each case this task can be simplified.

B. *Analysis of Messina and Armstrong*

*Messina* and *Armstrong* do not involve officials at the very highest levels of government who have generally been accorded absolute immunity. Thus, to decide the question of immunity in these appeals, we must make a close examination of the facts and circumstances.

1. [***20] *Messina*

[5] In *Messina*, the trial court did not err in sustaining the demurrer to the first amended motion for judgment. In that pleading, Messina pleaded himself out of court. Messina alleged that the college was part of the Community College System, that Burden was employed by the college, that Burden was the "Superintendent of Buildings," that Burden had the "duty to maintain and supervise the maintenance of the buildings" at the college, and that Burden "was acting within the scope of his employment." It is clear from the first amended motion for judgment that Burden was a supervisory employee of the State of Virginia who was operating within the scope of his employment in doing or failing to do the act of simple negligence complained of by Messina; as such he [*311] was entitled to immunity. *See Bowers* v. *Commonwealth*, 225 Va. 245, 302 S.E.2d 511 (1983); *Banks* v. *Sellers*, 224 Va. 168, 294 S.E.2d 862 (1982); *Lawhorne* v. *Harlan*, 214 Va. 405, 200 S.E.2d 569 (1973).

[6-7] In support of his second assignment of error, Messina relies heavily upon *Short* v. *Griffitts*, 220 Va. 53, 255 S.E.2d 479 (1979). Messina contends that the allegations [***21] in his case were virtually the same as in *Short* where this Court ruled that the doctrine of sovereign immunity did not bar the claim. However, *Short* is distinguishable. The most telling difference is that in the instant appeal Messina alleged that Burden was acting within the scope of his employment with regard to the act complained of. * No such allegation was made in *Short*. One of the critical factors in deciding whether a government employee is entitled to immunity is whether he was acting within or without his authority at the time of doing or failing to do the act complained of. In *Messina* this critical point must be resolved in favor of Burden. The fact that he is said by the plaintiff to have been operating within the scope of his employment together with the allegation of the supervisory nature of his work and the absence of any claim of gross negligence or intentional misconduct demonstrates the correctness of the trial court's decision to sustain the plea of sovereign immunity.

[***22] 2. *Armstrong*

[8] In support of his first assignment of error, Armstrong argues that Johnson was a county employee rather than an employee of the Commonwealth as the trial court found, and hence, that he was not eligible to claim sovereign immunity. He relies upon a passing comment in *James* v. *Jane*, 221 Va. 43, 51, 267 S.E.2d 108, 112 (1980), where we said that "[w]e make a distinction [**663] between the Sovereign Commonwealth of Virginia and its employees, and local governmental agencies and their employees."

Armstrong construes that comment and similar language in *Short* v. *Griffitts*, 220 Va. 53, 55, 255 S.E.2d 479, 481 (1979), as [*312] the pronouncement of a *per se* rule that the doctrine of sovereign immunity never applies to an employee of a local governmental agency. We disavow such a construction. The distinction we mentioned in *James* and *Short* is one of degree rather than kind. A state employee has a closer nexus to the sovereign. And the identity of the employer is one of the factors to be considered in determining whether a government employee is entitled to the protection of the immunity doctrine. Where an employee [***23] works for the sovereign itself, an entity we know to be immune, we can eliminate the step in the analysis which otherwise would require us to ascertain whether the employee who asserts immunity works for an immune governmental entity. As must be obvious from the decision reached in *Banks* v. *Sellers* (handed down after the trial court's ruling in *Armstrong*), where we held a school superintendent and a principal immune, employees of governmental entities other than the

---

* The facts concerning the nature of Burden's work were contained primarily in the first amended motion for judgment to which the trial court sustained a demurrer with leave to amend. Though the plea followed the second amended motion for judgment, it is obvious from the trial court's final order that it relied upon both motions for judgment in determining Burden's status. Messina interposed no objection to this procedure. Indeed in his brief he refers to both pleadings. Thus, the trial court did not err in considering allegations contained in the first amended motion for judgment.

Commonwealth itself can receive the benefits of sovereign immunity.

Given our analysis of this appeal, it was unnecessary to attempt to turn Johnson into a quasi-state employee in order for him to be entitled to the protection of sovereign immunity. It would place an unnecessary strain on the English language and on the creative genius of attorneys to require transformation of an employee of a local immune body into a state employee in order to entitle him to immunity. The more workable rule is the one here announced: If an individual works for an immune governmental entity then, in a proper case, that individual will be eligible for the protection afforded by the doctrine.

[9-10] In his second assignment [***24] of error, Armstrong contends that even if Johnson is a person who can secure, in a proper case, the benefits of sovereign immunity, that immunity should be withheld in the instant case because Johnson fails to meet the test set forth in *James* v. *Jane*. *James* involved suits against doctors at the University of Virginia Medical School. At trial, plaintiff alleged that he was injured as the result of negligent acts on the part of the doctors in performing a myelogram. All of the doctors were full-time faculty members of the University of Virginia Medical School. They were required to teach, to do research, and to take care of patients. They were all fully licensed physicians. They all pleaded sovereign immunity. The trial court held that they were immune. We reversed. In our view, the doctors were essentially independent contractors as far as their relationship with their patients [*313] was concerned. We concluded that since matters of treatment were left up to them individually, the State had no control over the doctor-patient relationship and, therefore, the State's immunity had no application to the doctors with regard to claims of negligent medical treatment.

