**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division**

| | | |
|---|---|---|
| **STEVEN E. CLEM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 3:18-cv-00049-GEC** |
| | ) | |
| **SCOTT H. JENKINS,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS MASON G. MAYS, BRENT W. COFFEY, AND THE COMMONWEALTH OF VIRGINIA'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

I.   BACKGROUND ................................................................................................. 2

   A.  Factual .................................................................................................... 2

   B.  Procedural .............................................................................................. 5

II.   LEGAL STANDARD ....................................................................................... 6

III.   ARGUMENT ................................................................................................... 8

   A.  The Complaint Fails To State A Claim Against Mays Or Coffey For  Unlawful Seizure Under 42 U.S.C. § 1983 (Count V). ............................................................. 8

      i.  The Complaint demonstrates the existence of probable cause to arrest the plaintiff for driving under the influence of alcohol in violation of Va. Code § 18.2-266 ("DUI"). .... 8

      ii.  Mays is entitled to qualified immunity to the unlawful seizure claim under 42 U.S.C. §1983. ................................................................................................... 12

      iii.  The Complaint fails to state a §1983 unlawful seizure clam against Coffey. ................ 15

   B.  The Complaint Fails To State A Claim Against Mays For Either False Imprisonment Or False Arrest (Counts I and III). ......................................................... 16

      i.  The Complaint fails to plead a false imprisonment claim based on  false arrest because Clem's arrest for driving under the influence was  supported by probable cause (Count I). ............................................................................................................ 17

      ii.  The Complaint fails to plead a false imprisonment claim based on unlawful detention (Count III). ................................................................................................. 17

   C.  The Complaint Fails To State A Claim Against Mays For Battery (Count II). ................. 18

   D.  The Complaint Fails To State A Claim Against Mays For Malicious  Prosecution (Count VI) ....................................................................................................... 19

   E.  The Complaint Fails To State A Claim Against Mays Or Coffey For Civil  Conspiracy (Count IV). ..................................................................................................... 21

      i.  The Complaint fails to state a claim for civil conspiracy against either Mays or Coffey …………………………………………………………………………………22

   F.  The Complaint Fails To State A Claim For Gross Negligence (Count VIII). ................. 24

      i.  The Complaint fails to state a claim for gross negligence against Mays or Coffey. ...... 24

      ii.  If this Court finds that Count VIII states a valid claim for simple negligence, Mays and Coffey are absolutely immune from liability. .............................................. 26

      iii.  The Complaint fails to state a claim for gross negligence against the Commonwealth, and the Commonwealth is entitled to sovereign immunity. .......................... 28

IV.  CONCLUSION .............................................................................................. 29

The defendants, Mason G. Mays ("Mays"), Brent W. Coffey ("Coffey"), and the Commonwealth of Virginia ("Commonwealth"), by counsel, submit this Memorandum in Support of Motion to Dismiss. Counts I (False Arrest), II (Battery), III (False Imprisonment), IV (Civil Conspiracy), V (42 U.S.C. § 1983 Unlawful Seizure), VI (Malicious Prosecution) and VIII[1] (Gross Negligence) all hinge on Plaintiff's theory that he was arrested without probable cause. Plaintiff's own Complaint, however, sets forth facts that clearly establish probable cause to arrest Plaintiff for driving under the influence of alcohol in violation of Virginia law ("driving under the influence"). Mays, the arresting officer, had eyewitness information from a fellow law enforcement officer that Plaintiff had been driving erratically on the highway, and had veered his vehicle off the roadway. During his investigation, Mays observed a strong odor of alcohol on Plaintiff's person and Plaintiff confessed to Mays that he had been drinking wine just before getting behind the wheel. In addition, Plaintiff submitted to a preliminary breath test and blew a 0.111 blood alcohol content, which is 0.031 above the legal limit. The totality of the circumstances provided Mays with ample probable cause to arrest Plaintiff for driving under the influence. Plaintiff attempts to undermine the circumstances that gave rise to probable cause, but pleads few supporting facts. Ultimately, Plaintiff cannot change the facts and reliable information that established probable cause to arrest Plaintiff.

If, contrary to the Complaint's well-pleaded facts, this Court should determine that Plaintiff's arrest was not supported by probable cause, counts II, IV, V, VI, and VIII still fail as a matter of law. Count II fails because Plaintiff fails to plead a physical injury; Count IV fails because Plaintiff fails to plead a conspiracy; Count V fails because Mays and Coffey are entitled to qualified immunity; Count VI fails because Plaintiff does not plead special injury; and Count VIII fails because the Commonwealth, Mays, and Coffey are entitled to sovereign immunity. In

---

[1] The Complaint does not contain a Count VII.

addition, Plaintiff does not plead a gross negligence claim. In sum, none of the Counts have merit, and all must fail. Accordingly, this Court should dismiss Plaintiff's Complaint with prejudice as to each of the defendants, and all claims contained therein.

# I.     BACKGROUND

## A.     Factual

On June 23, 2016, at approximately 5:43 p.m., the plaintiff, Steven E. Clem ("Clem") was operating a motor vehicle and traveling westbound on Virginia Route 3 in Culpeper County. (Compl. ¶ 11.) Clem, a lieutenant in the Spotsylvania County Sheriff's Office at the time of the incident, had spent that afternoon socializing with friends at vineyards. (*Id*. ¶¶ 1, 13.) The Complaint admits that Clem had been drinking wine that afternoon. (*Id*. ¶ 13.) At the vineyards with Clem were his friend Timothy Chilton ("Chilton"), a captain with the Culpeper Police Department ("Culpeper PD"), and each of their girlfriends. (*Id*.) After departing the last vineyard in two separate vehicles, Chilton allegedly pulled onto the shoulder of Route 3, and Clem, who was driving behind Chilton, allegedly followed suit. (*Id*. 12, 14–15.) Chilton allegedly asked Clem to drive Chilton's girlfriend home so that Chilton could drive directly to work at the Culpeper PD. (*Id*. ¶ 15.) Chilton's girlfriend allegedly moved from Chilton's vehicle to Clem's vehicle, and seated herself in the back. (*Id*. ¶ 15.) As alleged, Chilton departed for the Culpeper PD separately, and Clem's vehicle subsequently reentered a travel lane on Route 3. (*Id*. ¶ 15–16.)

Shortly thereafter, Charles Burgoon ("Burgoon"), then a Culpeper County sheriff's deputy, initiated a traffic stop of Clem. (*Id*. ¶ 3, 17.) As alleged, Burgoon "mistakenly believed" that Clem had unintentionally veered off the road onto the shoulder in an "erratic" manner. (*Id*. ¶ 17.)  Clem pulled over into a nearby parking lot. (*Id*.) Burgoon "detected an odor of alcohol" coming from Clem's vehicle, and suspected that Clem "was driving under the influence of

alcohol." (*Id.* ¶ 18.) As alleged, however, Burgoon did not ask Clem to exit his vehicle. (*Id.*) Burgoon soon realized that Chilton's girlfriend was a passenger in Clem's vehicle. (*Id.* ¶ 19.) Because Burgoon knew of an alleged "political rivalry" between the defendant Culpeper County Sheriff, Scott E. Jenkins ("Jenkins") and Chilton, Burgoon sought assistance from the Virginia State Police to continue the DUI investigation. (*Id.* ¶ 20.)   In the interim, Culpeper County Sheriff's Deputy James Vernon Fox ("Fox") and four other sheriff's deputies ("John Does 1–4") arrived on the scene in order to "provide assistance" to Burgoon. (*Id.* ¶¶ 21–22.) Chilton also appeared at the scene. (*Id.* ¶ 21.) Without alleging a particular point in time, the Complaint states that Jenkins "became aware of the circumstances and became enraged" that Burgoon himself did not arrest Clem, Chilton, or Chilton's girlfriend. (*Id.* ¶ 23.)

