CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 1 1 2019

JULIA C. DUDLEY, CLERK
BY: /s/ ASpoole
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| STEVEN E. CLEM, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 3:18CV00049 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| SCOTT H. JENKINS, individually and | ) By: Hon. Glen E. Conrad |
| in his official capacity as Sheriff of | ) Senior United States District Judge |
| Culpeper County, Virginia, et al., | ) |
| | ) |
| Defendant. | ) |

In the instant action, which was removed from the Circuit Court of Culpeper County, Steven Clem asserts claims under 42 U.S.C. § 1983 and Virginia law against Scott Jenkins, Mason Mays, Brent Coffey, Charles Burgoon, James Fox, the Commonwealth of Virginia, and four unknown defendants.[1] The case is presently before the court on motions to dismiss filed by Jenkins, Mays, Coffey, Fox, and the Commonwealth.[2] For the reasons that follow, the plaintiff's claims under § 1983 will be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). The court will decline to exercise supplemental jurisdiction over the state law claims at this time, dismiss those claims without prejudice, and permit the plaintiff to file an amended complaint.

---

[1] An additional defendant, Culpeper County, was dismissed from the case prior to removal.

[2] The record reveals that Burgoon has not been served with process and that the time for effecting service has expired. Consequently, if the plaintiff elects to file an amended complaint that names Burgoon as a defendant, the plaintiff will be ordered to show cause why the claims against Burgoon should not be dismissed under Federal Rule of Civil Procedure 4(m). See, e.g., Bolden v. City of Topeka, 441 F.3d 1129, 1148 (10th Cir. 2006) ("[T]he 120-day period provided by Rule 4(m) is not restarted by the filing of an amended complaint except as to those defendants newly added in the amended complaint.").

## Factual Background

The following factual allegations, taken from the plaintiff's complaint, are accepted as true for purposes of the pending motions. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

Clem is employed by the Sheriff of Spottsylvania County. On June 23, 2016, he and Timothy Chilton, a police officer for the Town of Culpeper, visited two vineyards with their respective girlfriends. Over the course of the afternoon, Clem "consumed two small glasses of wine." Compl. ¶ 13, Dkt. No. 1-1.

The group left the vineyards in separate vehicles driven by Clem and Chilton. At approximately 5:43 p.m., while driving westbound on Virginia Route 3 in Culpeper County, Chilton pulled over onto the shoulder of the road, and Clem followed behind him. Chilton's girlfriend got into the back of Clem's vehicle, so that Chilton could drive straight to work. "Soon thereafter, Clem drove his car onto the roadway in front of [a] sheriff's car driven by [Charles] Burgoon." Id. ¶ 16.

Clem alleges that Burgoon, who was then employed as a Culpeper County Sheriff's deputy, mistakenly believed that Clem had driven off the roadway when, in fact, he had reentered the traffic lane from a parked position. Perceiving Clem's driving to be erratic, Burgoon initiated a traffic stop. Clem pulled over immediately in a nearby parking lot.

Upon approaching Clem's vehicle, Burgoon "detected an odor of alcohol in [the] vehicle," and indicated that he "suspected that Clem was driving while under the influence of alcohol." Id. ¶ 18. During his interactions with Clem, Burgoon discovered that Chilton's girlfriend was in the vehicle. Burgoon then called for assistance from the Virginia State Police, purportedly because

2

he was aware of the "political rivalry" between Chilton and Scott Jenkins, the Sheriff of Culpeper County. Id. ¶ 20. While Burgoon was waiting for assistance, James Fox and four other unknown deputies appeared on the scene. Id. ¶ 21.

Mason Mays, a Virginia State Police trooper, subsequently arrived at approximately 5:55 p.m. and "conferred with Burgoon." Id. ¶ 24. Unlike Burgoon, Mays "claimed to detect a strong odor of alcohol [emitting] from Clem's person," rather than the vehicle itself. Id. ¶ 27. Mays directed Clem to "blow into a portable breath test machine." Id. ¶ 28. Prior to doing so, "Mays did not read the implied consent law" to the plaintiff. Id. Clem, who was using smokeless tobacco at the time, "asked Mays to wait ten minutes to allow the residual mouth alcohol to dissipate, but Mays refused." Id. After the portable breath test "purportedly registered a breath alcohol content of 0.111 percent," Mays placed Clem under arrest for driving under the influence. Id. ¶¶ 29, 33.