[***25] In *James* we developed a test to determine entitlement to immunity. Among the factors to be considered are the following:

   1. the nature of the function performed by the employee;

   2. the extent of the state's interest and involvement in the function;

   3. the degree of control and direction exercised by the state over the employee; and

   4. whether the act complained of involved the use of judgment and discretion.

221 Va. at 53, 267 S.E.2d at 113. Armstrong contends that Johnson does not meet the *James* analysis because the *State* had no control over him and the *State* had no interest in Johnson's work. The response to Armstrong's contention is simple: the word "state" was used in this test only because in *James* the State was the immune body for which the doctors worked. Our use of the word "state" did not mean [**664] that in cases where the individual seeking immunity was not a State employee the State's interest in and control over the individual still had to be examined. Had the doctors in *James* worked for another immune governmental entity, that entity's name would have been used in the test. Thus, in applying [***26] the *James* test to employees of other immune governmental entities, the word "state" should be deleted and the proper description of the governmental entity substituted.

[11] Consequently, in *Armstrong*, in applying the *James* test, the first question is whether Johnson works for an immune body. Since Johnson works for Arlington County and since counties share the tort immunity of the Commonwealth, *Mann* v. *County Board*, 199 Va. 169, 98 S.E.2d 515 (1957), then Johnson is eligible for immunity if other applicable criteria are met. When the *James* test is modified to insert the word "county" in the place of the word "state," it is apparent that Johnson must be afforded immunity. His activities clearly involved judgment and discretion. The county exercised administrative control over Johnson and his [*314] department. The county had a clear interest in the work performed by Johnson.

III. *Conclusion*

For all the foregoing reasons, we hold that there was no error in the judgments appealed from.

Therefore, the judgments in both appeals will be affirmed.

*Affirmed.*

**Concur by:** POFF

# Concur

POFF, J., concurring.

I concur in the result, and I have decided [***27] to join in the majority opinion in the hope that it will contribute to uniformity in the application of the law of sovereign immunity in this Commonwealth. I must add, however, that I have a somewhat different view of what the law ought to be.

The complexity the majority finds in the case law results mainly from historical confusion over the differences between the doctrine of sovereign immunity and the doctrine of public-servant immunity (sometimes imprecisely labeled "official immunity"). The confusion stems, I believe, from undue reliance upon the truism that government can act only through the acts of its employees.

The two doctrines are akin but different in concept and effect. The doctrine of sovereign immunity, rooted originally in the tenuous theory that the King of England could do no wrong, finds its most legitimate justification in the right of government to protect its assets, owned in common by the people at large, and to promote the welfare and safety of the body politic by assuring orderly administration of governmental functions.

On the other hand, the primary purpose of the doctrine of public-servant immunity, while related to those underlying the doctrine [***28] of sovereign immunity, is to encourage citizens, including those of modest means, to enter government service and, once employed, to carry out their assigned missions responsibly without fear of personal liability for accidental injuries resulting from acts or omissions committed in the exercise of their discretionary powers. Public-servant immunity does not attach merely because the level of government for which the employee works enjoys sovereign immunity.

[*315] The rules I suggest would dispense with certain distinctions, invoked in earlier cases, which I consider artificial and illogical. For purposes of the sovereign-immunity analysis, I see no *valid* reason to distinguish between a county and a city; both administer laws and programs which affect the people's interests in the integrity of the public purse and the welfare and safety of the body politic. As an examination of the case law will reveal, it is all but impossible, with any degree of consistency, to determine the difference between a governmental function and a proprietary function, and I would abandon the requirement that [**665] courts make the attempt. And, while I would grant no immunity from intentional [***29] torts to any employee at any level of government, I would abolish the nebulous distinction we have drawn between simple civil negligence and gross civil negligence.

Having in mind the public-policy purposes of the doctrines of sovereign immunity and public-servant immunity, I favor the following rules:

(1) Absent express waiver, the Commonwealth, counties of the Commonwealth, cities chartered by the Commonwealth, and towns incorporated by the Commonwealth are immune from suit arising out of a tort committed in the discharge of a lawful public function.

(2) Departments, agencies, and other public bodies created by any level of government and authorized to exercise a lawful power of that government enjoy the same immunity.

(3) Chief executive officers and legislators at every level of government, and judicial officers, such as judges, magistrates, and commissioners in chancery, are immune from liability for damages arising out of unintentional torts committed within the scope of their employment.

(4) All other employees of every level of government or of a lawful creature of government are immune from liability from damages arising out of unintentional torts [***30] committed in the performance of a

judgmental or discretionary duty within the scope of their employment, without regard to whether the misfeasance or nonfeasance is simple or gross.