Mays, a trooper with the Virginia State Police, allegedly responded to the scene of the traffic stop at around 5:55 p.m. (*Id.* ¶ 24.) The Complaint implies that Burgoon shared his observations to Mays when Mays arrived on the scene of the stop, stating that the two "conferred." (*Id.* ¶¶ 24–25.) When Mays initiated his investigation, he "claimed to detect a *strong* odor of alcohol" emanating from Clem's person. (*Id.* ¶ 27) (emphasis added.) Clem also confessed to Mays that he had been drinking wine "just" before operating his vehicle. (*Id.* ¶ 28.) After detecting the strong odor of alcohol, Mays used a "portable breath test device" ("device") to determine Clem's blood alcohol content. (*Id.*)  The device "purportedly registered" a result of "0.111 percent" result after Clem blew into it. (*Id.*) Allegedly, Clem asked Mays to wait ten minutes before using the device so that the alleged "residual mouth alcohol" from the wine that Clem had "just consumed" could dissipate. (*Id.*) Mays allegedly did not agree to wait. (*Id.*) Clem claims to have had smokeless tobacco in his mouth when he blew into the device, and the Complaint alleges that Mays discovered tobacco in Clem's pocket after arresting Clem. (*Id.* ¶¶

28, 35.) Clem also claims that the smokeless tobacco and "recent wine consumption" made the device reading "invalid" due to ethyl alcohol. (*Id.* ¶¶ 31, 36.) The Complaint does not explain how or to what extent ethyl alcohol allegedly invalidated the device reading, but concludes that the reading "did not provide probable cause to arrest." (*Id.* ¶ 36.) At some unspecified point in time, Chilton allegedly informed Mays and Burgoon that Clem was "sober," but they told Chilton that "it was too fucking late for that now." (*Id.*)

Mays transported Clem to the Culpeper PD after the arrest, where he submitted Clem to an evidentiary breath test ("breath test"). (*Id.* ¶ 37.) Mays had allegedly been trained to operate the evidentiary breath test machine ("machine"), and the machine was able to provide a more accurate reading of blood alcohol content than the device. (*Id.* ¶ 39.) Clem claims to have been eager to take the breath test and alleges that he was "cooperative." (*Id.* ¶¶ 39–40.) Mays allegedly began administering the first breath test at approximately 7:25 p.m. (*Id.* ¶ 40.) Burgoon was allegedly at the Culpeper PD when Clem and Mays arrived. (*Id.* ¶ 41.) Clem claims that Burgoon "was summoned away" to meet with Jenkins. (*Id.* ) The Complaint alleges that Mays twice attempted to submit Clem to the test, but "abruptly aborted" the breath test both times before completion because "Clem had given insufficient samples." (*Id.*¶¶ 40, 43.) Mays allegedly did not inform Clem that Clem had done anything wrong in the testing, and Clem claims that he did not give insufficient samples. (*Id.* ¶¶ 43–44.) Clem claims that the machine, though capable of doing so, "did not detect or report any insufficient sample." (*Id.* ¶ 44.) The Complaint alleges that Mays did not read Clem "the declaration of refusal" under Va. Code § 18.2-268.3(C) or "the implied consent law" under Va. Code § 18.2-268.2.[2] (*Id.* ¶¶ 28, 34.) These statutory recitations are related to post-arrest proceedings during the course of the breath test.

---

[2] The only statute that deals with implied consent to take a breath test is Va. Code § 18.2-268.2. The statute states that an individual who drives on a Virginia highway, and is arrested for driving under the influence, is deemed to

Because the breath test was incomplete, Mays placed Clem in Mays' police cruiser to take him to the hospital for a blood test. (*Id.* ¶ 46.) Clem allegedly volunteered to take a blood test because he wanted to "prove that he was sober." (*Id.* ¶ 45.) On the way to the hospital, Mays allegedly received a telephone call and then drove straight to the magistrate's office without stopping for a blood test. Burgoon was allegedly waiting for Mays and Clem at the magistrate's office, and the two officers swore out a misdemeanor DUI warrant. (*Id.* ¶ 49.) Clem alleges that Mays secured the warrant "by falsely swearing" that Clem had provided a "deficient [breath] sample." (*Id.*) Mays also swore out a summons against Clem for civil refusal under Va. Code § 18.2-268.3 because of Clem's "deficient sample." (*Id.* ¶ 50.) The magistrate did not issue a search warrant for Clem's blood. (*Id.* ¶ 51.)

Clem claims that his employer, the Spotsylvania Sheriff's Department, investigated Clem "as a result of the pending charges." (*Id.* ¶ 52.) During the course of the investigation, Clem allegedly lost the opportunity to be promoted to the role of "Captain," which allegedly would have come with a $20,000 or greater increase in annual salary and an unnamed amount of retirement benefits. (*Id.*) Ultimately, the DUI misdemeanor charge and the refusal summons were dismissed by the Culpeper County Circuit Court on October 4, 2016 on a suppression motion. (*Id.* ¶ 53.)

With respect to Coffey, the only fact alleged is that he was employed as a trooper with the Virginia State Police on the date of Clem's arrest. (Compl. ¶ 6.)

### B. Procedural

---

have consented to a breath or blood test. Va. Code Ann. § 18.2-268.2 (Lexis 2018). The statute does not require an officer to read its provisions. Va. Code § 18.2-268.3 deals with the declaration of refusal, and requires an officer to advise an individual who is already subject to arrest, and who unreasonably refuses to submit to a breath or blood test as described in §18.2-268.2, that failure to submit subjects the individual to criminal penalties. Va. Code Ann. § 18.2-268.3 (Lexis 2018). Because the recitation requirement of § 18.2-268.3 applies only to a post-arrest breath test proceeding, it is irrelevant to a probable cause inquiry.

On June 5, 2018, Clem filed his Complaint against Mays, Coffey, the Commonwealth, Culpeper County ("County"), Jenkins, Fox, Burgoon, and four unnamed sheriff's deputies. Clem filed the Complaint in the Culpeper County Circuit Court ("Circuit Court") and asserted seven claims arising from the June 23, 2016 arrest. Defendants Mays, Coffey, and the Commonwealth filed their Demurrer and Special Plea of Sovereign Immunity in the Circuit Court seeking dismissal of the Complaint in its entirety for failure to state a claim upon which relief can be granted and seeking dismissal of the Complaint on the grounds of sovereign immunity as to the Commonwealth. Defendants Jenkins, Burgoon, Fox, and the County each also filed Demurrers in the Circuit Court. On June 5, 2018, the Circuit Court granted the County's Demurrer, and dismissed the County from the matter with prejudice. Also on June 5, 2018, Jenkins filed a Notice of Removal in this Court based on federal question jurisdiction, to which all remaining defendants consented.