Mays then transported Clem to the Culpeper Police Department for the performance of an "evidentiary breath test." Id. ¶ 37. Clem alleges that his smokeless tobacco rendered the results of the portable breath test invalid, and that he "repeatedly stated his desire to take the [evidentiary] breath test in order to prove that he was sober." Id. ¶¶ 36, 39. Mays began administering the evidentiary breath test at approximately 7:25 p.m. Although Clem was "cooperative," Mays "abruptly aborted the breath test before completing it" and advised dispatch that he was going to transport Clem to the hospital for a blood test. Id. ¶¶ 40, 43.

While en route to the hospital, "Mays received a telephone call and then abruptly changed course and drove to the magistrate's office instead of the hospital." Id. ¶ 47. Burgoon was waiting at the magistrate's office when Mays arrived with Clem. "Mays and Burgoon sought and obtained a misdemeanor DUI warrant against Clem." Id. ¶ 49. Mays also "sought and obtained

3

a civil refusal summons against Clem on the basis of the false claim that Clem had given an insufficient breath sample" during the administration of the evidentiary breath test. Id. ¶ 50. Both the DUI charge and the civil refusal summons were ultimately dismissed on October 4, 2016. Id. ¶ 53.

### Procedural History

On June 4, 2018, Clem filed the instant action in state court against Jenkins, Mays, Burgoon, Coffey, Fox, Culpeper County, the Commonwealth of Virginia, and four unknown defendants. The complaint includes the following claims: false arrest (Count One); battery (Count Two); false imprisonment (Count Three); civil conspiracy (Count Four); violation of Fourth Amendment rights under 42 U.S.C. § 1983 (Count Five); malicious prosecution (Count Six); and gross negligence (Count Eight).[3]

On June 27, 2018, the state court granted Culpeper County's demurrer. The action was then removed to this court on the basis of federal question jurisdiction. Jenkins, Mays, Coffey, Fox, and the Commonwealth of Virginia have since moved to dismiss the complaint under Rule 12(b)(6). In his written response to the defendants' motions, Clem acknowledged that the complaint presently contains insufficient factual allegations to state a claim against Fox, Coffey, or the Commonwealth, and he requested that the claims against these defendants be dismissed without prejudice. Clem likewise acknowledged that his current complaint fails to state claims for battery, civil conspiracy, and gross negligence against Mays and Jenkins, and he requested that these claims be dismissed without prejudice.

The court held a hearing on the pending motions on October 2, 2018. During the hearing, Clem indicated that he possesses substantial additional facts that were not included in the

---

[3] The complaint contains no Count Seven.

4

complaint that was originally filed in state court. Accordingly, Clem requested that the court grant him leave to amend any claims that are found to be inadequately pled. The matter is now ripe for disposition.

## Standards of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to seek dismissal for failure to state a claim upon which relief can be granted. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Erickson, 551 U.S. at 94. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

Rule 15 of the Federal Rules of Civil Procedure provides that a party may amend his pleading with leave of court, which shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). The United States Court of Appeals for the Fourth Circuit has held that "leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 193 (4th Cir. 2009).

5

## Discussion

I. **Claims under federal law**

The court will first address Clem's claims under 42 U.S.C. § 1983, which imposes civil liability on any person acting under color of state law to deprive another person of rights and privileges secured by the Constitution and laws of the United States. See 42 U.S.C. § 1983. In Count Five, the plaintiff claims that he was arrested without probable cause by Burgoon and Mays in violation of his rights under the Fourth Amendment, and that Burgoon and Mays "acted at the behest of Jenkins" in arresting him. Compl. ¶¶ 76, 81; see also id. ¶ 42 (asserting, upon information and belief, that "Jenkins pressured Burgoon to arrest Clem"). Clem also claims that he was "maliciously prosecuted by Jenkins, Mays and Burgoon," and that these defendants "act[ed] in concert with Coffey, John Does 1–4, and Fox" in obtaining "both criminal and civil process" against him. Id. ¶ 77.