[*316] These rules, like those precipitated by the majority opinion, may not be the ideal solution. Government continues to grow in size and power, and the danger of tortious injury to private citizens by government employees expands apace. Some say the legislature should abolish the judge-made doctrine of sovereign immunity, grant absolute immunity to every government employee for every kind of tort arising out of and during the course of his employment, and, applying the rule of *respondeat superior*, impose liability solely upon the master for the tortious conduct of the servant, with no right of indemnity against the servant.

I would not go so far. Doubtless, such a legislative package would simplify the body of the law for the benefit of legitimate claimants. But it would inevitably tend to curtail an employee's incentive to perform his duties faithfully, invite frivolous and vexatious litigation, and disrupt the orderly administration of governmental functions, all at the expense [***31] of the people.

**Dissent by: COCHRAN**

# Dissent

COCHRAN, J., dissenting.

The majority opinion has attempted to lay down a rule of sovereign immunity which reconciles our prior decisions. In my view, the attempt fails because the decisions cannot be reconciled. The result is that the tent of sovereign immunity is now to be stretched to protect from liability far more negligent individuals than ever before. [1] What appears to be the critical test is whether the employee of an immune employer was acting within or without the scope of his employment.

The effect of the majority opinion, in my view, is to overrule at least three of our recent decisions on this subject.

In *Kellam* v. *School Board*, 202 Va. 252, 117 S.E.2d 96 (1960) and *Crabbe* v. *School Board and Albrite*, 209 Va. 356, 164 S.E.2d 639 (1968), [***32] we held that a school board, in the performance of its duties, was an arm of the Commonwealth and, in the absence of waiver by statute, immune from liability for negligence. In *Crabbe*, however, we laid down a different rule for a teacher who was employed by a county school board and performing his duties when a pupil in his class was injured in using a [**666] power saw. We held that the fact that the teacher was "performing [*317] a governmental function for his employer" did not exempt him from liability "for his own negligence in the performance of such duties." 209 Va. at 359, 164 S.E.2d at 641.

Twice we have followed *Crabbe* and held that employees of exempt employers were liable for their own acts of negligence. *James* v. *Jane*, 221 Va. 43, 267 S.E.2d 108 (1980); *Short* v. *Griffitts*, 220 Va. 53, 255 S.E.2d 479 (1979). In *Lawhorne* v. *Harlan*, 214 Va. 405, 200 S.E.2d 569 (1973), a majority relied on the distinction between discretionary and ministerial acts to hold an intern and administrators of a state hospital immune because they exercised discretion in their work. *Id.* at 407, 200 S.E.2d at 571-72. But in *James*, the court, without [***33] overruling *Lawhorne*, held full-time members of the medical faculty at the same hospital subject to liability for their acts of negligence because they exercised complete discretion in their work. 221 Va. at 52-55, 267 S.E.2d at 113-14.

The majority opinion in *James* repeated the language of *Short* that in our decisions "[w]e make a distinction between the Sovereign Commonwealth of Virginia and its employees, and a governmental agency, created by the Commonwealth, and its employees." I do not consider that the use of that language was casual or inadvertent.

In *Banks* v. *Sellers*, 224 Va. 168, 294 S.E.2d 862 (1982), a school's division superintendent and

---

[1] I agree that the General Assembly has demonstrated an intent to retain sovereign immunity but I fail to perceive any legislative intent that such immunity be extended beyond any limits heretofore established.

principal were held to be immune because of the supervisory and discretionary nature of their work. *Id.* at 172-73, 294 S.E.2d at 864-65. But, in *Crabbe* and *Short*, immunity had been denied a shop teacher, an athletic director, a coach, and a buildings and grounds supervisor. The *Crabbe* and *Short* decisions did not rely on the distinction between discretionary and ministerial functions, as the defendants in those cases clearly exercised discretion by the very nature of their work but were nonetheless [***34] subject to liability for negligence. Later decisions relying on this distinction are a clear departure from the *Crabbe* rule of individual liability.

In the present cases, the majority finds each defendant to be a supervisory employee exercising discretion in his work. [2] This puts the court in the position of endorsing the distinction relied on in [*318] *Lawhorne* and *Banks* and contravening the clear mandate of *Crabbe, Short*, and *James*. Accordingly, I dissent. To immunize employees of local arms or agencies of the state government is to regress from established principles of law. In *Short*, we held that whether the employees' duties included supervision, maintenance, and inspection of facilities and whether they breached such duties thereby proximately causing plaintiff's injuries were questions of fact to be decided at trial. 220 Va. at 55, 225 S.E.2d at 480. Similarly, Messina and Armstrong should be entitled to try the questions whether Burden and Johnson had duties to inspect and maintain the premises under their supervision, whether they breached such duties, and whether their breach proximately caused injuries to their respective plaintiffs. [***35]

---

[2] The majority contends that the trial court determined the nature of Burden's work from the allegations of the first amended motion for judgment, to which a demurrer previously had been sustained. Because Messina did not object to this procedure, the court finds the action to be proper.

There is no express indication in the order that the first amended motion for judgment formed the basis of the decision. The majority's reliance on Messina's failure to object to a procedure not apparent on the face of the order appears to me to be unjustified. Furthermore, it is worth noting that counsel did object to entry of the order.

**End of Document**