The Complaint alleges state law claims of false arrest (Count I), battery (Count II), false imprisonment (Count III), and malicious prosecution (Count VI) against Mays. (Id. ¶¶ 54–68, 83–84.) Against Mays and Coffey each, the Complaint alleges, pursuant to 42 U.S.C. § 1983, an unreasonable seizure claim (Count V), as well as a state law claim of civil conspiracy (Count IV) (Id. ¶¶ 69–82.) Against Mays, Coffey, and the Commonwealth, the Complaint alleges a state law claim of gross negligence (Count VIII). (Id. ¶¶ 85–92.)

## II.     LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). "To survive a motion to dismiss the complaint must state a 'plausible claim for relief' that 'permit[s] the court to infer more than the mere possibility of misconduct." *Safar v. Tingle*, 859

6

F.3d 241, 243 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a complaint's factual allegations must "raise a right to relief above the speculative level.")   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard requires a plaintiff to "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted).

"[U]nwarranted inferences, unreasonable conclusions, or arguments," cannot on their own raise a plausible right to relief. *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009). "[N]aked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quotations omitted). If the well-pleaded facts in a complaint do not permit a court to infer more than the mere possibility of misconduct, the plaintiff has failed to state a valid claim for relief, and the complaint should be dismissed. *Iqbal*, 556 U.S. at 678.

III.    ARGUMENT

   A.    **The Complaint Fails To State A Claim Against Mays Or Coffey For Unlawful Seizure Under 42 U.S.C. § 1983 (Count V).**

Count V fails to state a claim of unlawful seizure against Mays or Coffey. Plaintiff's own Complaint shows that Clem's arrest by Mays was supported by probable cause, and was therefore reasonable under the Fourth Amendment.

   i.    **The Complaint demonstrates the existence of probable cause to arrest the plaintiff for driving under the influence of alcohol in violation of Va. Code § 18.2-266 ("DUI").**

To state a § 1983 claim for unlawful seizure, a plaintiff must show that the defendant arrested him without probable cause. *Dunaway v. New York*, 442 U.S. 200, 213 (1979); *see Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996). "Probable cause exists when the facts and circumstances within an officer's knowledge—or of which he possesses reasonably trustworthy information—are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." *Wadkins v. Arnold*, 214 F.3d 535, 539(4th Cir. 2000) (citing *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949)). To assess whether probable cause exists, a court must examine "the totality of the circumstances [that surround an arrest] from the perspective of a reasonable officer." *Tyree v. United States*, No. 3:09-CV-663, 2010 U.S. Dist. LEXIS 48198, at *13 (E.D. Va. May 7, 2010), *aff'd*, 417 F. App'x. 364 (4th Cir. 2011).

"For probable cause to exist . . . evidence sufficient to convict is not required." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002) (applying the unreasonable seizure framework to a § 1983 false arrest claim). "Reasonable law enforcement officers are not required to 'exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause

8

is established.'" *Wadkins v. Arnold*, 214 F.3d at 541 (4th Cir. 2000) (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991) (citing *Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir. 1989) ("Probable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful."))) "Probable cause requires only a *probability* or *substantial chance* of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983) (emphasis added).

In Virginia, it is unlawful for a person to "operate any motor vehicle . . . (i) while such person has a blood alcohol concentration of 0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath as indicated by a chemical test . . . [or] (ii) while such person is under the influence of alcohol." Va. Code Ann. §18.2-266 (2018). A police officer has probable cause to arrest a suspect for DUI if, "when examined in their totality, the circumstances known to [an officer] at the time [of arrest] [are] sufficient to permit a reasonable person to believe that [a suspect] ha[s] drunk enough alcohol to observably affect his manner, disposition, speech, muscular movement, general appearance or behavior when he was operating his [motor vehicle]." *Bristol v. Commonwealth*, 47 Va. App. 584, 599 (Va. Ct. App. 2006) *rev'd on other grounds*, 272 Va. 568 (2006) (citing *Thurston v. City of Lynchburg*, 15 Va. App. 475, 483 (Va. Ct. App. 1992); *see* Va. Code Ann. § 4.1-100 (defining the word "intoxicated" with the same language). Virginia courts, as well as the Fourth Circuit Court of Appeals, have found that "some form of mental *or* physical impairment" can establish probable cause to suspect that an individual is intoxicated or drunk. *United States v. Brown*, 401 F.3d 588, 597 (4th Cir. 2005) (citing to cases in the Virginia Supreme Court and Virginia Court of Appeals).

In *Bristol v. Commonwealth*, the Virginia Court of Appeals held that a suspect's arrest for DUI was supported by adequate probable cause based on a "quite strong" odor of alcohol

emanating from the suspect's person, "slightly slurred speech," and eyewitness reports that the suspect had been in a bar, was showing off on his motorcycle in a parking lot, and crashed his motorcycle after driving toward a crowd of people. 47 Va. App. at 592–93. In *Fierst v. Commonwealth* , 210 Va. 757, 760 (1970), the Supreme Court of Virginia held that a suspect's slumped posture in the car, wan or drunken appearance, "mumbly" speech, inability to locate his license, and need for assistance in exiting the car, were sufficient indicators of intoxication to warrant his arrest for DUI. *See also Clarke v. Commonwealth*, 32 Va. App. 286, 296 (Va. Ct. App. 2000) (holding that a suspect's bloodshot eyes, erratic speech pattern, and odor of alcohol provided probable cause to arrest for public intoxication); *Clagett v. Commonwealth*, 252 Va. 79 (1996) (finding probable cause to arrest for public intoxication because the arrestee was unconscious).

It is clear from the face of the Complaint that Mays had probable cause to arrest Clem. As pleaded in the Complaint, the facts and information known to Mays at the time of arrest were that Clem had been drinking alcohol immediately prior to driving, Clem did not appear to be in control of his vehicle and had driven off the roadway, Clem's vehicle smelled of alcohol, and his person smelled *strongly* of alcohol. The circumstances of this case are similar to the circumstances in *Bristol*. In both cases, the arresting officer possessed information that a suspect had been drinking alcohol shortly before driving, had been driving erratically and unsafely, and smelled strongly of alcohol upon investigation. *See Bristol*, 47 Va. App. at 599. Unlike the arresting officer in *Bristol*, however, Mays had additional information that Clem was driving under the influence. Mays had the reading of a device showing a blood alcohol content that was well over the legal limit of 0.08 as stated in Va. Code § 18.2-266. It is clear from the face of the Complaint, therefore, that the totality of the circumstances known to Mays would have permitted

a reasonable officer to believe there was a "substantial chance" that Clem drunk enough alcohol to observably affect his muscular movement, manner, behavior, and general appearance. *Gates*, 462 U.S. at 243 n.13; *see Wadkins*, 214 F.3d at 539; *Tyree*, 2010 U.S. Dist. LEXIS 48198, at *13. For these reasons, Mays had probable cause to arrest Clem, and the arrest was therefore reasonable and lawful under the Fourth Amendment.[3]