Jenkins, Mays, Coffey, and Fox moved to dismiss Count Five under Rule 12(b)(6). As indicated above, Clem acknowledged in response to the defendants' motions that the current complaint does not contain sufficient factual allegations to state a claim against Coffey or Fox. Although the plaintiff opposed the defendants' motions with respect to the claims against Jenkins and Mays, the court concludes, for the following reasons, that the complaint fails to state a claim against any of the individual defendants.[4]

"The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and the seizure of an individual effected without probable cause is unreasonable."

---

[4] Burgoon, for whom no proof of service has been provided, has not moved for dismissal. Nor have the unidentified defendants. Nonetheless, the court will sua sponte dismiss the § 1983 claims against these defendants for the reasons set forth herein. See Eriline Co. S.A. v. Johnson, 440 F.3d 648, 655 n.10 (4th Cir. 2006) ("Where a complaint plainly fails to state a claim for relief, a district court has 'no discretion' but to dismiss it.") (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)); see also Taylor v. Acxiom Corp., 612 F.3d 325, 340 (5th Cir. 2010) ("While the district court did dismiss sua sponte some defendants who did not join the motion to dismiss, there is no prejudice to the plaintiffs in affirming the judgment in its entirety because the plaintiffs make the same allegations against all defendants.").

Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir. 1996) (citing Graham v. Connor, 490 U.S. 386, 396–97 (1989). The United States Court of Appeals for the Fourth Circuit has explained that "[a] claim for false arrest alleges that a warrantless arrest lacked probable cause," whereas "a claim for malicious prosecution alleges that an arrest made pursuant to a warrant lacked probable cause." Smith v. Munday, 848 F.3d 248, 257 (4th Cir. 2017). Thus, a plaintiff must allege facts demonstrating that he was arrested without probable cause to state a claim for false arrest or malicious prosecution under § 1983. See Street v. Surdyka, 492 F.2d 368, 372–73 (4th Cir. 1974) ("[T]here is no cause of action for 'false arrest' under section 1983 unless the arresting officer lacked probable cause."); see also Smith, 848 F.3d at 257 ("A malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort. To state such a claim, a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor.") (citations and internal quotation marks omitted).

Clem first contends that Mays and Burgoon lacked probable cause to arrest him for driving while intoxicated. The Supreme Court "repeatedly has explained that 'probable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). It "requires more than 'bare suspicion,'" but "less than evidence necessary to convict. Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1988). Moreover, the Supreme Court has made clear that hindsight may not be employed in evaluating probable cause. See Florida v. Harris, 568 U.S. 237, 249 (2013) ("And still more fundamentally, we do not

7

evaluate probable cause in hindsight...."). Accordingly, an officer's reasonable mistake of fact does not defeat his determination of probable cause. See, e.g., United States v. Williams, 85 F. App'x 341, 347 (4th Cir. 2004) ("The fact that the officers were factually mistaken did not render the stop illegal.... 'An officer's reasonable mistake of fact may provide the objective grounds for reasonable suspicion or probable cause required to justify a traffic stop....'") (quoting United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir. 2003)).

Under Virginia law, it is "unlawful for any person to drive or operate any motor vehicle ... (i) while such person has a blood alcohol concentration of 0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath as indicated by a chemical test administered as provided in this article," or "(ii) while such person is under the influence of alcohol." Va. Code § 18.2-266. When a state or local law enforcement officer has probable cause to suspect a person of driving while intoxicated in violation of § 18.2-266, the officer may arrest the person without a warrant within three hours of the alleged offense, "whether or not the offense was committed in such officer's presence." Va. Code § 19.2-81(D).