The Complaint's attempts to undermine the facts that gave rise to probable cause are insufficient to defeat probable cause because they are "unwarranted inferences" and "unreasonable conclusions." *See Wahi*, 562 F.3d at 615 n.26. In alleging that the device "purportedly registered" 0.111, the Complaint impliedly alleges that Mays falsified the numerical reading. (Compl. ¶ 29.) However, the Complaint alleges no facts to support the allegation. Instead, the Complaint impliedly affirms the 0.111 reading, and then dismisses it as "invalid." (*Id.* ¶ 31.) The Complaint alleges, without factual support or explanation, that Clem's recent alcohol consumption and subsequent use of smokeless tobacco, caused the device to produce an inaccurate reading. Without alleging the nature or magnitude of the alleged invalid reading, the Complaint simply writes off the 0.111 reading, which is 0.031 above the legal limit, as worthless evidence of DUI. *See* Va. Code Ann. § 18.2-266(i). This Court should not consider or even be persuaded by the Complaint's conclusions and inferences that are not supported by any factual allegations.

Even if this Court accepts the unsupported allegation that residual mouth alcohol affected the device reading, the allegation does not defeat probable cause. First, the Complaint

---

[3] Mays had probable cause to arrest Clem for more than just DUI. As alleged in the Complaint, the dangerous manner in which Clem was operating his vehicle just prior to his traffic stop created probable cause to arrest Clem for reckless driving. (*See* Compl. ¶ 17.) In Virginia, reckless driving is a criminal misdemeanor. Va. Code Ann. § 46.2-868. The offense is defined by multiple statutes as driving "a vehicle . . . in a manner so as to endanger the life, limb, or property of any person" and "driv[ing] a vehicle which is not under proper control." VA. Code Ann. §§ 46.2-852, 853.

demonstrates that Mays had sufficient probable cause to arrest even without the preliminary breath test reading. *See Bristol*, 47 Va. App. at 599. Second, the probable cause standard permitted Mays to rely on the device reading to support an arrest for DUI even if the precise reading was inaccurate. Probable cause to arrest may exist even if an officer is unsure of an arrestee's guilt. *See Wadkins*, 214 F.3d at 541. The elements for DUI under Virginia Code §18.2-266(i) are operating a motor vehicle with a blood alcohol level that is above 0.08. At the very least, therefore, a 0.111 reading created a "substantial chance" that Clem was DUI. *Gates*, 462 U.S. at 243 n.13. For this reason, the device reading alone gave rise to probable cause of DUI. The Virginia General Assembly agrees. Va. Code § 18.2-267(D) permits an officer to charge a person with DUI "[w]henever the breath sample analysis [of a preliminary breath test] *indicates that alcohol is present* in the person's blood" (emphasis added). Va. Code Ann. § 18.2-267(D).

For all of the above reasons, the Complaint shows that Clem's arrest by Mays was supported by probable cause, and was therefore reasonable under the Fourth Amendment. Accordingly, this Court should dismiss Count V with prejudice.

### ii. Mays is entitled to qualified immunity to the unlawful seizure claim under 42 U.S.C. §1983.

The doctrine of qualified immunity provides that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Mays is entitled to qualified immunity because his arrest of Clem was supported by probable cause. *See supra* Part III.B.i. Therefore, Mays' conduct was constitutional under the Fourth Amendment.

If this Court determines, however, that Mays did not have probable cause to arrest Clem for DUI, Mays is still entitled to qualified immunity because Clem's right to be free from arrest

was not clearly established. In a qualified immunity analysis, a right is not clearly established unless "existing precedent [has] placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). A court's inquiry into whether a right has been clearly established should be "'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987)); *see Ashcroft*, 563 U.S. at 742 (stating that a court should avoid defining the right in question "at a high level of generality"). In the absence of a case in which "an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment," a law enforcement defendant is entitled to qualified immunity. *White*, 137 S.Ct. at 552. "In other words, immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 551 (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).

In the Fourth Circuit, existing precedent does not show that Clem had a clearly established right to be free from arrest under the particular circumstances of this case. *See supra* Part III.B.i; *Johnson v. Dep't of Alcoholic Bev. Control*, No. 3:15-CV-00055, 2016 U.S. Dist. LEXIS 17423 at *8 (W.D. Va. Dec. 13, 2016)(limiting the inquiry into whether a right to be free from unlawful arrest was clearly established to the Fourth Circuit).

Even if this Court finds that Clem had a clearly established right to be free from arrest under the circumstances of this case, Mays remains entitled to qualified immunity because he reasonably believed that he had adequate probable cause. In *Wadkins*, 214 F.3d at 539, the Fourth Circuit reaffirmed the principle that a police officer is entitled to qualified immunity from civil damages in Fourth Amendment cases as long he "reasonably believed" that his conduct was lawful, *even if it was not*. (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)); *see also Butz v. Economou*, 483 U.S. 478, 507 (1978) (noting that qualified immunity covers reasonable

"mistakes in judgment" whether of fact or law). In assessing reasonableness, "the absence of probable cause is not determinative." *Wadkins*, 214 F.3d at 539; *see Johnson v. Dep't of Alcoholic Bev. Control*, No. 3:15-CV-00055, 2016 LEXIS 17423, at *11–13 (W.D. Va. Dec. 13, 2016) (granting qualified immunity because "a reasonable ABC Agent would believe that they had probable cause, albeit possibly incorrectly," to arrest the plaintiff for possession of a fake I.D.) An officer's conduct may be reasonable even if his investigation was imperfect or his investigative conclusions mistaken. *Id.* at 543 ("That [an officer's] efforts could have been more thorough, or even that his actions may have been mistaken, does not mean that they were *unreasonable*.") (emphasis in original).

The Complaint shows that Mays was justified in believing that he had probable cause to arrest Clem for DUI, even if his belief was mistaken. As alleged in the Complaint, Mays had information from Burgoon, who was a law enforcement officer and eyewitness to Clem's driving, that Clem had been driving "erratic[ally]," and had veered off the roadway onto the curb and then back onto the roadway again. (Compl. ¶ 17.) It was reasonable for Mays to rely on Burgoon's observation of Clem's driving to establish probable cause, whether or not Burgoon had "misperceived" the movement of Clem's vehicle, as alleged in the Complaint. *See Lewis v. Kei*, 281 Va. 715, 724 (2011) ("Police may rely on the statement of a reported eyewitness as establishing probable cause to seek an arrest.") As alleged in the Complaint, Clem not only demonstrated an impaired and erratic manner of driving, but also emanated a strong smell of alcohol from his person. Moreover, a preliminary breath test showed that Clem had a 0.111 blood alcohol content. Even if circumstances made the device reading less reliable than usual, it was still reasonable for Mays to rely on the reading to indicate that Clem had consumed a significant amount of alcohol, and to suspect that Clem had violated Va. Code § 18.2-266. Under

Virginia statute, Mays was permitted to arrest Clem based on any device reading that showed *some* amount of alcohol in Clem's blood, let alone a reading that was 0.031 over the legal limit. Va. Code Ann. § 18.2-267(D).