Virginia Code § 18.2-267 provides that any person suspected of driving while intoxicated "shall be entitled, if such equipment is available, to have his breath analyzed to determine the probable alcoholic content of his blood." Va. Code § 18.2-267(A). The statute further provides that "[w]henever the breath sample analysis indicates that alcohol is present in the person's blood, the officer may charge the person with [driving while intoxicated]." Id. § 18.2-267(D). Virginia appellate courts have explained that "[t]he function of the preliminary breath test under Code § 18.2-267 is to provide an independent means to determine and resolve questions concerning probable cause." Jones v. Town of Marion, 508 S.E.2d 921, 923 (Va. Ct. App. 1999). "By providing in Code § 18.2-267 that the officer may charge an individual with driving while

8

intoxicated on the basis of the results of a preliminary breath test, the legislature has recognized that this test is reasonably trustworthy to show that a person has consumed alcohol for purposes of determining whether probable cause exists to make an arrest." Stacy v. Commonwealth, 470 S.E.2d 584, 586 (Va. Ct. App. 1996); see also id. id. at 587 ("The clear purpose of subsection D, which authorizes the officer to charge a suspect whose preliminary breath test registers positive for consumption of alcohol, is to recognize that the test is sufficiently reliable to prove that a person has consumed alcohol and that the fact of consumption may furnish reason to believe that a person is intoxicated."). Accordingly, "[i]f the breath analysis reveals that alcohol is present in the suspect's blood, the police officer may arrest the suspect." Id. at 586; see also Commonwealth v. Stewart, 91 Va. Cir. 164 (Va. Cir. Ct. 2015) ("Based on Stewart's [preliminary breath test] results, the police officer had probable cause to arrest her for driving while intoxicated.").[5]

Upon review of the record and applicable caselaw, the court concludes that the facts alleged in Clem's complaint do not plausibly suggest that Mays or Burgoon lacked probable cause to arrest Clem for driving under the influence. Clem acknowledges in the complaint that he had consumed two glasses of wine prior to driving; that Burgoon believed, albeit mistakenly, that Clem had erratically driven off the roadway; that Burgoon detected the odor of alcohol emanating from Clem's vehicle; that Burgoon conferred with Mays upon the trooper's arrival; and that Mays reported detecting the odor of alcohol emanating from Clem's person. See, e. g., Wohlford v. Commonwealth, 351 S.E.2d 47, 49 (Va. Ct. App. 1986) ("The moderate smell of alcohol, the manner in which the vehicle was operated, and the admission of consumption of alcohol provided probable cause for the arrest."). Additionally, and perhaps most importantly, the complaint

---

[5] Although the results of a preliminary breath test are not admissible at trial for purposes of proving guilt, Va. Code § 18.2-267(E), Virginia appellate courts "have held that the results of the preliminary breath test may be admitted into evidence at a pretrial probable cause or suppression hearing." Woolridge v. Commonwealth, 512 S.E.2d 153, 157 (Va. Ct. App. 1999) (citing Stacy, 470 S.E.2d at 587).

9

indicates that the preliminary breath test performed on the scene revealed a blood alcohol content above the legal limit. While Clem alleges that his recent wine consumption and use of smokeless tobacco "rendered the portable breath test invalid," Compl. ¶ 31, such a conclusory statement is insufficient to "raise a right to relief above the speculative level."[6] Twombly, 550 U.S. at 555; see also Painter's Mill Grille, LLC v. Brown, 716 F.3d 342, 350 (4th Cir. 2013) ("It is now well established that mere conclusory and speculative allegations are not sufficient to withstand a motion to dismiss.") (citing Twombly and Iqbal). The same is true for Clem's assertion that Burgoon and Mays unlawfully "acted at the behest of Jenkins in arresting him." Id. ¶ 81; see also Iqbal, 556 U.S. at 678 (emphasizing that the federal pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

In sum, the court is constrained to conclude that the complaint lacks sufficient factual content from which the court could reasonably infer that Clem's arrest for driving while intoxicated was unsupported by probable cause. Accordingly, Clem's claim of false arrest under § 1983 is subject to dismissal under Rule 12(b)(6), as is his claim that that he was maliciously prosecuted for driving while intoxicated. See Smith, 848 F.3d at 253 (analyzing malicious prosecution claim under § 1983 for "whether there was probable cause to arrest Smith"). In reaching this decision, the court recognizes that Clem alleges that Mays "falsely sw[ore] in his criminal complaint that Clem had given a deficient sample on the [evidentiary] breath test" administered at the police department. Compl. ¶ 49. However, Clem does not contend that the issuance of the warrant for driving while intoxicated was "predicated solely" on this alleged false