### iii. The Complaint fails to state a §1983 unlawful seizure clam against Coffey.

The Complaint neither states nor fairly implies that Coffey arrested Clem in violation of the Fourth Amendment. The Complaint does not contain a single factual allegation with respect to Coffey, let alone a factual allegation that would allow this Court to infer that Coffey violated Clem's Fourth Amendment right to be free from unlawful arrest. *See supra* Part II.A. The only allegations in the Complaint that make reference to Coffey are legal conclusions. *See Id.* The Complaint does not allege that Coffey was present at the time of Clem's arrest, nor does it allege that Clem was arrested with Coffey's assistance or at his direction. Although Count V of the Complaint alleges that Coffey caused an unlawful Fourth Amendment seizure by allegedly participating in an alleged conspiracy to maliciously prosecute Clem without probable cause, the Complaint fails to allege facts to support the allegation. Without well-pleaded supporting facts, the allegation that Coffey arrested Clem unlawfully is an unwarranted inference. *See Wahi*, 562 F.3d at 615 n.26. Because the Complaint fails to allege facts even remotely sufficient to state a plausible § 1983 unlawful seizure claim against Coffey, Count V fails to state a claim upon which relief may be granted, and this Court should dismiss the claim with prejudice.

Spartan as the unlawful seizure claim is, to the extent that Count V alleges unconstitutional conduct against Coffey, he is entitled to qualified immunity. Coffey incorporates herein by reference all qualified immunity arguments asserted by Mays in Part III.B.ii, and asserts them on his own behalf.

**B.** **The Complaint Fails To State A Claim Against Mays For Either False Imprisonment Or False Arrest (Counts I and III).**

"False imprisonment is the restraint of one's liberty without any sufficient legal excuse." *Lewis v. Kei*, 281 Va. 715, 724 (2011); *see Jordan v. Shands*, 500 S.E.2d 215, 218 (Va. 1998) (stating that false imprisonment requires "the direct restrain by one person of the physical liberty of another without adequate legal justification"). A plaintiff may bring a false imprisonment action against a police officer for an unlawful arrest. *See Lewis v. Kei*, 281 Va. at 724. A complaint fails to state a claim for false imprisonment predicated on unlawful arrest, however, if it is clear that there was probable cause for the arrest. *Id.* at 723–24 (affirming dismissal of a false imprisonment claim because it was clear from the face of the complaint that the defendant police officer had probable cause to arrest the plaintiff); *see Sands & Co. v.* Norvell, 126 Va. 384, 399–400 (1919) (stating that absent an unlawful detention, the plaintiff would have had no action for false imprisonment because the officer had probable cause for the arrest). Even if an arrest is supported by probable cause, a plaintiff may still have a valid claim for false imprisonment if he can plausibly allege an unlawful detention subsequent to arrest. *Sands & Co. v. Norvell*, 126 Va. 384 (1919) (holding that a police officer was liable for false imprisonment when he subjected the plaintiff to a prolonged interrogation in order to extract a confession before seeking a warrant). The claim fails on its face, however, if the complaint can show neither unreasonable delay in seeking an arrest warrant, nor mistreatment during the period of detention. *See Id.*

There is no independent cause of action for 'false arrest' in Virginia. Courts construe a claim of false arrest as one of false imprisonment, and the same elements apply. *See Yeatts v. Minton*, 211 Va. 402, 406 (1970) (finding that an officer who performs a warrantless arrest is

16

liable for false imprisonment if the officer cannot show that the arrest was lawful). Therefore, Count I of the Complaint fails to plead a plausible claim of false arrest for the same reasons that Count III fails to plead a plausible claim of false imprisonment. Because Counts I and III fail to state a plausible claim for relief, this Court should dismiss them with prejudice.

### i. The Complaint fails to plead a false imprisonment claim based on false arrest because Clem's arrest for driving under the influence was supported by probable cause (Count I).

In Virginia, the probable-cause standard for common law torts is the same as the standard under the Fourth Amendment. Therefore, the probable-cause analysis that Mays asserts against Count V in Part III.B.i applies equally against Count I. *See supra* Part III.B.i. Mays incorporates and reasserts Part III.B.i herein. Because Clem's warrantless arrest was legally excused by adequate probable cause, *See Lewis*, 281 Va. at 723–24, the Complaint fails to state a valid claim for false imprisonment based on false arrest, and Count I warrants dismissal with prejudice.

### ii. The Complaint fails to plead a false imprisonment claim based on unlawful detention (Count III).

The false imprisonment claim in Count III is equally meritless. The only alleged basis for the claim in Count III is that Mays "detained [Clem] without probable cause and against his will." (Compl. ¶ 64.) As already established throughout this Memorandum, Mays had probable cause to arrest and detain Clem for DUI. *Supra* Part III.B.i. Furthermore, the Complaint contains no factual allegations to show or imply that Mays mistreated Clem during his detention subsequent to arrest or that Mays caused unreasonable delay in seeking an arrest warrant. The Complaint alleges that Mays began his investigation of the suspected DUI at approximately 6:00 p.m. and that Mays transported Clem to the Culpeper Police Department following Clem's arrest. As alleged, Mays began administering the first evidentiary breath test at approximately 7:25 p.m., and transported Clem to the magistrate's office in order to obtain arrest warrants after two

failed attempts at administering the evidentiary breath test. Va. Code § 18.2-268.2(B) required Mays to submit Clem to a breath test.

The allegations show that Mays' conduct was appropriate and lawful. *See Figg v. Schroeder*, 312 F.3d 625, 632–33, 637–38 (4th Cir. 2002) (holding that law enforcement officers had not falsely imprisoned the plaintiffs when they had probable cause to arrest the plaintiffs for misdemeanor crimes, and had handcuffed and detained the plaintiffs in patrol cars and in one plaintiff's home for no more than three hours); *see* Va. Code Ann. § 19.2-81 (authorizing a member of the Virginia State Police to conduct a warrantless arrest if the officer has probable cause to suspect the person of DUI). For these reasons, the Complaint fails to state a valid claim for false imprisonment, and this Court should dismiss Count III with prejudice.

### C. The Complaint Fails To State A Claim Against Mays For Battery (Count II).

"The tort of battery is an unwanted touching which is neither consented to, excused, nor justified." *Koffman v. Garnett*, 265 Va. 12, 16 (2003). To state a claim for battery, a plaintiff must plead "both a 'wrongful act' and resultant physical injury." *McLenagan v. Karnes*, 27 F.3d 1002, 1009 (4th Cir. 1994) (citing *Pike v. Eubank*, 197 Va. 692 (1956)). In the context of arrest by law enforcement, a Complaint does not state a claim for battery if it fails to plead either an unlawful arrest or use of unreasonable force in making a lawful arrest. *See Smith v. Ray*, 855 F. Supp. 2d 569, 583 (E.D. Va. 2012) ("A police officer's use of reasonable force in the course of making a lawful arrest is justification sufficient to avoid liability for . . . battery."), aff'd, 781 F.3d 95 (4th Cir. 2015).