---

[6] Clem also alleges that "Mays did not read the implied consent law" prior to administering the preliminary breath test. Compl. ¶ 28. While Virginia Code § 18.2-267(F) requires law enforcement officers to advise a person of the right to refuse to take a preliminary breath test, "the failure to comply [with this provision] does not, standing alone, invalidate the arrest or render the subsequently administered blood or breath test inadmissible." Wohlford v. Commonwealth, 351 S.E.2d 47, 49 (Va. 1986).

statement. Manuel v. City of Joliet, 137 S. Ct. 911, 918 (2017). Nor does the complaint plausibly suggest that such statement was necessary to establish probable cause in support of the issuance of the warrant. See Wilkes v. Young, 28 F.3d 1362, 1365 (4th Cir. 1994) ("It is well-established that a false or misleading statement in a warrant affidavit does not constitute a Fourth Amendment violation unless the statement is necessary to the finding of probable cause.").

To the extent that Clem also alleges that the individual defendants "sought and obtained a civil refusal summons against Clem on the basis of the false claim that Clem had given an insufficient breath sample," appellate courts have made clear that "a summons alone is insufficient to support a Fourth Amendment seizure claim." Glass v. Anne Arundel Cty., 716 F. App'x 179, 180 n.1 (4th Cir. 2018) (collecting cases); see also Ryu v. Whitten, 684 F. App'x 308, 311 (4th Cir. 2017) ("A summons requiring no more than a court appearance, without additional restrictions, does not constitute a Fourth Amendment seizure.") (collecting cases); Bielanski v. Cty. of Kane, 550 F.3d 632, 642 (7th Cir. 2009) ("No court has held that a summons alone constitutes a seizure, and we conclude that a summons alone does not equal a seizure for Fourth Amendment purposes."). Consequently, based on the current allegations, the court concludes that the complaint does not state a plausible claim for malicious prosecution arising from the issuance of a summons for a civil offense. Compl. ¶ 50; see also Va. Code § 18.2-268.3(A) ("It is unlawful for a person who is arrested for a violation of § 18.2-266 . . . to unreasonably refuse to have samples of his breath taken for chemical tests to determine the alcohol content of his blood as required by § 18.2-268.2 . . . . A first violation [of this subsection] is a civil offense.").

For these reasons, the court will grant the pending motions to dismiss with respect to Count Five. This count, as currently pled, fails to state a viable claim for false arrest or malicious prosecution under the Fourth Amendment, particularly in light of the standards set forth in

11

Twombly and Iqbal.[7] While the court questions whether Count Five could be amended to survive a subsequent motion to dismiss, Clem indicated during the hearing that there are substantial additional facts that could be alleged in support of his original claims. Based on Clem's representations, the liberal policy favoring amendment, and the fact that the current complaint was drafted to comply with state, rather than federal, pleading standards, the court will dismiss Count Five without prejudice and permit Clem to file an amended complaint. See, e.g., United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008) (noting that leave to amend "should be granted liberally" under Rule 15).

## II. Claims under state law

In light of the court's disposition of the federal claims asserted in Count Five, the court declines to exercise supplemental jurisdiction over the plaintiff's state law claims at this time and will dismiss those claims without prejudice. See 28 U.S.C. § 1367(c)(3) (authorizing a district court to decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction"). However, if the plaintiff elects to file an amended complaint under § 1983, he may reassert any supplemental claims under state law that he believes are supported by the factual allegations contained therein. See, e.g., Hodge v. Cordish Cos. Inc., No. 1:17-cv-00254, 2017 U.S. Dist. LEXIS 109531, at *18 (D. Md. July 14, 2017) (declining to exercise supplemental jurisdiction over claims under state law but permitting plaintiff to reassert such claims if he filed an amended complaint that stated a viable federal claim).

## Conclusion

For the reasons stated, the court will grant the pending motions to dismiss with respect to the plaintiff's claims under § 1983 and dismiss those claims without prejudice. The remaining

---

[7] In light of the foregoing analysis, the court need not address the Eleventh Amendment and qualified immunity arguments made by Jenkins and Mays.

12

Case 3:18-cv-00049-GEC   Document 26   Filed 01/11/19   Page 12 of 13   Pageid#: 303

claims under state law will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3), and the plaintiff will be granted leave to file an amended complaint.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 11th day of January, 2019.

_____
Senior United States District Judge