Count II alleges that Mays battered Clem "by grabbing him, handcuffing him, and transporting him" without "justification." (Compl. ¶¶ 57–58.) The Complaint demonstrates, however, that Clem's arrest was justified by probable cause. *See Supra* Part III.B.i. Count II fails

to allege how Mays' touching of Clem during the stop, arrest, or custodial detention was unjustified by the circumstances. Neither does the rest of the Complaint contain allegations to support a finding that Mays used unreasonable force against Clem. *See* Johnson, 2016 U.S. Dist. LEXIS 172423, at *24 (finding that the amended complaint pleaded a plausible battery claim because it contained allegations that the arresting agents had used unconstitutionally excessive force). Because the Complaint fails to plead a wrongful act by Mays, and affirmatively shows that Clem's arrest was founded on probable cause, the Complaint fails to state a claim for battery.

In addition to the Complaint's failure to allege a wrongful act, the Complaint also fails to allege a second element of battery—physical injury. *See McLenagan*, 27 F.3d at 1009. Count II states that the alleged battery caused damages that include loss of liberty, embarrassment, and humiliation. (Compl. ¶ 61.) Elsewhere in the Complaint, Clem alleges additional damages in the nature of isolation, severe mental anguish, loss of reputation, depression, and lost opportunity for a job promotion and salary increase. (*Id*. ¶¶ 52, 79.) The Complaint neither states nor fairly implies that Clem suffered any physical harm at all, let alone at the hands of Mays. For the above reasons, this Court should dismiss the claim for battery with prejudice.

**D.    The Complaint Fails To State A Claim Against Mays For Malicious Prosecution (Count VI).**

Count VI fails to state a claim for malicious prosecution because the Complaint does not allege facts sufficient to state all the elements of the claim. *See Bass*, 324 F.3d at 765. To state a claim for malicious prosecution, a complaint must plausibly allege the following four elements: that a prosecution "terminated in a manner not unfavorable to the plaintiff," that the prosecution was "instituted by or with the cooperation of the defendant," that the prosecution was without probable cause, and that the prosecution was malicious. *Lewis*, 281 Va. at 722.

19

In addition to the above four elements, in order to survive a motion to dismiss, a plaintiff must also allege "special injury." *Ayyildiz v. Kidd*, 220 Va. 1080, 1084 (1980). "Special injury" refers to a loss that is different from the sort of loss that normally stems from criminal prosecution or civil litigation. *Id.* (holding that malicious prosecution must cause "special grievance or damage, not necessarily incident to a defense, but superadded to it by the malice and contrivance of the plaintiff.") (quoting *Potts v. Imlay*, 4 N.J.L. 382, 385 (1816)). The Supreme Court of Virginia and this Court have held that reputational harm, professional setbacks, and loss of income do not qualify as special injury. *See Id.* (dismissing the malicious prosecution claim and holding that expenses in defending a malpractice lawsuit, loss of present and future profits in the practice of medicine, and injury to professional reputation and good name did not meet the "special injury" requirement); *Nelson v. Green*, 965 F. Supp. 2d 732, 751–52 (W.D. Va. 2013) (dismissing a conspiracy claim and holding that neither a "nearly ruined" professional career, nor sky-high litigation costs, qualified as a "special loss" because they were "the kind of secondary consequences associated with a child abuse petition").

Virginia does not favor malicious prosecution claims that arise from criminal proceedings. *Lewis v. Kei*, 281 Va. at 723 ("Actions for malicious prosecution arising from criminal proceedings are not favored in Virginia.") As explained by the Virginia Supreme Court, such actions are disfavored because criminal prosecution serves the public interest, and state employees should not avoid participating in criminal prosecution for fear of recrimination in civil court. *Id.*

As set forth in Part III.B.i., the Complaint shows that Mays had probable cause to arrest and commence criminal prosecution against Clem for DUI. *Supra* Part III.B.i. Because the Complaint fails to set forth facts sufficient to show lack of probable cause, the malicious

prosecution claim must fail. *See Ayyildiz*, 220 Va. at 1082 ("Probable cause serves as a complete defense to a malicious prosecution action.")

Moreover, the Complaint fails to allege damages that meet the "special injury" requirement. *See Ayyildiz*, 220 Va. at 1084. Count VI itself does not allege that Clem suffered damages because of the alleged malicious prosecution. The Complaint alleges elsewhere, however, that Clem suffered, in sum, emotional distress, reputational harm, and lost opportunity for professional advancement, including an opportunity for a substantial raise. (Compl. ¶¶ 52, 67, 79.) Particularly because Clem has a career in law enforcement, his alleged damages are not unusual consequences of a criminal prosecution. Clem's alleged injuries are similar to the injuries alleged in *Nelson*, in which the plaintiff claimed damage to his professional career because of a child abuse petition, and *Ayyildiz*, in which the plaintiff claimed lost profits and damage to his professional reputation because of a malpractice lawsuit. *See Ayyildiz* at 1084; *see Nelson* at 751-52. Similar to this Court's ruling in *Nelson*, and the Virginia Supreme Court's ruling in *Ayyildiz*, Clem's alleged injuries are of the sort that would normally stem from criminal prosecution. Therefore, they do not meet the required pleading standard to state a valid malicious prosecution claim. For the above reasons, the Complaint fails to plead a plausible claim for malicious prosecution. Therefore, Count VI warrants dismissal with prejudice.

### E. The Complaint Fails To State A Claim Against Mays Or Coffey For Civil Conspiracy (Count IV).

"A common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." *Gelber v. Glock*, 293 Va. 497, 533 (2017) (quoting *Comm. Bus. Sys. v. Bellsouth Servs.*, 249 Va. 39, 48 (1997). A conspiracy claim generally requires proof of an underlying tort. *Almy v. Grisham*, 273 Va. 68, 80–81 (2007). The claim must be pleaded with

particularity, and will not survive a motion to dismiss unless the plaintiff can "at least plead the requisite concert of action and unity of purpose in more than 'mere conclusory language.'" *Li v. Shuman*, No. 5:14-CV-00030, 2015 U.S. Dist. LEXIS 77989 at *33 (W.D. Va. June 16, 2015) (quoting *Bay Tobacco LLC v. Bell Quality Tobacco Products*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (quoting *Bowman v. State Bank of Keysville*, 229 Va. 534, 802 (1985). "Silent presence" for another actor's wrongful acts is insufficient to allege conspiracy. *Lewis v. Gupta*, 54 F. Supp. 2d 611, 619 (E.D. Va. 1999) (dismissing a conspiracy claim as a matter of law because the complaint failed to plead particular facts showing an actual agreement to obstruct justice). If the only way to conclude that defendants worked together is "through mere speculation or the building of one inference upon another," then the claim must fail. *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 320 (4th Cir. 2012) (quotation omitted). Furthermore, if a plaintiff can allege joint liability of parties who acted in concert to commit a tort, the Virginia Supreme Court has criticized the assertion of a civil conspiracy claim as redundant and unnecessary. *See Almy v. Grisham*, 273 Va. 68, 81 (2007) (using this reasoning to support the dismissal of a conspiracy claim).

i. **The Complaint fails to state a claim for civil conspiracy against either Mays or Coffey.**

The claim in Count IV that Mays and Coffey conspired with the Culpeper Sheriff's Office defendants to maliciously prosecute Clem is meritless on the face of the Complaint. (*See* Compl. ¶ 76.) First, the Complaint shows that Mays had probable cause to arrest Clem for DUI, and does not state a claim for malicious prosecution. *Supra* Parts III.B.i, III.E. Consequently, the Complaint fails to allege the unlawful act element of a conspiracy claim. *See Li*, 2015 U.S. Dist. LEXIS 77989 at *33.

Second, even if the Complaint did state a claim for malicious prosecution, the Complaint alleges no facts that show an agreement between Mays and any other defendant to unlawfully arrest and prosecute Clem. The only allegations in the Complaint that even suggest an interaction between Mays and any of the defendants are the following: (1) Mays arrived on the scene of Clem's traffic stop because Burgoon sought the assistance of the Virginia State Police so that he would not have to investigate the suspected DUI; (2) Burgoon and Mays "conferred" before Mays began the investigation, and neither officer heeded Chilton's pronouncement that Clem was sober; (3) Fox and John Does 1–4 were present at the scene of the traffic stop; (4) Burgoon was allegedly at the Culpeper Police Department when Clem and Mays arrived but left shortly thereafter; and (5) both Mays and Burgoon allegedly obtained a DUI warrant against Clem. At no point does the Complaint allege that Mays and Burgoon, or any other defendant, shared a common, agreed-to purpose to arrest and prosecute Clem without probable cause. At most, the Complaint shows that Mays arrested and detained Clem because it was his job as a trooper with the Virginia State Police to do so. Mays' interactions with members of the Culpeper Sheriff's Office, as alleged, were at most incidental to the arrest and post-arrest activities. That Mays and his co-defendants were allegedly present together in the same vicinities is not sufficient, on its own, to state a conspiracy claim. *See Lewis*, 54 F. Supp. at 619.

Against Coffey, the Complaint alleges no facts at all, let alone facts that would support the elements of a civil conspiracy, such as a shared purpose and concerted action to maliciously prosecute Clem. (*See* Compl. ¶¶ 11–92.)

In sum, the allegations in the Complaint are insufficient to show that Mays or Coffey formed a conspiracy with Jenkins or any of his deputies, or that any such conspiracy resulted in a malicious prosecution against Clem. Because Count IV is predicated on "sheer speculation" of a

conspiracy, the claim fails as a matter of law. *See Shirvinski*, 673 F.3d at 320. For all of the above reasons, Count IV warrants this Court's dismissal with prejudice.

### F. The Complaint Fails To State A Claim For Gross Negligence (Count VIII).

"Gross negligence is that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another." *Frazier v. City of Norfolk*, 234 Va. 388, 393 (1987). "A claim of gross negligence, which involves the 'absence of slight diligence, or the want of even scant care,' will not lie if the defendant exercised some degree of care with regard to the plaintiff." *Whitley v. Commonwealth*, 260 Va. 482, 490 (2000) (emphasis added) (quoting *Colby v. Boyden*, 241 Va. 125, 133 (1991)). In *McLenagan*, 27 F.3d at 1009, the Fourth Circuit dismissed as "patently without merit" a gross negligence claim brought against a police officer for shooting an unarmed plaintiff in the face because the officer showed care in making a split-second decision to shoot after quickly evaluating the risk of harm that the plaintiff posed. *Id.* "The usual indicia of gross negligence [are] purposeful recklessness, deliberate inattention to known dangers, conscious and intended violation or rash disregard of traffic laws, or like purposeful misconduct." *Lloyd v. Green*, 194 Va. 948, 954 (1953).

### i. The Complaint fails to state a claim for gross negligence against Mays or Coffey.

At the outset, a law enforcement officer owes no duty of care to a suspect in the course of a criminal investigation. The Supreme Court of Virginia has never recognized a claim for gross negligence with respect to police investigations, and courts in the Fourth Circuit have seriously questioned whether such a claim is cognizable under Virginia law. *See Safar v. Tingle*, 859 F.3d 241, 251 (4th Cir. 2017) (discussing "the dearth of state law on negligent investigations"); *Qilloughby v. Virginia*, No. 3:16-CV-784, 2017 U.S. Dist. LEXIS 153417 (E.D. Va. Sept. 20, 2017) (dismissing a claim for gross negligence in conducting a criminal investigation because it

was not a valid cause of action); *Boyd v. Bennett*, No. 2:14-CV-249, 2015 U.S. Dist. LEXIS 151875 at *8 (E.D. Va. Nov. 9, 2015); *Durham v. Horner*, 759 F. Supp. 2d 810, 815 (W.D. Va. 2010) (citing *Lewis v. McDorman*, 820 F. Supp. 1001, 1008 (W.D. Va. 1992) (dismissing a gross negligence claim predicated on a criminal investigation because Virginia does not recognize the cause of action)).

Even if Mays did owe a duty to Clem to investigate with care, contrary to current precedent, the Complaint on its face shows that Mays demonstrated the requisite level of care to defeat a gross negligence claim. First, as a matter of law, Mays was not required to offer Clem a blood test. Va. Code § 18.2-268.2 requires an arrestee suspected of DUI to submit to a breath test, and only requires a blood test "[i]f the breath test is unavailable or the person is physically unable to submit to the breath test." Va. Code Ann. § 18.2-268.2. The breath test was available to Clem, and the Complaint does not allege that Clem was physically unable to submit to it. Mays' inability to obtain a sufficient sample from Clem did not require Mays to obtain Clem's blood regardless of Clem's interest in submitting to a blood test. *See Id.* Second, the Complaint shows that Mays demonstrated care in his investigation. That Mays met and discussed with Burgoon before approaching Clem, noted a strong odor of alcohol on Clem's person, and administered a preliminary and evidentiary breath test all show care over the course of Mays' DUI investigation. (Compl. ¶¶ 24–25, 27–28, 37.)

Further, the Complaint concedes that Mays attempted *twice* to properly administer an evidentiary breath test. (Compl. ¶¶40, 43.) His lack of success in obtaining a sufficient sample does not, without more, show a "purposeful recklessness" or "deliberate inattention to known dangers." *Lloyd*, 194 Va. at 954. Clem's allegations that Mays obtained a civil refusal summons by providing the magistrate with false information is an unsupported conclusion. Although Clem

insists that he was "cooperative" during the breath test, the allegation is a characterization of the failed breath tests, not a factual allegation. (Compl. ¶¶ 40, 45.) The allegation that Mays "aborted" the breath test both times does not on its own show that Mays subverted a breath test that otherwise would have produced a sufficient breath sample. In any case, there is nothing in the Complaint to show that Mays' investigation imperiled the safety of Clem at any point in time. *See Frazier*, 234 Va. at 393 (characterizing gross negligence as a degree of carelessness that results in "complete neglect of the safety of another"); *Lloyd*, 194 Va. at 954.

With respect to Coffey, the Complaint fails to allege facts sufficient to show any act or omission at all, let alone a grossly negligent act or omission. Other than alleging that Coffey was employed as a trooper with the Virginia State Police at the time of Clem's arrest, the Complaint contains no factual allegations with respect to Coffey. Count VIII alleges that Coffey breached an investigatory duty to Clem by failing to properly investigate the suspected DUI in the field and when Clem was in custody, and by reporting false information to the magistrate about Clem's refusal to give a breath sample. (Compl. ¶ 87.) But the Complaint fails to allege that Coffey participated in any capacity in the events that Count VIII describes. A defendant cannot breach a duty if the defendant is not alleged to have engaged in activity that could give rise to a duty. For all of these reasons, even if this Court could find that Mays and Coffey owed Clem a duty of care in a police investigation, the Complaint cannot show a breach of the duty of care that would rise to the level of gross negligence. Accordingly, this Court should dismiss Count VIII with prejudice as to Mays and Coffey.

### ii.      If this Court finds that Count VIII states a valid claim for simple negligence, Mays and Coffey are absolutely immune from liability.

The Virginia Tort Claims Act states, and the Virginia Supreme Court has confirmed, that Commonwealth agencies, such as the Virginia State Police, are entitled to sovereign immunity.

Va. Code Ann. § 8.01-195.1, *et seq.* (Lexis 2018); *Rector and Visitors of the University of Virginia v. Carter*, 251 Va. 242, 244 (2004). Under appropriate circumstances, an individual who works for an immune governmental agency is also entitled to sovereign immunity. Sovereign immunity shields the Commonwealth's employees from liability for negligence where the employee and the circumstances satisfy the four-part test explained in *James v. Jane*, 221 Va. 43, 53 (1980). To examine immunity for an employee, a court should consider 1) the nature and function performed by the employee, 2) the extent of the state's interest and involvement in the function, 3) the degree of control and direction exercised by the state over the employee, and 4) whether the acts complained of involved the use of judgment and discretion. *Id.*; *McCloskey v. Kane*, 268 Va. 685, 689 (2004) (applying the *James* four-factor test).

In the course of the DUI investigation, Mays and Coffey ("the troopers") were engaged in the type of conduct that entitled them to sovereign immunity under *James*. The Complaint concedes that the Virginia State Police troopers were "acting within the scope of their employment at all times relevant to this Complaint." (Compl. ¶ 90.) The alleged grossly negligent conduct in Count VIII is all related to a police investigation of a suspected crime and the process of obtaining an arrest warrant. (*See* Compl. ¶ 87.) This is quintessential law enforcement activity that serves the Commonwealth's paramount interest in public safety. Furthermore, the investigatory conduct as alleged in Count VIII requires discretion and decision-making. For these reasons, the troopers are entitled to absolute immunity from a claim for negligent investigation. *See James*, 221 Va. at 53; *Savage v. Cty. of Stafford, Va.*, 754 F. Supp. 2d 809, 817 (E.D. Va. 2010) (citing *Glasco v. Ballard*, 249 Va. 61, 54–65 (1995) (holding that a sheriff's deputy was entitled to sovereign immunity for shooting a suspect during a criminal

investigation because "[the deputy] was engaged in an essential governmental function involving the exercise of discretion and judgment").

### iii. The Complaint fails to state a claim for gross negligence against the Commonwealth, and the Commonwealth is entitled to sovereign immunity.

As an initial matter, the Commonwealth is entitled to sovereign immunity for the alleged gross negligence of Mays and Coffey, as stated in Count VIII. The doctrine of sovereign immunity is "'a rule of social policy, which protects the state from burdensome interference with the performance of its governmental functions and preserves its control over state funds, property, and instrumentalities.'" *Messina v. Burden*, 228 Va. 301, 308 (1984) (quoting 72 Am. Jur. 2d <u>States, Territories, and Dependencies</u> § 99 (date omitted)). "In the absence of express statutory or constitutional provisions waiving the Commonwealth's immunity, the Commonwealth and its agencies are immune from liability for the tortious acts or omissions of their agents and employees." *Patten v. Commonwealth*, 262 Va. 654, 658 (2001). Although the Virginia Tort Claims Act ("VTCA") waives immunity for certain tort claims, the waiver is limited to and by the express terms of the statute. *Id.*

Under the Virginia Tort Claims Act, the Commonwealth has not waived immunity for a "[a]ny claim arising out of the institution or prosecution of any judicial or administrative proceeding, even if without probable cause." Va. Code Ann. § 8.01-195.3(6) (Lexis 2018). As alleged in the Complaint, Clem's criminal trial for DUI under Va. Code § 18.2-266 and refusal to submit to a breath test under Va. Code § 18.2-268.3 began with the swearing out of criminal complaints before a magistrate. (*See* Compl. ¶¶ 49–50, 87.) Furthermore, as alleged in the Complaint, the information that Mays gathered and omitted during the investigation had a direct impact on the contents of the criminal complaints. (*See* Compl. ¶¶ 49–50) (alleging that Mays

obtained a warrant and summons against Clem by falsifying a criminal complaint and making a false claim.) The grossly negligent conduct that Clem alleges in Count VIII is precisely the conduct that informed and created the charging documents that instituted judicial proceedings against Clem. Count VIII specifically alleges gross negligence in "failing to properly inform the magistrate" and "falsely informing the magistrate" in the criminal complaints that Mays swore out. For these reasons, Count VIII "aris[es] out of the institution . . . of" a "judicial proceeding" and is barred against the Commonwealth by sovereign immunity. Va. Code Ann. § 8.01-195.3 (2018). Because the Commonwealth is immune from liability, this Court should dismiss Count VIII with prejudice.

In addition, Count VIII fails to state a claim against the Commonwealth for gross negligence. The Virginia Tort Claims Act makes the Commonwealth liable for personal injury to a plaintiff *only* to the extent that one of its employees has performed a "negligent or wrongful act or omission." Va. Code Ann. § 8.01-195.3 (2018). Because Count VIII fails to state a claim for gross negligence against either Mays or Coffey, Count VIII also fails to state a valid claim of gross negligence against the Commonwealth. *See supra* Part III.G.i. For these reasons, Count VIII warrants dismissal with prejudice as to the Commonwealth.

## IV.     CONCLUSION

WHEREFORE, the defendants request that this Court grant their Motion to Dismiss, dismiss all claims with prejudice, and award them any other relief deemed just.

Respectfully submitted,

*/s/ Madeline M. Gibson*
Madeline M. Gibson (VSB No. 87561)
Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Tel.: (804) 692-0551
Fax: (804) 371-2087
mgibson@oag.state.va.us
*Counsel for Defendants Mason G. Mays, Brent W.*
*Coffey, and the Commonwealth of Virginia*

Mark R. Herring
Attorney General of Virginia

Samuel T. Towell
Deputy Attorney General

Tara Lynn R. Zurawski
Senior Assistant Attorney General/Trial Section Chief

## CERTIFICATE OF SERVICE

I certify that on this 12th day of July, 2018, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, and that a Notice of Electronic Filing (NEF) was sent

to all counsel of record.

/s/ Madeline M. Gibson
Madeline M. Gibson (VSB No. 87561)
Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Tel.: (804) 692-0551
Fax: (804) 371-2087
mgibson@oag.state.va.us
*Counsel for Defendants Mason G. Mays,*
*Brent W. Coffey, and the Commonwealth of*
*Virginia*